## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| PHILIPS MEDICAL SYSTEMS PUERTO RICO, INC., PHILIPS MEDICAL SYSTEMS NEDERLAND B.V.; AND PHILIPS INDIA LIMITED, | CIVIL No. 3:19-cv-01488 |
| Plaintiff, | RE: PERMANENT INJUNCTIVE RELIEF PURSUANT TO THE COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. §1030, COPYRIGHT ACT, 17 U.S.C. § 1201, PUERTO RICO'S INDUSTRIAL AND TRADE SECRET PROTECTION ACT, 10 P.R. LAWS ANN. §§4131-4141; UNFAIR COMPETITION; DIGITAL MILLENNIUM COPYRIGHT ACT, 17 U.S.C. § 1201; COPYRIGHT INFRINGEMENT, 17 U.S.C. § 101, *et seq.* AND DEMAND FOR JURY TRIAL. |
| v. | |
| ALPHA BIOMEDICAL AND DIAGNOSTIC CORP., COOPERATIVA DE SEGUROS MÚLTIPLES DE PUERTO RICO, | |
| Defendant. | |

## AMENDED COMPLAINT

**TO THE HONORABLE COURT:**

COMES NOW Philips Medical Systems Puerto Rico, Inc. ("Philips PR"), Philips Medical Systems Nederland B.V. ("Philips Nederland") and Philips India Limited ("Philips India") (collectively, "Philips" or "plaintiffs"), through their undersigned attorneys and, in support of this Complaint ("Complaint"), respectfully aver and pray as follows:

## NATURE OF ACTION

1.     This is an action for permanent injunctive relief to prevent defendant from causing irreparable harm to plaintiff and for damages to redress injuries suffered by plaintiffs, all because of the wrongful conduct by defendant, in violation of the Computer Fraud and Abuse Act, 18 U.S.C. §1030 ("CFAA"), the Copyright Act, 17 U.S.C. § 1201, Puerto Rico's Industrial and Trade Secret Protection Act, 10 P.R. Laws Ann.

§§4131-4141 ("ITSPA"), Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1201, and for Unfair Competition.

## VENUE AND JURISDICTION

2.     This Court has subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. § 1331 (federal question) because the claims for relief asserted in this case arise under 18 U.S.C. § 1030 (CFAA), 18 U.S.C.§ 1836 (DTSA), and 17 U.S.C. § 1201 (DMCA), and 28 U.S.C. § 1338(a).

3.     The Court also has supplemental jurisdiction over the claims under Puerto Rico law pursuant to 28 U.S.C. §1367.

4.     Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b)(1) as defendant resides in Puerto Rico.  In addition, pursuant to 28 U.S.C §1391(b)(2), venue in this district is proper because a substantial part of the events or omissions giving rise to plaintiffs' claims occurred in this judicial district and/or a substantial part of the property that is the subject of the action is situated here.

## THE PARTIES

5.     Philips PR is a corporation organized and existing under the laws of the Commonwealth of Puerto Rico, engaged, among other things, in the sale and servicing of medical imaging systems that are used at hospitals and medical centers ("Systems" or "Philips' Systems"), with its principal place of business located at 9615 Ave. Los Romeros Montehiedra, Office Centre Suite 512 San Juan PR, 00926-7031. As part of its trade, Philips PR provides for the repair and maintenance of its products through authorized field service engineers ("Field Service Engineer(s)") and/or agents with accredited access to their host computers' access restricted areas, protected by passwords and other security features, among other places, within the Commonwealth

of Puerto Rico, as well as the greater Caribbean and elsewhere. Philips PR is a subsidiary of Royal Philips Electronics (hereinafter, collectively referred to as "Philips").

6.      Plaintiff Philips Nederland is a Netherlands corporation with offices at Veenpluis 4-6, 5684 PC Best.

7.      Plaintiff Philips India is a foreign corporation with a principal place of business in Bangalore, India.

8.      Defendant Alpha Biomedical and Diagnostic Corp. ("Alpha Biomedical") is a corporation organized and existing under the laws of Puerto Rico, engaged, among other things, in the sale and servicing of medical equipment and supplies, with its principal place of business located at Carretera 931 Km. 5.2, Barrio Navarro, Sector Cielito, Gurabo, Puerto Rico 00778.  Alpha Biomedical transacts business in this judicial district and, upon information and belief, enters into contracts with hospitals, imaging and medical centers for the servicing, repair and maintenance of medical equipment as part of its trade, including Philips' Systems.   As further described below in this Complaint, in performing the services at issue in this action, Alpha Biomedical – by and through its own respective corporate officers and employees – conducts tests and diagnostic analysis of Philips' Systems through the unauthorized access of their host computers' access-restricted areas with the purpose of achieving access to trade secret material.

9.      Defendant, Cooperativa de Seguros Multipes de Puerto Rico is an insurance company organized under the laws of the Commonwealth of Puerto Rico or under the laws of a state of the United States of America or of a foreign country, authorized to do business in this jurisdiction, who issued insurance policies to cover defendants for all or some of the claims made through the instant action. Upon

information and belief its address is 38 Calle Nevarez, San Juan PR 00927-4608, PO Box 363846 San Juan, PR 00936-3846.

## FACTUAL ALLEGATIONS

### A.   *The Systems and Protection of the Philips' CSIP and Proprietary Material*

10.   Philips is a company that manufactures diagnostic imaging systems, healthcare information technology solutions, healthcare informatics, defibrillation, and patient monitoring and cardiac devices.  The company operates in several businesses, including Imaging Systems, Customer Services, and Clinical Solutions. The Imaging Systems business consists of x-ray machines ("X-Ray"), Computed Tomography ("CT"), Magnetic Resonance Imaging ("MRI"), Ultrasound, and Nuclear Medicine ("NM") imaging equipment, which are used to create images of various parts of the body in varied detail for radiologists and cardiologists.

11.   Philips' MRI Systems have three components: (1) the operator's console, where an operator controls the machine by using, among other things, the system's host computer;(2) the admission room, where the machine's magnet is located and the patient is placed; and (3) the technical room, where the machine's equipment is housed.

12.   MRI Systems are equipped with Ethernet cards and a remote services network router ("Router"), which permit Phillips to remotely access the MRI Systems through an encrypted Internet connection.

13.   The MRI Systems specifically include, but are not limited to: series of MRIs known as the "Intera 1.5T", "Achieva 1.5T", "Panorama 0.23T" models.

14.   The Systems are complex pieces of medical equipment that rely heavily on accompanying proprietary software developed and/or owned by Philipsthe specific

versions and functionalities of which can vary among Systems. The underline proprietary software underline is referred as *Philips CSIP* ("CSIP" stands for customer service intellectual property).

15.     *Philips CSIP* is stored in the system's host computer and includes software applications/tools, service manuals, documentation, training material, etc. that Philips PR uses to service medical devices, hereinafter, "Proprietary Materials".

16.     *Philips CSIP* provides authorized users with the tools to open protected documentation and access other applications that assist users with the maintenance and servicing, diagnostic, calibration, and other functionalities of Systems and those tools are provided by Philips only to those authorized to access such tools within *Philips CSIP*.

17.     Philips protects *Philips CSIP* software against unauthorized access or use by implementing a variety of measures including (i) contractual protections with employees and customers and (ii) a set of technological, hardware and software tools and processes as access-control mechanisms.

18.     As an example of contractual protections implemented by Philips to protect the *Philips CSIP*, when Philips sells a Systems to a customer in Puerto Rico, Philips does not authorize third-party access to the *Proprietary Materials* as a result of the sales agreement.

19.     Because of the sales agreement, the customers or third-party service providers of their choosing will be able to perform assembly, installation, adjustment, and testing services on Systems, but customers and third-party providers will have levels of restricted access to provide those services.

20.     As an example of tools and processes implemented by Philips, *Philips CSIP* software includes proprietary login, user id and access control features to limit and restrict access to Philips' authorized users only. This is done in such a way that Philips

and non-Philips users may be granted or denied different degrees of access to certain elements of—and tools contained within—the *Philips CSIP* software.

21.     Philips' ability to control access to *Philips CSIP*, and thus to *Proprietary Materials*, and to grant or deny certain levels of access to —non-Philips individuals is important and valuable to Philips because it provides Philips with a means of protecting its confidential, and trade secret material while also providing Philips itself with the ability to provide enhanced maintenance and support services to customers. Relatedly, protection of Philips' diagnostic log files, and other such Philips' proprietary data and trade secrets is of significant commercial value to Philips with respect to Philips' marketing, servicing, and maintenance services to hospitals, medical centers, and other Philips PR customers.

22.     The *Philips CSIP* implemented with the "Intera 1.5T", "Achieva 1.5T", "Panorama 0.23T" MRI systems constitute copyrighted material.

23.     More specifically, the "Smart Card Dongle", and the "MR Response Generator Tool" are proprietary tools designed and developed by Philips for interconnecting and communicating with MR's host computers' access-restricted areas to allow access to its *Philips CSIP*.

24.     "Philips Medical Systems Security" or "PMSSec" is a proprietary legacy[1] platform[2]/solution to protect *Philips' CSIP*.

---

[1] "Legacy. Anything left over from a <u>previous</u> version of the hardware or software. For example, *legacy applications* are applications from earlier versions of DOS or Windows". Barron's Dictionary of Computer and Internet Terms (Barron's Educational Series, Inc. 11th ed. 2013).

[2] "Platform.  A piece of equipment or software used as a base on which to build something else. For example, a mainframe computer can serve as a platform for a large accounting system. Microsoft Windows serves as a platform for application software." Barron's Dictionary of Computer and Internet Terms (Barron's Educational Series, Inc. 11th ed. 2013).

25.     The "Integrated Security Tool" or "IST" is Philips' <u>current</u> proprietary platform/solution used to protect *Philips CSIP*.  IST provides backward compatibility to support legacy PMSSec protected applications still in use today.

26.     The "Smart Card Dongle" is a PMSSec and/or IST authentication and service authorization device utilizing a USB-based smartcard or parallel port dongle that connects to Philips' medical equipment's host computer, to unlock access-restricted areas which host *Philips' CSIP* and *Proprietary Material*.

27.     Likewise, the "MR Response Generator Tool" is a standalone software application that runs on the Field Service Engineer's ("FSE") Windows-based laptop. Access to the *MR Response Generator Tool* is "validated" by IST/PMSSec platforms, so that only users who have an entitlement to use the application can generate a response code.  The laptop does not need to be connected to the internet nor Philips' intranet to work.  The *MR Response Generator Tool* grants access to Philips' MRI system's access-restricted areas, which host *Philips CSIP,* through a non-cryptographic challenge–response mechanism between the FSE's laptop and the MR system's host computer. This method can be used to connect as previously described to the hardware's host computer, *in lieu* of the Smart Card Dongle.

28.     The *MR Response Generator Tool* can be installed on any computer that runs Microsoft Windows OS, XP and higher.  However, gaining actual access to the program is restricted by the IST platform to <u>only</u> those who have an <u>entitlement</u> for the tools.

29.     By way of summary, access to plaintiffs' intellectual property through the host computer of Philips' branded medical system occurs in the following way:

    a.    <u>First</u>, a FSE starts an application called "Field Service Framework" ("FSF");

    b.    <u>Second</u>, this will provide access "Level 0" [Level Zero], with some basic functions that allows the performance of basic configuration, installation, and a few basic diagnostics; and

    c.    <u>Third</u>, within the devices then the FSE has the option to enable advanced/protected software tools to access – through the MRI's host computer - *Philips CSIP*- for purposes of running advanced diagnostics.

30.    Through research and development, and a substantial investment, Philips has developed ways that allow FSEs to have <u>more</u> tools at their disposal than customers or non-Philips representatives to service an MRI. This because embedded on the host computer's software is the *Philips CSIP*, which permits a viewer to access Philips' *Proprietary Materials* to provide authorized personnel with <u>advanced</u> diagnostics.

31.    *Philips CSIP*, which is not available to the public, has varying tiers of access: Levels 0, 1, 2, and 3. As the level of access increases, the amount of proprietary information and trade secrets available also increases: (i) *Level 0* has some restricted information, (ii) *Level 1* gives "more access," (iii) *Level 2* is assigned to Philips' FSEs, and (iv) *Level 3* contains a higher level of restricted information and is assigned only to Philips' national specialists.

32.    Third-party vendors and non-Philips' representatives generally have "Level 0" [Level Zero] access for conducting basic configuration, installation, and basic diagnostics of the MRIs.

33. To service, calibrate, or maintain an MRI machine without using any of the *Proprietary Materials*, a customer or non-Philips representative may use the Basic Level, which is "Level 0".

34. "Level 0" does <u>not</u> have access to the MRI's host computers' access-restricted areas, which host protected intellectual property and require advanced/protected software tools for entry.[3]

35. Each of the Philips MRI's host computers prevents unauthorized access to the *Philips' CSIP* without the required control access software tools- i.e. MR Response Generator Tool and/or Smart Card Dongle – and corresponding IST/PMSSec account.

36. At the time of employment with Philips PR, Philips employees, including FSEs, are required to enter into confidentiality/non-disclosure agreements pursuant to which they agree not to disclose, in whole or in part, and/or by any means whatsoever, Philips' proprietary information and trade secrets.

37. As a result, and upon agreeing not to disseminate Philips' company-owned confidential or otherwise secret or protected information, FSEs are allowed access to and trained in the use of its proprietary service applications and *Philips' CSIP* for servicing and repairing Philips' medical systems.

38. Furthermore, as mentioned above, plaintiffs' "General Terms and Conditions of Sale and Software License" prevents third-party purchasers from granting access to or otherwise permitting non-Philips representatives to use its software for unauthorized purposes or beyond the terms and conditions specified in the license agreement.

---

[3] For MRIs, the MR Response Generator Tool and/or Smart Card Dongle.

39.     Plaintiff's "General Terms and Conditions of Sale and Software License" does not extend to software or other proprietary information securely hosted within plaintiffs' imaging systems, or other equipment's host computers and intended to assist Philips' employees or agents in the installation, testing, service and maintenance of its products.

### B.     *Alpha Biomedical's unauthorized use of deactivated Philips' User ID 34914*

40.     Alpha Biomedical is a third-party provider of maintenance and service for certain of Philips' Systems (as well as for various systems of other major manufacturers in the medical field).

41.     Alpha Biomedical offers such services, at least in part, by hiring former Philips' employees and by improperly using Philips' confidential, secret and proprietary information that those employees learned during the course of their employment with Philips (and which was provided to those employees on a confidential basis and as a condition of their employment).

42.     Radames Bracero ("Mr. Bracero") is a former FSE of Philips PR.

43.     On February 24, 2012, Mr. Bracero ceased his employment with Philips PR.

44.     Philips PR's authorization for Mr. Bracero to utilize Philips proprietary service applications and unlock access to *Philips' CSIP* through the MRI host computers continued until May 31, 2012, when his UserID, and IST account, UserID 34914, were deactivated and his assigned Philips' engineer laptop with all of Philips' proprietary

service applications were retrieved, along with his FSE tools, dongles,[4] fleet vehicle and mobile phone.

45.     Up and until ceasing his employment with Philips PR on February 24, 2012, Mr. Bracero's designated login credentials for unlocking access to its *Philips' CSIP* and for utilizing plaintiff's other proprietary service applications remained unchanged and/or unaltered.

46.     Unknown to Philips PR at the time, prior to Mr. Bracero's termination of employment, he unlawfully misappropriated, extracted, reproduced, downloaded and/or made copies of Philips' *MR Response Generator Tool* for purposes of circumventing its security features. This, in violation of his terms of employment and even though Mr. Bracero knew that he had no legal rights in and to *Philips' CSIP* and proprietary service applications.

47.     Following his employment with Philips PR, Mr. Bracero was hired as a service technician and/or provided services to Alpha Biomedical by means of its own respective corporate officers.

48.     Upon information and belief, Mr. Bracero has been employed by Alpha Biomedical since then as a field service technician.

49.     Upon information and belief, after Mr. Bracero's employment with Philips PR he knowingly transferred, or otherwise disposed of without permission his Philips' deactivated login credentials, UserID 34914, and a circumvented copy of the *MRI Response Generator Tool* to defendant Alpha Biomedical to allow Alpha Biomedical and its employees to interconnect and communicate without authorization with plaintiffs'

---

[4] "Dongle. 1. a device that attaches to a computer, typically on a USB port, and must be present in order to run a particular piece of software, but has no other purpose. Dongles are used to prevent unauthorized copying." Barron's Dictionary of Computer and Internet Terms (Barron's Educational Series, Inc. 11th ed. 2013).

MRI host computers' access-restricted areas, unlock *Philips' CSIP* access protection tools to ultimately gain access to Philip's copyrighted and trade secret property.

50.    Alberto Silva ("Mr. Silva") is also a former employee of Philips PR and upon information and belief holds the title of biomedical technician in Alpha Biomedical since June 2008. Mr. Silva works for defendant as an MRI field service technician.

51.    Upon information and belief, Victor López ("Mr. López") holds the title of Service Manager since March 2003 at Alpha Biomedical and works for the defendant as an MRI field service technician since May 2007.

52.    Alpha Biomedical and its employees, including Mr. López and Mr. Silva, have used Mr. Bracero's deactivated login credentials, copies of his Philips' laptop software, the circumvented/hacked Philips' software applications, such as the *MR Response Generator Tool*, among others, to bypass and circumvent Philips' software security measures for purposes of accessing data, diagnostic tools, maintenance logs, and other information and software functionalities beyond authorized levels of access.

53.    Mr. Bracero's Philip's login credential/ IST account - UserID 34914 -did not have any authority to access the MRI systems because it had been deactivated as of May 2012.

54.    Alpha Biomedical and its employees as a non-Philips representative may use the Basic Level, which is "Level 0" in providing services to Philips' MRI systems.

55.    Mr. Bracero's deactivated credentials were being used by Alpha Biomedical employees, including Mr. Silva and Mr. López, to bypass access control tools and access-restricted areas of the MRIs system's software, specifically, *Philips CSIP* Level 1 and Level 2, which is restricted to Philips' authorized personnel.

56.     As a direct and proximate result of these unfair and unlawful actions, Alpha Biomedical was able to perform servicing on Philips' Systems of a type that they were not authorized or granted license to do, and of a type that intruded upon Philips' proprietary software and trade secrets.

57.     Upon information and belief, Alpha Biomedical has and currently provides maintenance and repair services to Philips' Systems, including, but not limited to, the Philips' MRIs, located at Servicios Radiológicos del Este, Condado X-Ray & Ultrasound (hereinafter, "Condado X-Ray").

58.     On April 2008 Condado X-Ray, purchased a "Philips Intera 1.5T" MRI system from Philips PR.   *See* Quotation attached hereto and made a part hereof as **Exhibit 1.**

59.     The Philips Intera 1.5T's system computer is the heart of the MRI system. It runs the application responsible for orchestrating/controlling the equipment to function for its intended clinical use. It also hosts, through access restricted areas, *Philips' CSIP* used for advanced service of the MRI equipment.

60.     The system logs for the MRI machines in Condado X-Ray indicate that Mr. Bracero's deactivated login credentials, UserID 34914, were used numerous times, after he ceased his employment with Philips PR and during the years he has been employed by Alpha Biomedical, to access *Philips' CSIP* Level 1 and Level 2, which is authorized only to Philips' personnel.

61.     On or about July 2017, Philips PR conducted an inspection of the MRI equipment located in Condado X Ray and the system's log files showed that Mr. Bracero's Philips' deactivated and circumvented login credentials, UserID 34914, had been used along with plaintiff's *MR Response Generator Tool* at various times to unlock

13

the MRI's host computer's access-restricted areas in order to access its *Philips CSIP* Level 1 and Level 2 and the copyrighted and trade secret information contained therein. *See* **Exhibit 2.**

62.     The system's log files of the MRI located in Condado X-Ray more specifically displayed the use of Mr. Bracero's deactivated credentials, UserID 34914, and the names "victor" and "silva" next to the recorded entry. Upon information and belief, the names "victor" and "silva" refer to Mr. Silva and Mr. López, both employees of Alpha Biomedical at the time of the entry and presently.

63.     Upon information and belief, Alpha Biomedical employees, including Mr. Silva and Mr. López, provided maintenance and repair services to MRIs located in Condado X-Ray at times when the system's log filed indicate that Mr. Bracero's deactivated and circumvented login credentials were used to access the MRI's host computer's access-restricted areas.

64.     Mr. Silva and Mr. López both for the benefit of his employer, were able to unlawfully bypass and circumvent Philips' software security measures for purposes of accessing protected data, diagnostic tools, maintenance logs, and other information and software functionalities beyond authorized levels of access.

65.     Defendant intentionally accessed *Philips' CSIP* because the system's log files of Condado X-Ray's MRI machine indicate that CSIP Levels 0, 1, and 2 were *locally* rather than remotely accessed multiple times during relevant times.

66.     Alpha Biomedical used misappropriated trade secret and proprietary information from Philips' former employees to gain unauthorized access to *Philips CSIP*.

67.     Defendant's activities specifically involved actively unlawfully bypassing and circumventing the access-protection and access-limiting features of *Philips CSIP*.

While the conduct set forth was confirmed at Condado X Ray -- upon information and belief—defendant engages in the same improper and unauthorized conduct at sites it services island wide.

### C. *Alpha Biomedical's actions in the Metro Pavía Health, Inc. affiliated hospitals*

65.     On or about April 2018, Alpha Biomedical committed acts at the Metro Pavia Health System Inc. hospitals that resulted in Alpha Biomedical providing maintenance and support services for those hospitals and/or medical facilities that were achieved only because Alpha Biomedical unlawfully exceeded its authorized levels of access to Philips's proprietary software on the serviced Philips' Systems, and did so by using misappropriated trade secret information to actively circumvent and bypass access controls in violation of federal and state laws.

66.     The Metro Pavia Health, Inc. ("Metro Pavia Inc.") is a chain of hospital in Puerto Rico, with twelve (12) affiliated hospitals and more than 5,000 professionals.

67.     Among the Metro Pavia Inc. affiliated hospitals is Hospital Metropolitano Dr. Susoni, Arecibo ("Hospital Dr. Susoni") and Pavia Breast & Imaging ("Pavia Breast & Imaging").

68.     Among other equipment, on December 2010, Hospital Dr. Susoni acquired an Achieva 1.5T MRI system from Philips PR. *See* Quotation attached hereto and made a part hereof as **Exhibit 3.**

69.     Among other equipment, on September 2009, Pavia Breast & Imaging acquired an Achieva 1.5T MRI system from Philips PR. *See* Quotation attached hereto and made a part hereof as **Exhibit 4.**

70.    On December 2012, Philips PR executed a *Customer Care Service Agreement* with Metro Pavia Health System (the "Metro Pavia Inc. Service Agreement") for the repair, maintenance, and warranty work on Philips equipment in the Metro Pavia Inc. hospitals and facilities for an annual total of $2,001,491.79.  *See* **Exhibit 5.**

71.    The *Metro Pavia Inc. Service Agreement* was originally set to expire on November 2016, but the agreement was later amended to extend its duration to December 2017.

72.    On December 2017, surprisingly, Metro Pavia Inc. informed Philips PR that it will not renew the *Metro Pavia Inc. Service Agreement* and would instead contract with Alpha Biomedical for the same services.

73.    Upon information and belief, during the month of April 2018, Alpha Biomedical was called upon to provide repair and maintenance works to Philips' Systems at various of the Metro Pavia Inc. affiliated hospitals, including Hospital Dr. Susoni and Pavia Breast & Imaging.

74.    Upon information and belief, Alpha Biomedical, through its employees, hacked and/or illegally accessed the *Achieva 1.5T Software* manipulating and/or circumventing access-control measures that effectively control access to *Philips CSIP* by using a fake UserID and IST account, "UserID 12345". By using UserID 12345 Alpha Biomedical was able to bypass and circumvent additional access-control measures by using and exploiting functionalities within the System that would not have been available to its employees had he gained access to the System via authorized methods, such as advanced diagnostics.

75.     The unidentified UserID 12345 has a *Philips' CSIP* tier of access including Level 1, Level 2, and Level 3, each of which is restricted to Philip's authorized personnel, in fact Level 3 is assigned exclusively to Philips' national specialists.

76.     The Philips' IST central backend database (at Philips' headquarters), named Philips Medical System Security ("PMSSec"), keeps a track of all IST account numbers ever issued by Philips and the current and historical access levels granted to such accounts.

77.     PMSSec shows that there is no matching account number for IST number "12345" and that there was no valid variation of IST #12345 assigned to Puerto Rico in April 2018.

78.     On or about May 2018, Hospital Dr. Susoni placed a request for maintenance and support with Philips PR.  Accordingly, a Philips PR FSE analyzed the Achieva 1.5T system's log files, which showed that the System had been accessed on April 29, 2018 using the circumvented UserID and IST account. *See* **Exhibit 6.**

79.     Specifically, the system's log file of the Achieva 1.5T located in Hospital Dr. Susoni disclosed that UserID 12345 logged in during the time Alpha Biomedical was the service and maintenance provider of the system.

80.     Likewise, on or about May 2018, Pavia Breast & Imaging placed a request for maintenance and support with Philips PR.  Accordingly, a Philips PR FSE analyzed MR's the System's log files, which showed that the Achieva 1.5T had been accessed on April 28, 2018 using "UserID 12345".  The system's log file showed that the UserID 12345 logged in during the time Alpha Biomedical was providing service to the system. *See* **Exhibit 7.**

81.     The manners in which Alpha Biomedical and its employees were able to manipulate – i.e. create, remove, spoof or bypass –security control measures without an active and authorized Philips' IST/PMSSec account to gain access to *Philips CSIP* and *Proprietary Materials* was not authorized by plaintiff and has been pursued by defendant clandestinely.

82.     Upon information and belief, Alpha Biomedical's conduct—and the conduct of those working for defendant—is not limited in time or geographic location to the identified events at the Hospital Dr. Susoni and Pavia Breast & Imaging. Upon information and belief, Alpha Biomedical's conduct—and the conduct of those working for defendant and for the benefit of the corporation —is, instead, representative of widespread and ongoing conduct.

### D. The Damages and/or "loss"

83.     Alpha Biomedical has impaired the integrity of the *Intera 1.5 Software* and the *Achieva 1.5T Software* by copying and modifying them to disable access controls, and thereby allowing unauthorized users to gain unrestricted access to protected material.

84.     The *Intera 1.5 Software* and the *Achieva 1.5T Software* have been damaged because it is meant to protect Philips's intellectual property and because of defendant's conduct they are no longer preforming said functionality.

85.     Philips PR and the other plaintiffs have suffered loss that far exceeds $5,000 in value in a one-year period. It has incurred in costs following the engagement of iDiscovery Solutions, Inc., forensic expert, and has spent many hours attempting to determine how the breaches occurred, conducting a damage assessment, restoring the

data and program/system, making technical updates to reduce future breaches and deploying technical updates, among others.

86.    Plaintiff's ability to attract and retain customers for the repair and maintenance of its products depends on the continued security and integrity of the *Philips' CSIP* embedded on the equipment it manufactures, which allow for conducting advanced tests and diagnostic analyses not available to the public.

87.    Unless permanently enjoined, defendant's actions will continue to cause harm to Philips, and Philips  has no adequate remedy at law.

### FIRST CAUSE OF ACTION
### 18 U.S.C. §1030(a)(2)(C)
### (CFAA)

88.    Plaintiffs repeat and reallege the averments set forth above.

89.    A person infringes Section 1030(a)(2) of the CFAA if he/she "intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains … information from any protected computer".  *See* 18 U.S.C. §1030 (a)(2).

90.    Protected applications require a computer to execute proprietary application code in order to function and produce the output designed.

91.    Plaintiffs maintain proprietary and/or ownership rights over the *Intera 1.5 Software* and the *Achieva 1.5T Software* and all data and trade secret material securely hosted within plaintiff's MRI's host computers.

92.    *Philips' CSIP* interconnects and communicates with its MRI's host computers' access-restricted areas to allow access.

93.    *Philips CSIP* embedded into the MRI's host computers prevents unauthorized access to *Philips' Proprietary Materials* without the required

advanced/protected tools – i.e. MR Response Generator Tool, and/or Smart Card Dongle – and corresponding IST/PMSSec account.

94.    The MRI equipment such as, but not limited to, Philips Intera 1.5T, Achieva 1.5T, and Panorama 0.23T are protected computers since they are affected by, used or involved in interstate commerce and are connected and operate through the Internet.

95.    Following his employment with Philips PR, plaintiff  rescinded Mr. Bracero's, permission to use – through the MRI host computers – *Philips' CSIP* for purposes of accessing the trade secret/copyrighted/confidential information contained therein to run advanced diagnostics by, among other things, deactivating his UserID and IST accounts.

96.    Alpha Biomedical's actions of using a copy of the hard drive of the laptop that Mr. Bracero copied from Philips, the hacked and/or circumvented *MR Response Generator Tool,* and/or Mr. Bracero's deactivated login credentials and creating and using the fake UserID and IST account, "ID 12345"to interconnect and communicate with Philips' MRI's host computers' access-restricted areas for purposes of gaining access to *Philips' Proprietary Materials* and its intellectual property, and providing their customers with advanced diagnostics through the use of plaintiff's trade secret/copyrighted material/confidential information, constitute an intentional procurement/improper access of computer information – i.e. without authorization.

97.    All access to the secure areas of the Philips branded MRIs containing/hosting plaintiff's proprietary information have exceeded authorization.

98.    Access by Alpha Biomedical in Condado X-Ray, Hospital Dr. Susoni and Pavía Breast & Imaging resulted in them providing maintenance and support services

for those facilities achieved only because Alpha Biomedical unlawfully exceeded authorized levels of access to Philips' *CSIP,* and did so specifically by illegally circumventing and wrongfully bypassing protective measures.

99.   Defendant exceeded levels of authorized access to the MRI Systems because the software licensing that accompanied the sale of the MRI Systems did not extend to programs like the CSIP tool*,* and defendant had no authority whatsoever from Philips to access the *Philips CSIP* during the instances revealed by the MRI machines' logs.

100.   Most particularly, Philips' "General Terms and Conditions of Sale and Software License" does not extend to *Proprietary Service Applications*  or other proprietary information securely hosted within plaintiff's MRI's host computers and intended to assist Philips' employees or agents in the installation, testing, service and maintenance of its products; and prevents third-party purchasers from granting access or otherwise permitting non-Philips representatives to use its software for unauthorized purposes or beyond the terms and conditions specified in the license agreement.

101.   All of defendant's actions, as previously outlined, have been intentional, malicious, and/or willful to gain an unfair commercial advantage.

102.   All of defendant's actions, as previously outlined, occurred after Mr. Bracero and Mr. Silva ceased working for Philips PR.

103.   Philips is authorized to bring this cause of action under the CFAA against defendant because it has been proximately harmed by defendant's unauthorized access to protected information in the *Philips CSIP*, which is data stored in the MRI System but owned by Philips.

104.   Through defendant's actions, as outlined in paragraphs above, defendant has obtained information from protected computers, since the data contained where the MRIs and other systems defendant wrongfully accessed securely host *Philips' CSIP*, constitutes trade secret/confidential information of high commercial value and importance, useful to any entity which would compete with Philips PR, if publicized.

105.   CSIP Levels 1, 2, and 3 contain proprietary information that is not available to the public, and the logs from the MRI Systems reveal that *Proprietary Materials* were accessed multiple times from the MRI Systems.

106.   Section 1030(g) of the CFAA expressly provides that "[a]ny person who suffers damage or loss because of a violation of this section [§1030] may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief", so long as one of the five factors listed in Section 1030(c)(4)(A)(i) is present. *See* 18 U.S.C. §1030(g).

107.   Defendant's actions have caused and will continue to cause plaintiff to suffer "damage" and "loss", as those terms are defined in Sections 1030(e)(8) and 1030(e)(11) of the CFAA (18 U.S.C.A. §§1030(e)(8) and 1030(e)(11)), respectively, substantially in excess of $5,000.00 over a one-year period.

108.   With respect to "loss", plaintiffs have already incurred costs in excess of $5,000.00 over a one-year period investigating defendant's security breach or intrusion into the MRI's host computers by engaging the services of experts to ascertain how it occurred. In addition, Philips has spent many hours conducting independent investigations to evaluate the MRI's hacked system for damage to its security protocols; attempting to update, reprogram, restore and/or reconfigure said equipment's security protocols; preventing defendant's infiltration and gathering of plaintiff's trade

secrets/confidential information; and/or otherwise analyzing the circumstances of defendant's unauthorized access into the *Philips' CSIP*.

109.    With respect to "loss", Philips PR has also experienced lost revenue as a direct and proximate result of defendant's wrongful and unfair actions. Plaintiffs have already lost the value of the *Metro Pavia Inc. Service Agreemen*t, a multi-million-dollar valued contract, and in all likelihood other service contracts.

110.    With respect to "damage", among other, plaintiffs have already suffered the disruption and/or impairment to the integrity and/or security of the *Intera 1.5T Software* and *Achieva 1.5T Software*.

111.    As such, pursuant to 18 U.S.C.A. §1030(g), plaintiff is entitled to maintain this civil action against defendant to obtain compensatory damages and injunctive or other equitable relief for the reasons identified above. Defendant's conduct involves at least one of the factors identified in 18 U.S.C.A. §1030(c)(4)(A)(i), including the factor set forth in subclause (I): the loss to plaintiff and its customers as a result of defendant's conduct during a one-year period aggregating at least $5,000.00 in value.

**SECOND CAUSE OF ACTION**
**17 U.S.C. § 101, *et seq***
**(Copyright Infringement)**

112.    Plaintiff repeats and realleges the averments set forth above.

113.    Philips is the owner of the *Philips' CSIP* software embedded in the MRI equipment located at Hospital Dr. Susoni, Pavia Breast & Imaging and Condado X-Ray, referenced here as the *Intera-Achieva-Panorama Software*, of which substantially consist of material wholly original and is copyrightable subject matter under the laws of the United States. For each copyright, Philips has complied in all respects with the

Copyright Act and all of the laws of the United States governing copyrights and has received certificates of registration from the Register of Copyrights. *See* **Exhibit 8.**

114.   At all times, Philips has been the owner of all rights, title, and interest to each of the copyrights in suit.

115.   Defendant engaged in direct and/or contributory copyright infringement by copying, reproducing, distributing, displaying, using, and/or creating unauthorized derivative works of the *Intera-Achieva-Panorama Software* and/or parts thereof, without authorization.

116.   Defendant has further engaged in acts of copyright infringement by creating copies of *Philips' Proprietary Materials* in the memory of the *Intera-Achieva-Panorama Software* by its unauthorized use of the software.

117.   All of the defendant's acts were and are performed without the permission, license, or consent of Philips.

118.   Alpha Biomedical has derived substantial financial benefit from infringement of plaintiff's copyrights allowing its employees to run advanced tests and diagnostics on the equipment they service that defendant would not have had but for its improper conduct, in addition to causing damages to Philips that include business losses, unfair competition, and intrusion upon trade secrets.

119.   Defendant has willfully infringed, and unless enjoined will continue to willfully infringe Philips' copyrights.

120.   Defendant has willful and deliberate infringement of Philips' copyrights entitles plaintiff to an award of its attorney fees pursuant to 17 U.S.C.A. § 505.

## TIHRD CAUSE OF ACTION
### 17 U.S.C. § 1201, *et seq.*
### (DMCA)

121.    Plaintiffs repeat and reallege the averments set forth above.

122.    Plaintiffs employ numerous technological measures including, but not limited to, a valid UserID and IST account, a "Smart Card Dongle" – an authentication and service authorization device- the "MR Response Generator Tool" – a protection scheme and protocol- all to protect and control access to copyrighted material in the MRI systems it manufactures.

123.    Alpha Biomedical has engaged in conduct that circumvents a technological measure that effectively controls access to a copyrighted work, including using and/or creating a deactivated and fake UserID and IST account, and reproducing a copy of a circumvented and/or hacked *MR Response Generator Tool*, among other infringing conduct to gain access to protected information.

124.    Defendant intentionally used tools and/or credentials to defeat and circumvent technological measures that control access to Philips's protected software, the *Philips' CSIP* embedded in the MRI systems.

125.    Alpha Biomedical has intentionally and/or knowingly circumvented technological measures that effectively control access to a work or works protected under Title 17, in violation of 17 U.S.C. § 1201(a)(1)(A) of the DMCA.

126.    Defendant has not obtained the right to use or access Philips CSIP from plaintiffs. All of defendant's acts were and are performed without permission, license or consent of plaintiffs.

127.    Upon information and belief, defendant has received substantial benefits, revenues, compensation and/or cost savings as a direct and proximate result of the

25

foregoing unfair and wrongful scheme.

128.    Plaintiffs are entitled to the remedies provided by 17 U.S.C. § 1203, including but not limited to, injunctive relief, compensatory damages or statutory damages, punitive damages, and costs and attorneys' fees in amounts to be proven at trial.

129.    Defendant has willfully infringed, and unless enjoined will continue to unlawfully infringe plaintiffs' copyrighted content, as set forth above, by knowingly circumventing access controls to plaintiffs' copyrighted software in violation of 17 U.S.C. § 1201 *et seq.*

## FOURTH CAUSE OF ACTION
### 18 U.S.C. § 1836
### (DTSA)

130.    Plaintiffs repeat and reallege the averments set forth above.

131.    *Philips' CSIP* and *Philips' Proprietary Materials* contained therein constitute trade secrets, since the absconded proprietary information obtained by defendant through the circumvention of access control measures is of high commercial value and importance, and is useful to any entity, which would compete with plaintiffs, including Philips PR, if publicized.

132.    *Philips' CSIP and Philips' Proprietary Material* contain confidential and proprietary trade secrets, which include, without limitation, maintenance logs, service manuals, documentation, training material, information and software data that assists FSEs with the maintenance and servicing, diagnostic, calibration, and other and functionalities of Systems - information necessary for Philips to conduct their business in a competitive marketplace.

133.    Philips through a considerable investment in research and development has found ways to develop, design, and enhance the company's products, services, and technologies. These efforts have led the company to create a series of trade secrets used by Philips to gain an economic advantage.

134.    Indeed, Philips PR relies upon these trade secrets to achieve an advantage in the marketplace with respect to the quality, range, and efficiency of the repair and maintenance services that it is able to offer and with respect to pricing related thereto. Additionally, Philips PR relies on the its trade secret proprietary software and access control systems to protect the public from potential unnecessary radiation exposure as a result of modification or customization of the systems by unauthorized or insufficiently trained users.

135.    At all times relevant, plaintiffs have undertaken significant efforts and invested substantial time and money to protect *Philip's CSIP*, and *Philips Proprietary Materials* contained therein.

136.    Among the steps taken to ensure the protection and non-disclosure of its proprietary computer systems and trade secret information contained therein, Philips PR requires that its employees enter into a Confidentiality Agreement precluding the disclosure – either directly or indirectly – of any information that would be contrary to plaintiff's private interests, including, without limitation, any secret or confidential information relating to the business of Philips.

137.    As additional measures taken to ensure the protection and non-disclosure of its proprietary computer systems and trade secret information contained therein, Philips keeps the *Proprietary Materials* in secure and restricted areas of its MRI's host computers protected by access control tools.

138.   Beyond that, to ensure the protection and non-disclosure of its proprietary computer systems and trade secret information contained in *Philips CSIP,* Philips PR does not disclose the same to individuals or entities not authorized to access such information.

139.   Among other steps taken to ensure the protection and non-disclosure of its proprietary computer systems and trade secret information contained therein, plaintiffs' MRI's host computers prevent the unauthorized access to *Philips' CSIP* without the required advanced/protected software tools – i.e. MR Response Generator Tool, and/or Smart Card Dongle – and corresponding IST/PMSSec account, which serve as access control measures.

140.   Philips has expended significant money and effort in developing the *Philips CSIP* and access control systems, and the information would be difficult to properly acquire or duplicate by defendant or other competitors of Philips PR.

141.   Alpha Biomedical employees misappropriated Philips' trade secrets by acquiring them through unlawful means, disclosing and using them on behalf of plaintiffs' competitor, and in derogation of plaintiffs' interests, and continuing to retain possession of them to this day, all in violation of the DTSA, 18 U.S.C. § 1836, *et seq*.

142.   Defendant has misappropriated plaintiff's trade secrets mostly by using Mr. Bracero's deactivated login credentials, a circumvented/hacked version of Philips' *MR Response Generator Tool*, and/or a fake UserID and IST account, "ID 12345" to unlock plaintiff's MRI's host computers' access-restricted areas; and by ultimately gaining access to *Philips' Proprietary Materials* to unfairly run advanced and more efficient tests and diagnostics for its clients, to the detriment of plaintiffs.

143.    Upon information and belief, defendant's actions occurred after and/or continued to occur after the DTSA enactment date.

144.    Plaintiffs' trade secrets have been transferred to and maintained on Alpha Biomedical computers and other devices and remain in the possession of Alpha Biomedical and its agents and/or employees.

145.    Plaintiffs' trade secrets relate to products and services used in, or intended for use in, interstate commerce.

146.    As a direct and proximate cause of defendant's wrongful conduct, plaintiffs have suffered and will continue to suffer incalculable financial losses, imminent and permanent irreparable harm, loss of the confidentiality of their trade secrets, loss of goodwill, loss of business opportunities, and other continuing harm and damages.

147.    The losses and harm to plaintiffs is ongoing and cannot be remedied by damages alone.

148.    Plaintiffs have no adequate remedy at law for sufficient compensation for the wrongs committed by defendant.

149.    Defendant has acted willfully, maliciously, and with reckless disregard to the rights of Plaintiff, entitling plaintiffs to recovery of double damages and recovery of their reasonable attorneys' fees as provided by 18 U.S.C. §1836(b)(3)(C)(D).

### FIFTH CAUSE OF ACTION[5]
### 10 P.R. LAWS ANN. §§4131-4141;
### (ITSPA)

150.    Plaintiffs repeat and reallege the averments set forth above.

---

[5] Philips PR does not aver or disclose the precise details of the trade secrets/confidential information contained within its MRI's host computers because plaintiffs are not required to do so under ITSPA, for it would result in their public disclosure. *See* 10 P.R. Laws Ann. 10 P.R. Laws Ann. §4139.

151.    Section 4132 of ITSPA defines "trade secret" as "any information – (a) That has a present or a potential independent financial value or that provides a business advantage, insofar as such information is not common knowledge or readily accessible through proper means by persons who could make a monetary profit from the use or disclosure of such information; and (b) for which reasonable security measures have been taken, as circumstances dictate, to maintain its confidentiality." *See* 10 P.R. Laws Ann. §4132.

152.    *Philip's CSIP* is not available for public use and defendant used its employees or agents' gained knowledge to the same while employed by Philips PR to illegally access Philips' *Proprietary Materials*.

153.    *Philips' CSIP* and the *Proprietary Materials* contained therein constitute trade secrets, as that term is defined by ITSPA, inasmuch as the absconded proprietary information obtained by defendant through the circumvention of access control measures is of high commercial value and importance, and is useful to any entity, which would compete with Philips or the other plaintiffs, if publicized.

154.    At all times relevant, plaintiffs have undertaken significant efforts and invested substantial time and money to protect *Philip's CSIP*, and data contained therein, which constitute valuable property belonging to plaintiff.

155.    Among the steps taken to ensure the protection and non-disclosure of its proprietary computer systems and trade secret information contained therein, Philips requires that its employees enter into a Confidentiality Agreement precluding the disclosure – either directly or indirectly – of any information that would be contrary to plaintiff's private interests, including, without limitation, any secret or confidential information relating to the business of Philips.

156. Among the measures taken to ensure the protection and non-disclosure of its proprietary computer systems and trade secret information contained therein, Philips maintains the *Proprietary Materials* in secure or restricted areas of its MRI's host computers protected by access control tools.

157. Beyond that, Philips does not disclose the same to individuals or entities not authorized to access such information.

158. Among the steps taken to ensure the protection and non-disclosure of its proprietary computer systems and trade secret information contained therein, plaintiffs' MRI's host computers prevent the unauthorized access to *Philips' CSIP* without the required advanced/protected software tools – i.e. MR Response Generator Tool, and/or Smart Card Dongle – and corresponding IST/PMSSec account, which serve as control measures.

159. As per Section 4134 of ITSPA "any natural or juridical person who misappropriates a trade secret shall be held accountable for any damages caused to its owner". *See* 10 P.R. Laws Ann. §4134.

160. Defendant has misappropriated plaintiff's trade secrets – as that term is defined by ITSPA – by using Mr. Bracero's deactivated login credentials, a circumvented/hacked version of Philips' *MR Response Generator Tool*, and/or a fake UserID and IST account ("ID 12345") to unlock plaintiff's MRI's host computers' access-restricted areas; and by ultimately gaining access to *Philips' Proprietary Materials* to unfairly run advanced and more efficient tests and diagnostics to its clients.

161. Defendant knows or should know that the acquisition of plaintiff's trade secrets is being conducted through improper means.

162.   Defendant has knowingly taken said property of plaintiff without authorization and/o through improper means and used it for its own benefit – commercial advantage- and to the economic detriment of Philips.

163.   As a direct and proximate result of defendant's actions, Philips has been damaged in an amount no less than ONE AND A HALF MILLION DOLLARS ($1,500,000.00 US).

164.   Accordingly, defendant is liable to Philips under ITSPSA, 10 P.R. Laws Ann. §§4131-4141, which provides for the protection of information that procures a competitive advantage for its owner – i.e. Philips.

165.   Unless enjoined defendant will continue to have access and continue to use plaintiff's trade secrets for their own profit, financial benefit and improper business advantage.

166.   Plaintiffs have been and in the absence of a permanent injunction will continue to be irreparably harmed and damaged by defendant' actions, and they have no adequate remedy at law.

### SIXTH CAUSE OF ACTION
**(Unfair Competition)**

167.   Plaintiffs repeat and reallege the averments set forth above.

168.   Plainly, defendant's actions constitute unfair methods of competition and unfair and deceptive acts under Puerto Rico law, inasmuch as defendant has entered into contracts and/or performed services relying on trade secret/confidential information belonging to plaintiffs, obtained through improper or clandestine means.

169.   Philips' ability to attract and retain customers for repair and maintenance of its products depends on the continued security and integrity, and the proprietary features of its *Philips' CSIP*.

170.   When entering into contracts with hospitals and imaging centers, or other third-party service providers, for the repair and maintenance of Philips' branded equipment, defendant relies on its improper and unauthorized access to *Philips' CSIP* thus misrepresent their rights to access/use such *CSIP* and therefore, their expertise and capabilities to service the equipment. Through such conduct, defendant has gained an improper competitive advantage over Philips that, *inter alia*, caused or may cause Philips to be underbid or to otherwise lose out on business that it would have otherwise obtained.

171.   Defendant's actions have provided Alpha Biomedical with competitive advantages with respect to the services that they are able to offer, and the pricing associated with those services. These are certainly benefits that defendant would not have had but for its improper conduct in accessing and using *Philips' CSIP* beyond the permitted and authorized level.

172.   As a direct and proximate result of defendant's unfair competition, plaintiffs have been damaged in an amount of no less than ONE AND A HALF MILLION DOLLARS ($1,500,000.00 US).

## **PERMANENT INJUNCTION**

173.   Plaintiffs repeat and reallege the averments set forth above.

174.   In addition to monetary damages and other relief sought herein, plaintiffs petition the district court for entry of a permanent injunction, prohibiting defendant— including any and all agents, employees, officers or directors of Alpha Biomedical or

33

others within its control—from engaging in, participating in, or assisting with any and all unauthorized access to *Philips' CSIP* and any and all access and use of *Philips' Proprietary Materials* contained therein, that exceeds Alpha Biomedical authorizations or that otherwise makes unauthorized use of *Philips' CSIP* and *Philips' Proprietary Materials* , and any such other injunctive relief as the Court deems just and proper.

### JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues triable to a jury.

**WHEREFORE**, plaintiffs respectfully request this Honorable Court to enter judgment against defendant as follows:

1.      Declaring defendant to be in violation and liable to plaintiffs under each of the Causes of Action set forth herein;

2.      Permanently enjoining Alpha Biomedical from any further use of plaintiffs' copyrighted, confidential or proprietary information, trade secrets, or any other information of value to plaintiffs that is unlawfully in the possession of the defendant and its agents, employees, officers or directors;

3.      Enjoining defendant from trashing, deleting or destroying any electronic or computer information ("ESI", electronically stored information) pending the outcome of this lawsuit;

4.      Awarding monetary damages to plaintiffs, including but not limited to compensatory damages and statutory, enhanced, and punitive damages, to the extent recoverable by law;

5.      Awarding in plaintiffs' favor all costs and attorneys' fees incurred;

6.      Granting any other relief to plaintiffs as this Court deems just, appropriate, and equitable.

**RESPECTFULLY SUBMITTED**.

**WE HEREBY CERTIFY** that on this same date, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will provide notice to all counsel of record.

In San Juan, Puerto Rico, this 2nd day of August of 2019.

**ADSUAR MUÑIZ GOYCO**
**SEDA & PÉREZ-OCHOA, PSC**
P.O. Box 70294
San Juan, Puerto Rico 00936-8294
Tel: 787.756.9000
Fax: 787.756.9010
Email: epo@amgprlaw.com
larroyo@amgprlaw.com
acasellas@amgprlaw.com

/s/Eric Pérez-Ochoa
Eric Pérez-Ochoa
USDC-PR No. 206314

*/s/Lourdes Arroyo Portela*
LOURDES ARROYO PORTELA
USDC-PR No. 226501

*s/Alexandra Casellas Cabrera*
ALEXANDRA CASELLAS CABRERA
USDC-PR No. 301010

*Counsel for Plaintiffs*