IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| PHILIPS MEDICAL SYSTEMS PUERTO RICO, INC.; PHILIPS MEDICAL SYSTEMS NEDERLAND B.V.; PHILIPS INDIA LIMITED<br><br>Plaintiffs<br><br>vs<br><br>ALPHA BIOMEDICAL AND DIAGNOSTIC CORP.; COOPERATIVA DE SEGUROS MULTIPLES DE PUERTO RICO<br><br>Defendants | CIVIL 19-1488CCC |

**OPINION AND ORDER**

Pending before the Court is Defendant Alpha Biomedical and Diagnostic Corp.'s ("Alpha Biomedical") Motion to Dismiss Amended Complaint under Rules 12(b)(6) and 19. **Docket No. 12**. For the reasons stated below the Court **DENIES** Defendant's Motion to Dismiss.

**I.   RELEVANT PROCEDURAL BACKGROUND**

On May 22, 2019, Plaintiff Philips Medical Systems Puerto Rico, Inc., and other Philips affiliated corporations ("Philips"),[1] filed an original Complaint against Alpha Biomedical, Docket No. 1, which later was modified to an Amended Complaint on August 2, 2019. Docket No. 9. Philips' Amended Complaint asserts that Alpha Biomedical gained unauthorized access, through former Philips employees, to a computer software called *Philips CSIP*

---

[1] The other two corporation appearing as plaintiff in the present suit are Philips Medical Systems Nederland B.V. and Philips India Limited. Docket No. 9 at 2-3.

(Customer Service Intellectual Property). Philips uses the *Philips CSIP* to service the owners of Philips MRI systems.[2] Access to *Philips CSIP* by non-Philips employees is restricted. *Id.* at 8. Only Philips' employees have full access to the program. *Id.* The *Philips CSIP* software is valuable to Philips because it has confidential and trade secret material that helps Philips provide enhanced maintenance and support services to their customers. *Id.* at 6.

The Amended Complaint seeks relief under Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA"); Puerto Rico's Trade Secret Protection Act, 10 P.R. Laws Ann. §§ 4131-4141 ("ITSPA"); Defend Trade Secret Act ("DTSA"), 18 U.S.C. § 1836; Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1201, and Unfair Competition. Docket No. 9 at 1-2. Additionally, Philips request a permanent injunction against Alpha Biomedical. *Id.*

In response to Philips' Amended Complaint, Alpha Biomedical filed a Motion to Dismiss Amended Complaint Under Rules 12(b)(6) and 19 on August 16, 2019, seeking dismissal of all Plaintiff's claims including the permanent injunction. Docket No. 12. Philips filed Plaintiff's Opposition to Motion to Dismiss Amended Complaint under Rules 12(b)(6) and 19, on September 13, 2019. Docket No. 15. A Reply to Plaintiff's Opposition to Motion to Dismiss was later filed by Alpha Biomedical, Docket No. 19, which was subsequently followed by Philips' Sur-Reply. Docket No. 23.

---

[2] "*Philips CSIP* is stored in the system's host computer and includes software applications/tools, service manuals, documentation, training material, etc. that Philips PR uses to service medical devices[.]" *Id.* at 5.

## II.	STANDARD OF REVIEW

Rule 12(b) permits a party to assert defenses against claims for relief. Fed. R. Civ. P. 12. A court, nonetheless, "must construe the complaint liberally," *Aversa v. United States*, 99 F.3d 1200, 1210 (1st Cir. 1996), and a complaint that adequately states a claim may still proceed even if "recovery is very remote and unlikely." *Ocasio-Hernández v. Fortuno-Burset*, 640 F.3d 1, 13 (1st Cir. 2011) (internal quotation marks and citations omitted); *see Katz v. Pershing, LLC*, 672 F.3d 64, 70 (1st Cir. 2012) ("In considering the pre-discovery grant of a motion to dismiss for lack of standing, [courts] accept as true all well-pleaded factual averments in the plaintiff's . . . complaint and indulge all reasonable inferences therefrom in his favor.") (internal citation omitted).

A defendant may move to dismiss an action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A court must decide whether the complaint alleges sufficient facts to "raise a right to relief above the speculative level." *Id.* at 555.

When considering a motion to dismiss pursuant to FRCP 12(b)(6), the Court must first "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012). Then, the Court must accept all non-conclusory factual

allegations in the Complaint as true and draw any reasonable inferences in favor of the plaintiff.  *Ocasio-Hernandez*, 640 F.3d at 12.

Also, a party may move for dismissal of an action for failure to join a necessary party pursuant to Federal Rule of Civil Procedure 19 ("Rule 19"). Fed. R. Civ. P. 12(b)(7).  Courts employ a two-step approach to establish whether an action should be dismissed pursuant to Rule 12(b)(7).  *See United States v. San Juan Bay Marina*, 239 F.3d 400, 405 (1st Cir. 2009); Fed. R. Civ. P. 19.  First, a court examines "whether the [party] fits the definition of those who should 'be joined if feasible' under [R]ule 19(a)."  *Cruz-Gascot v. HIMA-San Pablo Hosp. Bayamón*, 728 F. Supp. 2d 14, 26 (D.P.R. 2010). Second, a court ascertains whether joinder is feasible.  *Id.* at 27.

### III.   FDA'S INSTALLATION INSTRUCTIONS

As a first ground for dismissal Alpha Biomedical allege that 21 C.F.R. § 820.170 bars Phillips' Amended Complaint.[3]  Docket No. 12 at 5-6. Specifically, Defendant contends that Philips failed to provide adequate directions for installation and inspection of the MRI systems, as required by the

---

[3]The Regulation text provides:

(a)   Each manufacturer of a device requiring installation shall establish and maintain adequate installation and inspection instructions, and where appropriate test procedures. Instructions and procedures shall include directions for ensuring proper installation so that the device will perform as intended after installation. The manufacturer shall distribute the instructions and procedures with the device or otherwise make them available to the person(s) installing the device.

(b)   The person installing the device shall ensure that the installation, inspection, and any required testing are performed in accordance with the manufacturer's instructions and procedures and shall document the inspection and any test results to demonstrate proper installation.

21 C.F.R. § 820.170.

U.S. Food and Drug Administration ("FDA"). *Id.* at 6. Further on, Alpha Biomedical urges the Court to dismiss the Complaint as "its claims would require this Honorable Court to undermine the FDA's mission to regulate the manufacturing process of medical devices for the eventual benefit of patients." Docket No. 19 at 3.

Under 21 C.F.R. § 820.170 the FDA sets a duty to a manufacturer of a device, such as Philips, to provide installation instructions and test procedures to the person installing the device. From the plain language of § 820.170 the Court can infer that the instructions and directions referenced in § 820.170 only pertain to instructions regarding installation work, and additionally to whom such instruction should be made available. The regulation does not require a manufacturer to disclose information such as the one contained in *Philips CSIP*, and that Plaintiff is trying to protect through the filing of his Amended Complaint.

Therefore, Alpha Biomedical incorrectly assumes that § 820.170 requires Philips to disclose information about the inner working of MRI systems that, as alleged by Phillips, contains Copyright and Trade Secret information. Moreover, Alpha Biomedical's Motion to Dismiss does not cite any legal authority that requires Philips to disclose information that leads to the inner workings of the MRI system.

## IV.   RULE 12(B)(6) DISMISSAL OF CLAIMS

*a.   Computer Fraud and Abuse Act (CFAA)*

Alpha Biomedical's Motion to Dismiss seeks dismissal of the CFAA claim by alleging that Philips failed to plead that: (1) the MRI computers are *protected computers* and therefore subject to interstate commerce, (2) Alpha Biomedical *exceeded authorized access*, and (3) there was a *loss* under to 18 U.S.C. § 1030(e)(8) and § 1030(e)(11).  Docket No. 12 at 8-11.  The subsequent sub-sections will explain why the Court is not persuaded by Alpha Biomedical's arguments regarding Philips' CFAA claim.

1.   <u>Plaintiff failed to plead that MRI system are protected computers</u>.

Alpha Biomedical contends that Philips' CFAA claim, 18 U.S.C. § 1030(a)(2)(C) and § 1030(g), must be dismissed as the MRI computers are not *protected computers* for purpose of complying with the interstate commerce requirement.  Docket No. 12 at 8.  The CFAA defines a *protected computer* as a computer "which is used in or affecting interstate or foreign commerce or communication, including a computer located outside the United States that is used in a manner that affects interstate or foreign commerce or communication of the United States[.]"  18 U.S.C. § 1030(e)(2)(B).

Defendant's arguments fail as the Courts finds that a computer with internet access generally satisfies the *protected computer* requirement under the CFAA.  *See United States v. Yucel*, 97 F. Supp. 3d 413, 417-418 (S.D.N.Y 2015); *see also United States v. Nosal*, 676 F.3d 854, 859 (9th Cir. 2012).  This is so because "the internet is an instrumentality and channel of interstate commerce."  *United States v. Trotter*, 478 F.3d 918, 921

(8th Cir. 2007) (citing *United States v. MacEwan,* 445 F.3d 237, 245 (3rd Cir. 2006)). Additionally, this Court has specifically held that MRI systems are *protected computers* under the CFAA. *Philips Medical System Puerto Rico, Inc. v. GIS Partner Corp.*, 203 F. Supp. 3d. 221, 231 (D.P.R. 2016).

Here Philips' Amended Complaint correctly pleads that the MRI systems are connected to the internet. Specifically, Philips pleads that the "MRI systems are equipped with Ethernet cards and a remote service router ("Router"), which permit Philips to remotely access the MRI system through an encrypted Internet connection." Docket No. 9 at 4. This pleading is sufficient to satisfy the interstate commerce requirement set forth in 18 U.S.C. § 1030(e)(2)(B).

Alpha Biomedical further urges the Court that although the MRI system computers were connected to the internet, Alpha Biomedical did not affect interstate commerce, in any way, because Philips is the only one who could use the relevant equipment in interstate commerce. Docket No. 19 at 5. This issue was in part addressed in *United States v. Mitra*, 405 F.3d 492 (7th Cir. 2005). The *Mitra* court explained that "the [CFAA] statute does not ask whether the person who caused the damage acted in interstate commerce; it protects computers (and computerized communication systems) used in such commerce, no matter how the harm is inflicted." *Mitra*, 405 F.3d at 496.

Defendant suggest that this Court should not apply *Mitra's* rationale to the facts of the present case, because that case involved a conviction in which the defendant interfered with a radio system and not a computer connected to the internet as in the instant case. Docket No. 19 at 6. The Court is not convinced by Alpha Biomedical's argument. *Mitra's* holding does not rely on

what type of computer was used for interfering with interstate commerce, and therefore the Court understands that *Mitra's* rationale applies either to radio or MRI systems. *See Philips Medical System Puerto Rico, Inc.*, 203 F. Supp. 3d. at 231.

    2.    <u>Plaintiff failed to plead that defendant exceeded authorized access</u>.

Alpha Biomedical's second ground for dismissal of the CFAA claim alleges that Philips did not *exceed authorized access* to the MRI computers. Docket No. 12 at 9. Defendant argues that Philips "implicitly concede, by lack of allegation to that effect, that no agreement have [sic] been executed between Alpha and Philips regulating what is to be considered authorized or unauthorized access." *Id.* at 10. Also, Defendant further contends that Philips did not make any allegation in the Amended Complaint about the level of authorization granted by it to the hospitals, owners of the MRIs, or to Alpha Biomedical. *Id.*

A claim under 18 U.S.C. § 1030(a)(2)(C) requires that a defendant must, without authorization or exceeding authorized access, intentionally access a *protected computer* to obtain information. *See Philips Medical System Puerto Rico, Inc.*, 203 F. Supp. 3d at 231-232. The Statute provides two ways of committing a violation against § 1030(a)(2)(C). *Id.* at 232-233. The first way to violate § 1030(a)(2)(C) is to access the protected computer w*ithout authorization* and second way is *exceeding authorized access*. *Id.* at 233 (citing *Musacchio v. United States*, 136 S.Ct. 709 (2016)).

After examining the entire Amended Complaint, the Court finds that Philips pleads that Alpha Biomedical *exceeded authorized access* to *Philips*

*CSIP*.[4]  Contrary to Defendant's argument, no agreement between them and Philips is necessary to *exceed unauthorized access*. *Philips Medical System Puerto Rico, Inc.*, 203 F. Supp. 3d at 235 (while defendant likely had some authority to access the *computer* (which they obtained from Medical X-Ray and the Hospital), they likely exceeded that authority by hacking into proprietary software—the CSIP Tool (where Philips maintains proprietary data and files)—without any authorization whatsoever from Philips). Also, the Amended Complaint pleads the levels of authorization granted by Philips to hospitals and third parties like Alpha Biomedical. Specifically, the Amended Complaint pleads that:

---

[4] Philips' Opposition makes a recollection of the pleading included in the Amended Complaint to successfully show that Alpha Biomedical exceeded authorized access. Specifically, Philips points out that the Amended Complaint pleads:

> (1) that Condado X-Ray & Ultrasound and the hospitals within the Metro Pavia Health, Inc. chain, specifically, Hospital Metropolitano Dr. Susoni, Arecibo and Pavia Breast & Imaging owned the Philips' MRI systems (**Docket No. 9**, Am. Comp. ¶¶ 58, 68, and 69); (2) that defendant provided services to the MRI systems in these facilities; thus, the facilities permitted defendant's use (**Docket No. 9**, Am. Comp. ¶¶ 57, 73, 78-80); (3) that the software licensing that accompanied the sale of the MRI systems (referred in the Amended Complaint as "General Conditions of Sale and Software License") did not extend to programs like the *Philips' CSIP*, (**Docket No. 9**, Am. Comp. ¶¶ 17-20, 38-39 and 100); (4) that the *Philips CSIP* embedded in the MRI system is not available to the public, it has varying tiers of access: Levels 0, 1, 2, and 3, and to service, calibrate, or maintain an MRI system without using any of the *Proprietary Materials*, an equipment owner or non-Philips representative may only use the basic level, which is "Level 0" (**Docket No. 9**, Am. Comp. ¶¶ 31-34); (5) that while providing service to the MRI system, defendant, who employs former Philips' employees, bypassed, circumvented or spoofed Philips' security measures using a deactivated Philips' login credential and using a fake UserID and IST account, "UserID 12345", in order to access *Philips CSIP* Levels 1, 2, and 3. (**Docket No. 9**, Am. Comp. ¶¶ 47, 50, 52, 55, 65, 74 and 75); and (6) the defendant had no authority whatsoever to access the *Philips CSIP* Levels 1, 2, and 3 during the instances revealed by the MRI system logs because those levels are restricted to Philips' authorized personnel (**Docket No. 9**, Am. Comp. ¶¶ 60-61, 74-75).

Docket No. 15 at 10.

CIVIL 19-1488CCC          10

> the *Philips CSIP* embedded in the MRI system is not available to the public, it has varying tiers of access: Levels 0, 1, 2, and 3, and to service, calibrate, or maintain an MRI system without using any of the *Proprietary Materials*, an equipment owner or non-Philips representative may only use the basic level, which is "Level 0.

Docket No. 9 at ¶¶ 31-34.

Plaintiff failed to plead that there was a loss under to 18 U.S.C. § 1030(e)(8) and § 1030(e)(11).

Alpha Biomedical's third and final ground for dismissal of the CFAA claim states that Philips failed to adequately plead loss during any one (1) year period aggregating at least $5,000 in value, pursuant to 18 U.S.C. § 1030(e)(8) and § 1030(e)(11). Docket No. 12 at 10. The Motion to Dismiss contends that "investigating defendant's security breach or intrusion into the MRI's host computers by engaging the services of expert to ascertain how it occurred [,]" are not cognizable *losses* under the CFAA as "losses under the CFAA must relate [to] an impairment or unavailability of data." *Id.* at 11.

Alpha Biomedical's arguments regarding *loss* under 18 U.S.C. § 1030(g) are misplaced.[5] This Court has previously ruled that the "cost of investigating

---

[5] The CFAA states that:

> Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief. A civil action for a violation of this section may be brought only if the conduct involves 1 of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i). Damages for a violation involving only conduct described in subsection (c)(4)(A)(i)(I) are limited to economic damages. No action may be brought under this subsection unless such action is begun within 2 years of the date of the act complained of or the date of the discovery of the damage. No action may be brought under this subsection for the negligent design or manufacture of computer hardware, computer software, or firmware.

18 U.S.C. § 1030(g).

or remedying damage to a computer" are cognizable *losses* under the CFAA. *Philips Medical System Puerto Rico, Inc.*, 203 F. Supp. 3d at 237 (citing *Nexans Wires S.A. v. Sark-USA, Inc.*, 319 F. Supp. 2d 468, 475 (S.D.N.Y. 2004)); *see also Shamrock Foods Co. v. Gast*, 535 F. Supp. 2d 962, 963-64 (D.Ariz. 2008). After examining Philips' Amended Complaint, the Court rules that Philips correctly pleaded a *loss* under the CFAA, as the Amended Complaint states that Philips hired experts to conduct a damage assessment, restore the data and program/system, and make technical updates to reduce future breaches, among other task. Docket No. 9 at ¶¶ 85 and 108. This type of *losses* fall within the scope of losses referred to in *Philips Medical System Puerto Rico*.

    b.    *Copyright Infringement*

Alpha Biomedical contends that this Court should dismiss Philips' Copyright Infringement claim because the Amended Complaint failed to demonstrate that the copying of *Philips CSIP* is beyond the scope of the license possessed by the customers that Alpha serviced. Docket No. 12 at 12.

A Copyright Infringement claim requires that the plaintiff proves two elements: "(1) ownership of a valid copyright and (2) copying of the protected work by the alleged infringer." *Mag Jewelry Co. v. Cherokee, Inc.*, 496 F.3d 108, 114 (1st Cir. 2007) (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340 (1991)). Alpha Biomedical does not dispute the first element. Docket No. 12 at 12. But, it still alleges that Philips did not adequately plead the second element. The Court disagrees with Alpha Biomedical. The Amended Complaint specifically pleads the process of how Alpha Biomedical

tried to circumvent/hack *Philips CSIP*, Docket No. 9 at 15-18, to obtain copies of the software. *Id.* at 24. Additionally, Plaintiff states that Defendant's actions were conducted without their authorization. *Id.*

Moreover, as stated above, the MRI owners could not grant Alpha Biomedical access to *Philips CSIP* because they did not own the software license according to the General Agreement that Philips references in the Amended Complaint. Docket No. 9 at ¶¶ 17-19, 38-39.

c.  *Digital Millennium Copyright Act (DMCA)*

Alpha Biomedical's Motion to Dismiss argues that Philips' DMCA claim should be dismissed under the reverse engineering exception because Alpha Biomedical's access to the *Philips CSIP* was done to achieve interoperability between Philips' systems and the MRI equipment. Docket No. 12 at 14. For the reverse engineering exception to apply, the defendant must, among other requirements, have "lawfully obtained the right to use a copy of the computer program." 17 U.S.C. § 1201(f).[6] Given that the Amended Complaint

---

[6] The DMCA complete reverse engineering exception states that:

(f) Reverse engineering.--(1) Notwithstanding the provisions of subsection (a)(1)(A), a person who has **lawfully obtained the right to use a copy of a computer program** may circumvent a technological measure that effectively controls access to a particular portion of that program for the sole purpose of identifying and analyzing those elements of the program that are necessary to achieve interoperability of an independently created computer program with other programs, and that have not previously been readily available to the person engaging in the circumvention, to the extent any such acts of identification and analysis do not constitute infringement under this title.
(2) Notwithstanding the provisions of subsections (a)(2) and (b), a person may develop and employ technological means to circumvent a technological measure, or to circumvent protection afforded by a technological measure, in order to enable the identification and analysis under paragraph (1), or for the purpose of enabling interoperability of an independently created computer program with other programs, if such means are necessary to achieve such interoperability, to the extent that

unambiguously pleads that Alpha Biomedical used levels 1, 2 and 3 of the *Philips CSIP*, the Court rules that the reverse engineering exception does not apply at this stage of the proceedings because defendant did not lawfully obtained the right to use a copy of the *Philips CSIP*. *See* 17 U.S.C. § 1201(f). As stated above the owner of the MRI systems cannot grant Alpha Biomedical authorization to use *Philips CSIP*.

    d.    *Defend Trade Secret Act (DTSA) and Industrial and Trade Secret Protection Act (ITSPA)*

Next, Alpha Biomedical seeks dismissal of Philips' DTSA and ITSPA claims. Docket No. 12 at 15, 17. Defendant asserts that the DTSA should be dismissed because it only applies prospectively since the enactment on May 11, 2016, and the alleged access began before this date. *Id.* Federal courts have addressed this argument before. *See Brand Energy & Infrastructure Servs., Inc. v. Irex Contracting Group*, 2017 WL 1105648, at *4 (E.D. Pa. 2017); *Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Group, Inc.*, 2016 WL 5338550 (S.D.N.Y. 2016); *Adams Arms, LLC v. Unified Weapon Sys., Inc.*, 2016 WL 5391394, at *5-7 (M.D. Fla. 2016). "These courts have all

---

doing so does not constitute infringement under this title.

(3) The information acquired through the acts permitted under paragraph (1), and the means permitted under paragraph (2), may be made available to others if the person referred to in paragraph (1) or (2), as the case may be, provides such information or means solely for the purpose of enabling interoperability of an independently created computer program with other programs, and to the extent that doing so does not constitute infringement under this title or violate applicable law other than this section.

(4) For purposes of this subsection, the term "interoperability" means the ability of computer programs to exchange information, and of such programs mutually to use the information which has been exchanged.

U.S.C. § 1201(f) (emphasis added).

held that the DTSA applies to misappropriations that began prior to the DTSA's enactment if the misappropriation continues to occur after the enactment date." *Brand Energy & Infrastructure Servs., Inc.*, 2017 WL 1105648, at *4. This Court does not see any reason to deviate from such holdings, thus, this Court holds that Philips correctly pleaded DTSA, given that the Amended Complaint alleges continued use of the trade secret information after the statute's enactment date. *See* Docket No. 9 at ¶¶ 82, 141.

Alpha Biomedical also alleges that the DTSA and ITSPA claims do not clearly describe the trade secrets. Docket No. 12 at 16-18. The Court rules that such argument is meritless, as a plaintiff is not required to discuss the trade secrets in detail at this stage of the proceedings. *Earthcam, Inc. v. Oxblue Corp.*, 2012 WL 12836518, at *9 (N.D. Ga. 2012) ("Courts are in general agreement that trade secrets need not be disclosed in detail in a complaint alleging misappropriation for the simple reason that such a requirement would result in public disclosure of the purported trade secrets.").

e.   *Unfair Competition*

Alpha Biomedical asserts that Philips' ITSPA claim preempts their unfair competition claim, and therefore it should be dismissed. Docket No. 12 at 18. The Court rules that the unfair competition is not preempted under 10 P.R. Laws Ann. § 4140. Philips' unfair competition claim is broader than the alleged misappropriation of trade secrets pleading. For instance, the unfair competition claim seeks to recover damages "inasmuch [Alpha Biomedical] entered into contracts and/or performed services relying on trade

secret/confidential information belonging to plaintiffs, obtained through improper or clandestine means." Docket No. 9 at 32.

   f.   *Lack of Indispensable Parties*

Defendant Alpha Biomedical request that the Amended Complaint should be dismissed under Rule 19(b) for failure to join as indispensable parties: Servicios Radiologicos del Este, Condado X-Ray & Ultrasound, and Hospital Dr. Susoni & Pavia Breast & Imaging of the Metro Pavia Health, Inc. ("Hospitals"). Docket No. 12 at 19-21. Alpha Biomedical asserts that Philips allegations on all counts rely on their alleged relationship with third parties that are not currently part of the litigation, *id.* at 20, and therefore failure to join them will unduly harm Alpha Biomedical's ability to defend itself. *Id.* at 21.

Given that the Amended Complaint does not raise any claims that involve the joinder of the Hospitals, and the Hospitals have not claimed an interest under Rule 19(a)(1)(B), the Court rules that the existing parties can obtain complete relief in their absence. Since the Hospitals are not necessary parties under Rule 19(a), the Court will not enter in an analysis of whether the Hospitals are indispensable parties under Rule 19(b). *Rivera Rojas v. Loewen Group Intern., Inc.*, 178 F.R.D. 356 (D.P.R. 1998) (citing *Delgado v. Plaza Las Americas*, 139 F.3d. 1, 3 n.2 (1st Cir. 1998)).

   g.   *Permanent Injunction*

Finally, Alpha Biomedical requests that the Court should dismiss Philips' permanent injunction claim because the Amended Complaint does not establish: (1) likelihood of success, (2) the service to public interest, and (3) that there has been an irreparable harm. Docket No. 12 at 22-25. The

CIVIL 19-1488CCC 16

Court denies Alpha Biomedical's request as the allegations for dismissal of the permanent injunction are premature. Defendant must wait for Philips to prevail on the merits of the case to raise those arguments.[7]

## V. CONCLUSION

For the reasons stated above, the Court hereby **DENIES** Alpha Biomedical's Motion to Dismiss. **Docket No. 12**.

SO ORDERED.

At San Juan, Puerto Rico, on January 29, 2020.

S/GUSTAVO A. GELPÍ
Chief United States District Judge

---

[7]The First Circuit standard for issuing a permanent injunction requires that:

(1) plaintiffs prevail on the merits; (2) plaintiffs would suffer irreparable injury in the absence of injunctive relief; (3) the harm to plaintiffs would outweigh the harm the defendant would suffer from the imposition of an injunction; and (4) the public interest would not be adversely affected by an injunction.

*Asociación de Educación Privada de Puerto Rico, Inc. v. García-Padilla*, 490 F.3d 1, 8 (1st Cir. 2007) (citing *A.W. Chesterton Co., Inc., v. Chesterton*, 128 F.3d 1, 5 (1st Cir. 1997)).