**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **PHILIPS MEDICAL SYSTEMS PUERTO RICO, INC.; PHILIPS MEDICAL SYSTEMS NEDERLAND B.V.; AND PHILIPS INDIA LIMITED**<br><br>Plaintiff-Counterclaim Defendants<br><br>v.<br><br>**ALPHA BIOMEDICAL AND DIAGNOSTIC CORP., COOPERATIVA DE SEGUROS MÚLTIPLES DE PUERTO RICO**<br><br>Defendant-Counterclaimant | Civil Action No. 3:19-cv-01488-CCC-BJM<br><br>RE: PERMANENT INJUNCTIVE RELIEF PURSUANT TO THE COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. §1030, PUERTO RICO'S INDUSTRIAL AND TRADE SECRET PROTECTION ACT, 10 P.R. LAWS ANN. §§4131-4141; UNFAIR COMPETITION; DIGITAL MILLENNIUM COPYRIGHT ACT, 17 U.S.C. §1201; COPYRIGHT INFRINGEMENT, 17 U.S.C. §101, *et seq.* AND DEMAND FOR JURY TRIAL |

**ANSWER TO AMENDED COMPLAINT AND COMPULSORY COUNTERCLAIMS**

**TO THE HONORABLE COURT:**

**COMES NOW** Defendant, Alpha Biomedical and Diagnostic Corp. ("Alpha" or "Defendant"), through the undersigned counsel, and respectfully presents its answer to the Amended Complaint (**Dkt. 9**) presented by Philips Medical Systems Puerto Rico, Inc. ("Philips PR"), Philips Medical Systems Nederland B.V. ("Philips Nederland") and Philips India Limited ("Philips India") (collectively, "Philips" or "Plaintiffs").[1]

**NATURE OF ACTION**

1. Paragraph one (1) of the Amended Complaint contains a prayer for remedy which does not require a response. The rest of the paragraph is Plaintiff's characterization of the instant action and its legal conclusions pertaining to the applicable law. Alpha denies any factual

[1] Capitalized terms not defined here shall have the meaning ascribed to them in Plaintiffs' Amended Complaint (**Dkt. 9**).

implications.

**JURISDICTION AND VENUE**

2. Paragraph two (2) of the Amended Complaint contains Plaintiffs' conclusion over the jurisdiction of this Honorable Court over the present action, a statement that does not require a response. Alpha denies any factual implications.

3. Paragraph three (3) of the Amended Complaint contains Plaintiffs' conclusion over the jurisdiction of this Honorable Court over the present action, a statement that does not require a response. Alpha denies any factual implications.

4. Paragraph four (4) of the Amended Complaint contains Plaintiff's conclusion over the proper venue for the present action, a statement that does not require a response. Alpha denies any factual implications.

**THE PARTIES**

5. Paragraph five (5) of the Amended Complaint is denied for lack of information sufficient to form a belief about the truth of the allegations, which relate to Philips PR's organizational structure, address and operations.

6. Paragraph six (6) of the Amended Complaint is denied for lack of information sufficient to form a belief about the truth of the allegations, which relate to Philips Nederland's address.

7. Paragraph seven (7) of the Amended Complaint is denied for lack of information sufficient to form a belief about the truth of the allegations, which relate to Philips India's address.

8. From paragraph eight (8) of the Amended Complaint, the first and second sentences are admitted. The rest of the paragraph is denied.

9. Paragraph nine (9) of the Amended Complaint is denied for lack of information

sufficient to form a belief about the truth of the allegations, which relate to the organizational structure, address and operations of a co-defendant that has not been served.

## FACTUAL ALLEGATIONS

### A. The Systems and Protection of the Philips' CSIP and Proprietary Material

10. Paragraph ten (10) of the Amended Complaint is denied for lack of information sufficient to form a belief about the truth of the allegations, which relate to Plaintiffs' operations, products and services.

11. Paragraph eleven (11) of the Amended Complaint is denied for lack of information sufficient to form a belief about the truth of the allegations, which relate to Plaintiffs' products and services.

12. Paragraph twelve (12) of the Amended Complaint is denied for lack of information sufficient to form a belief about the truth of the allegations, which relate to Plaintiffs' products and services. Alpha affirmatively alleges, upon information and belief, that MRI systems do not require Internet or Intranet connection to allow for continued operations, only requiring local network to allow for the operation of the host system and the corresponding diagnostics, calibrations and configuration systems. Upon information and belief, Philips is using illegal remote software access to obtain customer information about the customer activity and business activity. Upon information and belief, this remote access program is not used to help customers. This remote access program potentially violates the Health Insurance Portability and Accountability Act of 1996 (HIPAA) provisions insofar as Philips may have access to patient data with no clear written agreement that would safeguard against unlawful access to sensitive information.

13. Paragraph thirteen (13) of the Amended Complaint is denied for lack of information sufficient to form a belief about the truth of the allegations, which relate to Plaintiffs' products and

services.

14. Paragraph fourteen (14) of the Amended Complaint is denied for lack of information sufficient to form a belief about the truth of the allegations, which relate to Plaintiffs' products and services.

15. Paragraph fifteen (15) of the Amended Complaint is denied for lack of information sufficient to form a belief about the truth of the allegations, which relate to Plaintiffs' products and services. Alpha affirmatively alleges, upon information and belief, that Philips CSIP is not stored in the MRI Host PC. Upon information and belief, the only program that is stored in clients' MRI Host PC are application software and service level 0, 1, 2, 3 programs.

16. Paragraph sixteen (16) of the Amended Complaint is denied for lack of information sufficient to form a belief about the truth of the allegations, which relate to Plaintiffs' products and services.

17. Paragraph seventeen (17) of the Amended Complaint is denied for lack of information sufficient to form a belief about the truth of the allegations, which relate to Plaintiffs' products and services.

18. Paragraph eighteen (18) of the Amended Complaint is denied for lack of information sufficient to form a belief about the truth of the allegations, which relate to Plaintiffs' products and services.

19. Paragraph nineteen (19) of the Amended Complaint is denied for lack of information sufficient to form a belief about the truth of the allegations, which relate to Plaintiffs' products and services.

20. Paragraph twenty (20) of the Amended Complaint is denied for lack of information sufficient to form a belief about the truth of the allegations, which relate to Plaintiffs' products and

services.

21. Paragraph twenty-one (21) of the Amended Complaint is denied for lack of information sufficient to form a belief about the truth of the allegations, which relate to Plaintiffs' products and services. The paragraph is also denied because it contains Plaintiffs' legal conclusions pertaining to the alleged trade secret and confidential nature of Plaintiffs' products. Alpha denies any factual implications.

22. Paragraph twenty-two (22) of the Amended Complaint is denied because it contains Plaintiffs' legal conclusions pertaining to the alleged copyrighted nature of Plaintiffs' products. Alpha denies any factual implications.

23. Paragraph twenty-three (23) of the Amended Complaint is denied for lack of information sufficient to form a belief about the truth of the allegations, which relate to Plaintiffs' products and services.

24. Paragraph twenty-four (24) of the Amended Complaint is denied for lack of information sufficient to form a belief about the truth of the allegations, which relate to Plaintiffs' products and services.

25. Paragraph twenty-five (25) of the Amended Complaint is denied for lack of information sufficient to form a belief about the truth of the allegations, which relate to Plaintiffs' products and services.

26. Paragraph twenty-six (26) of the Amended Complaint is denied for lack of information sufficient to form a belief about the truth of the allegations, which relate to Plaintiffs' products and services.

27. Paragraph twenty-seven (27) of the Amended Complaint is denied for lack of information sufficient to form a belief about the truth of the allegations, which relate to Plaintiffs'

products and services.

28. Paragraph twenty-eight (28) of the Amended Complaint is denied for lack of information sufficient to form a belief about the truth of the allegations, which relate to Plaintiffs' products and services.

29. Paragraph twenty-nine (29) of the Amended Complaint is denied for lack of information sufficient to form a belief about the truth of the allegations, which relate to Plaintiffs' products and services. The paragraph is also denied because it contains Plaintiffs' legal conclusions pertaining to the alleged copyrighted nature of Plaintiffs' products. Alpha denies any factual implications. Alpha affirmatively alleges that Philips trying to minimize the scope of the Level 0 access in detriment of the applicable federal U.S. Food and Drug Administration (FDA) regulations that Philips is supposed to comply with when selling its products in Puerto Rico.

30. Paragraph thirty (30) of the Amended Complaint is denied for lack of information sufficient to form a belief about the truth of the allegations, which relate to Plaintiffs' products and services.

31. Paragraph thirty-one (31) of the Amended Complaint is denied for lack of information sufficient to form a belief about the truth of the allegations, which relate to Plaintiffs' products and services.

32. Paragraph thirty-two (32) is denied as drafted. Alpha affirmatively alleges that Level 0 access allows for much more than the limited scope outlined by Philips, including installing DICOM devices, PACS, printers, RIS, CD Burns, and Archives HDD; activating new coils and protocols; reformatting the database and protocols; reading the gradient dup, the error log file, the magnet supervisory data; TX Att. calibration; Tune TX Att. Calibration; running simulation tests; perform battery and helium level tests; among other innumerable functions.

Access to these and other functions is necessary to prevent equipment malfunctions and to protect and save patients' lives. Furthermore, Alpha affirmatively alleges that Plaintiffs have undertaken steps to restrict third-party vendors' and non-Philips' representatives' Level 0 access.

33. Paragraph thirty-three (33) is admitted as qualified under paragraph thirty-two (32).

34. Paragraph thirty-four (34) is admitted. Alpha affirmatively alleges, upon information and belief, that authorizations granted to former Philips employees such as those in Alpha's employ do not provide access to purported protected intellectual property.

35. Paragraph thirty-five (35) of the Amended Complaint is denied for lack of information sufficient to form a belief about the truth of the allegations, which relate to Plaintiffs' products and services.

36. Paragraph thirty-six (36) of the Amended Complaint is denied for lack of information sufficient to form a belief about the truth of the allegations, which relate to Plaintiffs' operations.

37. Paragraph thirty-seven (37) of the Amended Complaint is denied for lack of information sufficient to form a belief about the truth of the allegations, which relate to Plaintiffs' operations.

38. Paragraph thirty-eight (38) of the Amended Complaint is denied for lack of information sufficient to form a belief about the truth of the allegations, which relate to Plaintiffs' operations. Alpha affirmatively alleges that despite referring to the alleged limitations to what third-party purchase could do pursuant to Plaintiffs' "General Terms and Conditions of Sale and Software License", Plaintiffs do not identify the specific provision that supports their contention.

39. Paragraph thirty-nine (39) of the Amended Complaint is denied for lack of information sufficient to form a belief about the truth of the allegations, which relate to Plaintiffs'

operations. Alpha affirmatively alleges that despite referring to the alleged limitations to what third-party purchase could do pursuant to Plaintiffs' "General Terms and Conditions of Sale and Software License", Plaintiffs do not identify the specific provision that supports their contention.

**B. <u>Alpha Biomedical's [alleged] unauthorized use of deactivated of Philips' User ID 34914</u>**

40. Paragraph forty (40) of the Amended Complaint is admitted.

41. From paragraph forty-one (41) of the Amended Complaint, it is admitted that Alpha hired former Philips' employees. The rest of the paragraph is denied.

42. Paragraph forty-two (42) of the Amended Complaint is denied for lack of information sufficient to form a belief about the truth of the allegations, which relate to the previous employment of a nonparty.

43. Paragraph forty-three (43) of the Amended Complaint is denied for lack of information sufficient to form a belief about the truth of the allegations, which relate to the previous employment of a nonparty.

44. Paragraph forty-four (44) of the Amended Complaint is denied for lack of information sufficient to form a belief about the truth of the allegations, which relate to Philips PR's operations and the previous employment of a nonparty.

45. Paragraph forty-five (45) of the Amended Complaint is denied for lack of information sufficient to form a belief about the truth of the allegations, which relate to Philips PR's operations and the previous employment of a nonparty.

46. Paragraph forty-six (46) of the Amended Complaint is denied for lack of information sufficient to form a belief about the truth of the allegations, which relate to the alleged actions of a nonparty.

47. Paragraph forty-seven (47) of the Amended Complaint is denied as drafted. Upon information and belief, after ending his employment with Philips PR, Mr. Bracero went to hold a teaching position before being contracted as a consultant for another medical equipment servicing provider. It was not until Mr. Bracero ended his employment with this service provider that he was employed by Alpha.

48. Paragraph forty-eight (48) of the Amended Complaint is denied as drafted. While Mr. Bracero was initially contracted as a field service engineer, he currently holds the position of Senior Field Service Engineer.

49. Paragraph forty-nine (49) of the Amended Complaint is denied.

50. From paragraph fifty (50) of the Amended Complaint, it is admitted that Mr. Silva is employed by Alpha as a field service technician. The rest of the paragraph is denied for lack of information sufficient to form a belief about the truth of the allegations, which relate to the previous employment of a nonparty.

51. From paragraph fifty-one (51) of the Amended Complaint, it is admitted that Mr. López currently holds the title of Service Manager. The rest of the paragraph is denied. Alpha affirmatively alleges that Mr. López's main tasks do not include MRI servicing.

52. Paragraph fifty-two (52) of the Amended Complaint is denied.

53. Paragraph fifty-three (53) of the Amended Complaint is denied for lack of information sufficient to form a belief about the truth of the allegations, which relate to the previous employment of a nonparty.

54. Paragraph fifty-four (54) of the Amended Complaint is denied. Although at one point, Alpha Biomedical and its employees could have used the so-called Basic Level, this has changed recently. Upon information and belief, Philips has been modifying the software of the

MRI systems in Alpha's client's facilities in a way that has locked out any access to provide services.

55. Paragraph fifty-five (55) of the Amended Complaint is denied.

56. Paragraph fifty-six (56) of the Amended Complaint is denied.

57. Paragraph fifty-seven (57) of the Amended Complaint is admitted as qualified under paragraph fifty-four (54).

58. Paragraph fifty-eight (58) of the Amended Complaint is denied for lack of information sufficient to form a belief about the truth of the allegations, which relate to the contractual relationship between Philips PR and a third party.

59. Paragraph fifty-nine (59) of the Amended Complaint is denied for lack of information sufficient to form a belief about the truth of the allegations, which relate to Plaintiffs' products and services.

60. Paragraph sixty (60) of the Amended Complaint is denied. Alpha affirmatively alleges that Plaintiffs' supposed log files show that access was allegedly obtained through a UserID 35914, not Mr. Bracero's supposed deactivated login credentials (34914).[2] **Dkt. 9-2**.

61. Paragraph sixty-one (61) of the Amended Complaint is denied. Alpha affirmatively alleges that Plaintiffs' supposed log files show that access was allegedly obtained through a UserID 35914, not Mr. Bracero's supposed deactivated login credentials (34914). **Dkt. 9-2**.

62. Paragraph sixty-two (62) of the Amended Complaint is denied. Alpha affirmatively alleges that Plaintiffs' supposed log files show that access was allegedly obtained through a UserID 35914, not Mr. Bracero's supposed deactivated login credentials (34914). **Dkt. 9-2**.

63. Paragraph sixty-three (63) of the Amended Complaint is denied as drafted. Alpha

[2] Alpha cannot vouch nor consent to the authenticity and accuracy of Plaintiffs' exhibits to the Amended Complaint.

affirmatively alleges that, at certain points, Mr. Silva provided maintenance and repair services to then-Condado X-Ray's MRIs. The specific circumstances and times of said maintenance are currently unknown.

64. Paragraph sixty-four (64) of the Amended Complaint is denied.

65. Paragraph sixty-five (65) of the Amended Complaint is denied. Alpha affirmatively alleges, upon information and belief, that Philips representatives could have altered the log files to artificially show access by a non-Philips representative.

66. Paragraph sixty-six (66) of the Amended Complaint is denied.

67. Paragraph sixty-seven (67) of the Amended Complaint is denied.

**C. <u>Alpha Biomedical's [alleged] actions in the Metro Pavía Health, Inc. affiliated hospitals</u>**

68. The second paragraph sixty-five (65) of the Amended Complaint is denied. Alpha affirmatively alleges that, in light of Philips' service agreement with Metro Pavia Health System Inc. expiring on December 31, 2017, Metro Pavia opened a bidding process in which Philips, Alpha, and another provider (CIRACET, Corp.) participated The bid was finally awarded to Alpha, who presented the lowest bid. Upon information and belief, the new contract between Metro Pavia and Alpha represents savings for Metro Pavia ranging from $700,000 to $800,000 when compared to the latter's previous contract with Philips.

69. The second paragraph sixty-six (66) of the Amended Complaint is denied for lack of information sufficient to form a belief about the truth of the allegations, which relate to the organizational structure of a third party.

70. The second paragraph sixty-seven (67) of the Amended Complaint is denied for lack of information sufficient to form a belief about the truth of the allegations, which relate to the

organizational structure of a third party.

71. Paragraph sixty-eight (68) of the Amended Complaint is denied for lack of information sufficient to form a belief about the truth of the allegations, which relate to Plaintiffs' dealings with a third party.

72. Paragraph sixty-nine (69) of the Amended Complaint is denied for lack of information sufficient to form a belief about the truth of the allegations, which relate to Plaintiffs' dealings with a third party.

73. Paragraph seventy (70) of the Amended Complaint is denied for lack of information sufficient to form a belief about the truth of the allegations, which relate to Plaintiffs' dealings with a third party.

74. Paragraph seventy-one (71) of the Amended Complaint is denied for lack of information sufficient to form a belief about the truth of the allegations, which relate to Plaintiffs' dealings with a third party.

75. From paragraph seventy-two (72) of the Amended Complaint, it is admitted that Alpha was awarded the Metro Pavia service bid on January 2018 after prevailing over CIRACET Corp.'s and Philips' bids. The rest of the paragraph is denied for lack of information sufficient to form a belief about the truth of the allegations, which relate to Plaintiffs' dealings with a third party.

76. Paragraph seventy-three (73) of the Amended Complaint is denied. Alpha affirmatively alleges that it began performing repair and maintenance services for the Metro Pavía system after the latter allowed its servicing agreement with Philips expire on December 2017.

77. Paragraph seventy-four (74) of the Amended Complaint is denied. Alpha affirmatively alleges, upon information and belief, that the access alleged here was performed by

a third party to change an MRI's cold head. Alpha did not participate in the third party's access.

78. Paragraph seventy-five (75) of the Amended Complaint is denied for lack of information sufficient to form a belief about the truth of the allegations, which relate to an unidentified party's alleged access to Philips' systems and relates to Philips' operations.

79. Paragraph seventy-six (76) of the Amended Complaint is denied for lack of information sufficient to form a belief about the truth of the allegations, which relate to Philips' operations.

80. Paragraph seventy-seven (77) of the Amended Complaint is denied for lack of information sufficient to form a belief about the truth of the allegations, which relate to Philips' operations.

81. Paragraph seventy-eight (78) of the Amended Complaint is denied for lack of information sufficient to form a belief about the truth of the allegations, which relate to Philips PR's dealings with a third party. Upon information and belief, the system logs for Hospital Dr. Susoni show that a Philips representative (designated as "wr", believed to be Philips employee William Cruz) illegally accessed Hospital Dr. Susoni's systems in December 2018.

82. From paragraph seventy-nine (79) of the Amended Complaint, it is admitted that Alpha had a service agreement in place with Hospital Dr. Susoni. The rest of the paragraph is denied.

83. From paragraph eighty (80) of the Amended Complaint is denied. Alpha affirmatively alleges, upon information and belief, that close to the alleged time, Philips was servicing Pavia Breast & Imaging equipment, during which time Philips representatives had free-range access to the equipment and could have altered any alleged system log.

84. Paragraph eighty-one (81) of the Amended Complaint is denied.

85. Paragraph eighty-two (82) of the Amended Complaint is denied.

**D. The [alleged] Damages and/or [alleged] "loss"**

86. Paragraph eighty-three (83) of the Amended Complaint is denied.

87. Paragraph eighty-four (84) of the Amended Complaint is denied.

88. Paragraph eighty-five (85) of the Amended Complaint is denied for lack of information sufficient to form a belief about the truth of the allegations, which relate to Philips PR's dealings with a third party.

89. Paragraph eighty-six (86) of the Amended Complaint is denied for lack of information sufficient to form a belief about the truth of the allegations, which relate to Philips' operations.

90. Paragraph eighty-seven (87) of the Amended Complaint contains a prayer for remedy which does not require a response. Alpha denies any factual implications.

**FIRST CAUSE OF ACTION: 18 U.S.C. $1030(a)(2)(C) (CFAA)**

91. Alpha incorporates by reference its answers to all paragraphs of the Amended Complaint.

92. Paragraph eighty-nine (89) of the Amended Complaint contains a legal contention that does not require a response. Alpha denies any factual implications.

93. Paragraph ninety (90) of the Amended Complaint is denied for lack of information sufficient to form a belief about the truth of the allegations, which relate to Plaintiffs' conclusory and vague allegations of an allegedly required execution of proprietary application code.

94. Paragraph ninety-one (91) of the Amended Complaint is denied for lack of information sufficient to form a belief about the truth of the allegations, which relate to Plaintiffs' operations, products and services.

95. Paragraph ninety-two (92) of the Amended Complaint is denied for lack of information sufficient to form a belief about the truth of the allegations, which relate to Plaintiffs' operations, products and services.

96. Paragraph ninety-three (93) of the Amended Complaint is denied for lack of information sufficient to form a belief about the truth of the allegations, which relate to Plaintiffs' operations, products and services.

97. Paragraph ninety-four (94) of the Amended Complaint is denied for lack of information sufficient to form a belief about the truth of the allegations, which relate to Plaintiffs' operations, products and services. Alpha affirmatively alleges, upon information and belief, that Panorama equipment do not use a dongle security code and Generator code to operate, and that there is no need for Internet connection to operate this equipment. Additionally, no remote program is required, since clients use the local network to transfer imaging. Furthermore, MRI Host PC Achieva and Intera do not need Internet connection to operate.

98. Paragraph ninety-five (95) of the Amended Complaint is denied for lack of information sufficient to form a belief about the truth of the allegations, which relate to Philips PR's operations.

99. Paragraph ninety-six (96) of the Amended Complaint is denied because it contains Plaintiffs' legal conclusions pertaining to the alleged trade secret and confidential nature of Plaintiffs' products, unauthorized access, and copyright infringement. Alpha denies any factual implications.

100. Paragraph ninety-seven (97) of the Amended Complaint is denied because it contains Plaintiffs' legal conclusions pertaining to the alleged trade secret and confidential nature of Plaintiffs' products and alleged access to said products. Alpha denies any factual implications.

101. Paragraph ninety-eight (98) of the Amended Complaint is denied.

102. Paragraph ninety-nine (99) of the Amended Complaint is denied.

103. Paragraph one hundred (100) of the Amended Complaint is denied for lack of information sufficient to form a belief about the truth of the allegations, which relate to Plaintiffs' operations. Alpha affirmatively alleges that despite referring to the alleged limitations to what third-party purchase could do pursuant to Plaintiffs' "General Terms and Conditions of Sale and Software License", Plaintiffs do not identify the specific provision that supports their contention.

104. Paragraph one hundred one (101) of the Amended Complaint is denied.

105. Paragraph one hundred two (102) of the Amended Complaint is denied.

106. Paragraph one hundred three (103) of the Amended Complaint is denied because it contains Plaintiffs' legal conclusions pertaining to the alleged harm suffered on account of alleged unauthorized access to supposed protected information. Alpha denies any factual implications.

107. Paragraph one hundred four (104) of the Amended Complaint is denied because it contains Plaintiffs' legal conclusions pertaining to the alleged wrongful access of supposed trade secrets. Alpha denies any factual implications.

108. Paragraph one hundred five (105) of the Amended Complaint is denied for lack of information sufficient to form a belief about the truth of the allegations, which relate to Plaintiffs' operations, products and services.

109. Paragraph one hundred six (106) of the Amended Complaint contains a legal contention that does not require a response. Alpha denies any factual implications.

110. Paragraph one hundred seven (107) of the Amended Complaint is denied because it contains Plaintiffs' legal conclusions pertaining to the alleged damage and loss suffered by an unidentified plaintiff. Alpha denies any factual implications.

111. Paragraph one hundred eight (108) of the Amended Complaint is denied because it contains Plaintiffs' legal conclusions pertaining to the alleged damage and loss suffered by Plaintiffs. Alpha denies any factual implications.

112. Paragraph one hundred nine (109) of the Amended Complaint is denied because it contains Plaintiffs' legal conclusions pertaining to the alleged loss suffered by Philips PR. Alpha denies any factual implications.

113. Paragraph one hundred ten (110) of the Amended Complaint is denied because it contains Plaintiffs' legal conclusions pertaining to the alleged damage suffered by Plaintiffs. Alpha denies any factual implications.

114. Paragraph one hundred eleven (111) of the Amended Complaint contains a prayer for remedy which does not require a response. Alpha denies any factual implications.

**SECOND CAUSE OF ACTION: 17 U.S.C. §101, *et seq* (Copyright Infringement)**

115. Alpha incorporates by reference its answers to all paragraphs of the Amended Complaint.

116. Paragraph one hundred thirteen (113) of the Amended Complaint is denied because it contains Plaintiffs' legal conclusions pertaining to the copyrighted nature of Plaintiffs' products. Alpha denies any factual implications.

117. Paragraph one hundred fourteen (114) of the Amended Complaint is denied for lack of information sufficient to form a belief about the truth of the allegations, which relate to Plaintiffs' operations, products and services, and contains Plaintiffs' legal conclusions pertaining to the copyrighted nature of Plaintiffs' products. Alpha denies any factual implications.

118. Paragraph one hundred fifteen (115) of the Amended Complaint is denied.

119. Paragraph one hundred sixteen (116) of the Amended Complaint is denied.

120. Paragraph one hundred seventeen (117) of the Amended Complaint is denied.

121. Paragraph one hundred eighteen (118) of the Amended Complaint is denied.

122. Paragraph one hundred nineteen (119) of the Amended Complaint is denied.

123. Paragraph one hundred twenty (120) of the Amended Complaint contains a prayer for remedy which does not require a response. Alpha denies any factual implications.

**THIRD CAUSE OF ACTION: 17 U.S.C. § 1201, *et seq.* (DMCA)**

124. Alpha incorporates by reference its answers to all paragraphs of the Amended Complaint.

125. Paragraph one hundred twenty-two (122) of the Amended Complaint is denied for lack of information sufficient to form a belief about the truth of the allegations, which relate to Plaintiffs' operations, products and services, and contains Plaintiffs' legal conclusions pertaining to the copyrighted nature of Plaintiffs' products. Alpha denies any factual implications.

126. Paragraph one hundred twenty-three (123) of the Amended Complaint is denied.

127. Paragraph one hundred twenty-four (124) of the Amended Complaint is denied.

128. Paragraph one hundred twenty-five (125) of the Amended Complaint is denied.

129. Paragraph one hundred twenty-six (126) of the Amended Complaint is denied.

130. Paragraph one hundred twenty-seven (127) of the Amended Complaint is denied.

131. Paragraph one hundred twenty-eight (128) of the Amended Complaint contains a prayer for remedy which does not require a response. Alpha denies any factual implications.

132. Paragraph one hundred twenty-nine (129) of the Amended Complaint contains a prayer for remedy which does not require a response. Alpha denies any factual implications.

**FOURTH CAUSE OF ACTION: 18 U.S.C. § 1836 (DTSA)**

133. Alpha incorporates by reference its answers to all paragraphs of the Amended

Complaint.

134. Paragraph one hundred thirty-one (131) of the Amended Complaint is denied because it contains Plaintiffs' legal conclusions pertaining to the trade secret nature of Plaintiffs' products. Alpha denies any factual implications.

135. Paragraph one hundred thirty-two (132) of the Amended Complaint is denied because it contains Plaintiffs' legal conclusions pertaining to the trade secret nature of Plaintiffs' products. Alpha denies any factual implications.

136. Paragraph one hundred thirty-three (133) of the Amended Complaint is denied because it contains Plaintiffs' legal conclusions pertaining to the trade secret nature of Plaintiffs' products. Alpha denies any factual implications.

137. Paragraph one hundred thirty-four (134) of the Amended Complaint is denied because it contains Plaintiffs' legal conclusions pertaining to the trade secret nature of Plaintiffs' products. Alpha denies any factual implications.

138. Paragraph one hundred thirty-five (135) of the Amended Complaint is denied for lack of information sufficient to form a belief about the truth of the allegations, which relate to Plaintiffs' operations, products and services.

139. Paragraph one hundred thirty-six (136) of the Amended Complaint is denied for lack of information sufficient to form a belief about the truth of the allegations, which relate to Plaintiffs' operations, products and services.

140. Paragraph one hundred thirty-seven (137) of the Amended Complaint is denied for lack of information sufficient to form a belief about the truth of the allegations, which relate to Plaintiffs' operations, products and services.

141. Paragraph one hundred thirty-eight (138) of the Amended Complaint is denied for

lack of information sufficient to form a belief about the truth of the allegations, which relate to Philips PR's operations, products and services.

142. Paragraph one hundred thirty-nine (139) of the Amended Complaint is denied for lack of information sufficient to form a belief about the truth of the allegations, which relate to Plaintiffs' operations, products and services.

143. Paragraph one hundred forty (140) of the Amended Complaint is denied for lack of information sufficient to form a belief about the truth of the allegations, which relate to Plaintiffs' operations, products and services.

144. Paragraph one hundred forty-one (141) of the Amended Complaint is denied.

145. Paragraph one hundred forty-two (142) of the Amended Complaint is denied. Alpha affirmatively alleges, upon information and belief, that authorizations granted to former Philips employees such as those in Alpha's employ do not provide access to purported protected trade secrets or copyrighted materials. Upon information and belief, under service levels 0, 1, 2 or 3, system users have no access to Philips' schematics, manual of process or encrypted information, since the level of service access is only limited to running diagnostics, calibrations and configurations. The access to schematics and proprietary documentation is only achieved through Philips' Intranet Server online inserver or DVD Offline incenter that all current Philips FSEs have access to. However, this information is not available in customer's resident MRI Host systems. The only access to this information is via Internet with Philips' IST Active Credentials. Philips disconnects the IST of all of their former employees, including Mr. Bracer and Mr. Silva.

146. Paragraph one hundred forty-three (143) of the Amended Complaint is denied.

147. Paragraph one hundred forty-four (144) of the Amended Complaint is denied.

148. Paragraph one hundred forty-five (145) of the Amended Complaint is denied

because it contains Plaintiffs' legal conclusions pertaining to the trade secret nature of Plaintiffs' products. Alpha denies any factual implications.

149. Paragraph one hundred forty-six (146) of the Amended Complaint is denied.

150. Paragraph one hundred forty-seven (147) of the Amended Complaint is denied because it contains Plaintiffs' legal conclusions pertaining to alleged losses and harmed suffered. Alpha denies any factual implications.

151. Paragraph one hundred forty-eight (148) of the Amended Complaint is denied because it contains Plaintiffs' legal conclusions pertaining to adequate remedy. Alpha denies any factual implications.

152. Paragraph one hundred forty-nine (149) of the Amended Complaint contains a prayer for remedy which does not require a response. Alpha denies any factual implications.

**FIFTH CAUSE OF ACTION: 10 P.R. LAWS ANN. §§4131-4141 (ITSPA)**

153. Alpha incorporates by reference its answers to all paragraphs of the Amended Complaint.

154. Paragraph one hundred fifty-one (151) of the Amended Complaint contains a legal contention that does not require a response. Alpha denies any factual implications.

155. Paragraph one hundred fifty-two (152) of the Amended Complaint is denied.

156. Paragraph one hundred fifty-three (153) of the Amended Complaint is denied because it contains Plaintiffs' legal conclusions pertaining to the alleged trade secret nature of Plaintiffs' products. Alpha denies any factual implications.

157. Paragraph one hundred fifty-four (154) of the Amended Complaint is denied for lack of information sufficient to form a belief about the truth of the allegations, which relate to Plaintiffs' operations, products and services.

158. Paragraph one hundred fifty-five (155) of the Amended Complaint is denied for lack of information sufficient to form a belief about the truth of the allegations, which relate to Plaintiffs' operations, products and services.

159. Paragraph one hundred fifty-six (156) of the Amended Complaint is denied for lack of information sufficient to form a belief about the truth of the allegations, which relate to Plaintiffs' operations, products and services.

160. Paragraph one hundred fifty-seven (157) of the Amended Complaint is denied for lack of information sufficient to form a belief about the truth of the allegations, which relate to Plaintiffs' operations, products and services.

161. Paragraph one hundred fifty-eight (158) of the Amended Complaint is denied for lack of information sufficient to form a belief about the truth of the allegations, which relate to Plaintiffs' operations, products and services.

162. Paragraph one hundred fifty-nine (159) of the Amended Complaint contains a legal contention that does not require a response. Alpha denies any factual implications.

163. Paragraph one hundred sixty (160) of the Amended Complaint is denied.

164. Paragraph one hundred sixty-one (161) of the Amended Complaint is denied.

165. Paragraph one hundred sixty-two (162) of the Amended Complaint is denied.

166. Paragraph one hundred sixty-three (163) of the Amended Complaint is denied because it contains Plaintiffs' legal conclusions pertaining to the alleged damages they have suffered. Alpha denies any factual implications.

167. Paragraph one hundred sixty-four (164) of the Amended Complaint contains a prayer for remedy which does not require a response. Alpha denies any factual implications.

168. Paragraph one hundred sixty-five (165) of the Amended Complaint contains a

prayer for remedy which does not require a response. Alpha denies any factual implications.

169. Paragraph one hundred sixty-six (166) of the Amended Complaint contains a prayer for remedy which does not require a response. Alpha denies any factual implications.

**SIXTH CAUSE OF ACTION: UNFAIR COMPETITION**

170. Alpha incorporates by reference its answers to all paragraphs of the Amended Complaint.

171. Paragraph one hundred sixty-eight (168) of the Amended Complaint is denied because it contains Plaintiffs' legal conclusions pertaining to the alleged unfair and deceptive acts undertaken by Alpha. Alpha denies any factual implications.

172. Paragraph one hundred sixty-nine (169) of the Amended Complaint is denied for lack of information sufficient to form a belief about the truth of the allegations, which relate to Plaintiffs' operations, products and services.

173. Paragraph one hundred seventy (170) of the Amended Complaint is denied for lack of information sufficient to form a belief about the truth of the allegations, which relate to Plaintiffs' operations, products, and services.

174. Paragraph one hundred seventy-one (171) of the Amended Complaint is denied.

175. Paragraph one hundred seventy-two (172) of the Amended Complaint contains a prayer for remedy which does not require a response. Alpha denies any factual implications.

**PERMANENT INJUNCTION**

176. Alpha incorporates by reference its answers to all paragraphs of the Amended Complaint.

177. Paragraph one hundred seventy-four (174) of the Amended Complaint contains a prayer for remedy which does not require a response. Alpha denies any factual implications.

**JURY DEMAND**

178. The section titled "Jury Demand" of the Amended Complaint contains a prayer for remedy which does not require a response. Alpha denies any factual implications.

**WHEREFORE**

179. The section titled "Wherefore" of the Amended Complaint contains a prayer for remedy which does not require a response. Alpha denies any factual implications.

180. All allegations not expressly admitted are hereby denied.

**AFFIRMATIVE DEFENSES**

1. All of the foregoing statements, allegations, responses, and answers are adopted by reference and made part hereof as affirmative defenses.

2. All affirmative defenses raised above are incorporated herein by reference.

3. All defenses raised in Alpha's *Motion to Dismiss Amended Complaint under Rules 12(b)(6) and 19* (**Dkt. 12**) and *Reply to Plaintiff's Opposition to Motion to Dismiss Amended Complaint under Rules 12(b)(6) and 19* (**Dkt. 19**) are herein incorporation by reference.

4. The Amended Complaint fails to allege facts sufficient to state a cognizable claim for which relief can be granted.

5. The Amended Complaint and each purported cause of action alleged therein are precluded, in whole or in part, by FDA regulations.

6. This Honorable Court lacks jurisdiction over one or more of Plaintiffs' claims.

7. Plaintiffs' material allegations are conclusory and speculative.

8. Plaintiffs' recovery against Alpha, if any, is limited because any damages or losses are speculative and uncertain.

9. The Amended Complaint and each purported cause of action alleged therein are

barred, in whole or in part, by the doctrines of unclean hands and estoppel.

10. The Amended Complaint and each purported cause of action alleged therein are barred or limited, in whole or in part, by 17 U.S.C. §412, 17 U.S.C. §507(b) and 17 U.S.C. §512.

11. Alpha is exempted from liability under 17 U.S.C. § 1201.

12. The Amended Complaint and each purported cause of action alleged therein are barred, in whole or in part, because Plaintiffs are prosecuting this litigation in bad faith and for an improper purpose.

13. The Amended Complaint and each purported cause of action alleged therein are barred, in whole or in part, because Plaintiffs waived, relinquished, and/or abandoned the claims and requests for relief asserted in the Amended Complaint.

14. The Amended Complaint and each purported cause of action alleged therein are barred, in whole or in part, because Alpha's conduct was at all times reasonable, proper, in good faith, and in compliance with applicable law.

15. Plaintiffs acted in bad faith.

16. The Amended Complaint and each purported cause of action alleged therein are barred, in whole or in part, because Plaintiffs' losses and damages, if any, were not caused or proximately caused, in whole or in part, by any actions, inactions, and/or omissions for which Alpha is responsible.

17. If Plaintiffs suffered any damages or losses, which is herein denied, said damages or losses were self-inflicted or caused by the actions or omissions of third parties. In the alternative, other parties are liable for Plaintiffs' claims.

18. The Amended Complaint and each purported cause of action alleged therein are barred, in whole or in part, because Plaintiffs are not entitled to overlapping or duplicative recovery

for any alleged single wrong.

19. The Amended Complaint and each purported cause of action alleged therein are barred, in whole or in part, by the corresponding statute of limitations and/or laches.

20. Plaintiffs are not entitled to any of the remedies nor monies requested.

21. Plaintiffs' claims relating to the alleged copyrights are barred because Plaintiffs' copyright and DMCA rights are unenforceable for misuse. Plaintiffs are seeking to expand the scope of their copyright and DMCA protection beyond what the law permits, and beyond what they own, in order to attempt to secure control of areas outside of the scope of their copyright and DMCA rights, and in order to secure an improper windfall from Alpha.

22. To the extent that any copyright infringement occurred, which is denied, such infringement was *de minimis*.

23. To the extent there was copying and/or use of Plaintiffs' proprietary content, which is denied, such copying and/or use constitutes fair use.

24. Plaintiffs presented this claim in bad faith and without any reasonable ground to believe that it has merits. Therefore, they are responsible for any and all expenses and attorney's fees incurred by Alpha in its defense of this claim.

25. One or more of Plaintiffs lacks standing to bring for their claims.

26. Alpha reserves its right to amend these answers and defenses as may be warranted by the results of discovery.

## ALPHA'S COUNTERCLAIM

**COMES NOW** Alpha[3], through the undersigned counsels, and respectfully counterclaims, alleges and prays as follows:

[3] Capitalized terms not defined herein shall have the meaning ascribed to them above in Alpha's Answer to the Amended Complaint.

## I. INTRODUCTION

1. Plaintiffs' Amended Complaint is nothing more than one in a series of strongarm tactics undertaken by Plaintiffs to undermine Alpha's competitive operations in Puerto Rico.

2. Despite Alpha being exclusively responsible for the development of Philips' brand in Puerto Rico, Philips has no qualms in employing underhanded tactics to deprive Alpha of its business.

3. Plaintiffs' actions not only are undermining Alpha's market in Puerto Rico but are also actively endangering patients' lives.

## II. THE PARTIES

4. Alpha is a corporation organized under the laws of Puerto Rico, dedicated to the sale, distribution, repair, maintenance, and servicing of sophisticated medical equipment. Its principal place of business and nerve center is located at Road 931 Km 5.2, Navarro Borough, Cielito Sector, Gurabo, Puerto Rico 00778.

5. Upon information and belief, Philips PR is a corporation organized and existing under the laws of the Commonwealth of Puerto Rico, engaged, among other things, in the sale and servicing of medical imaging systems that are used at hospitals and medical center, with its principal place of business and nerve center located at 9615. Los Romeros Montehiedra Ave. Office Centre Suite 512, San Juan, PR 00926-7031.

6. Upon information and belief, Philips Nederland is a Netherlands corporation with its principal place of business and nerve center located at Veenpluis 4-6, 5684 PC Best, Netherlands.

7. Upon information and belief, Philips India is an India corporation with its principal place of business and nerve center located at Bangalore, India.

## III. JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this counterclaim pursuant to 28 U.S.C. §1367, because it arises from the same occurrence as the claims brought by Plaintiffs.

9. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(1), as Development is an entity organized under the laws of the Commonwealth of Puerto Rico with its principal place of business in Puerto Rico.

10. Venue in this Court is further proper pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to Alpha's counterclaims occurred in this judicial district, and Alpha and Philips PR are subject to personal jurisdiction in this district.

## IV. THE FACTS

### A. Relationship between Alpha and Philips

11. For approximately 9 years (between 2002 and 2011), Alpha served as the exclusive distributor in Puerto Rico of Philips' brand parts and medical products. Before serving as the exclusive distributor of Philips' brand parts and medical products, Alpha had served in the same capacity for a company that was later acquired by Philips.

12. Altogether, Alpha has approximately 26 years of experience as a distributor and service outfit of sophisticated medical products in Puerto Rico.

13. As Philips' distributor, Alpha developed the market for products of the Philips brand, buying them at its own risk and being independently responsible for their payment.

14. During their relationship, Alpha developed Philips' market, putting it an advantageous competitive position.

15. This relationship continued until Philips abruptly ended it in March of 2011.

16. Since then, Philips has undertaken steps to undermine Alpha's operations in Puerto

Rico.

**B. <u>Alpha's Employment of former Philips employees and vice versa</u>**

17. During its 26 years of operations, Alpha has contracted a grand total of two employees that formally worked at Philips: Alberto Silva and Radamés Bracero.

18. Of these two employees, Mr. Silva previously worked for Alpha (being one of its founders), and later went on to work for Philips, before eventually returning to work for Alpha.

19. Mr. Bracero worked as a consultant for another medical equipment service provider between his work at Philips and Alpha.

20. Mr. Bracero currently works as a Senior FSE and Mr. Silva currently works as a field service technician.

21. It is worth noting that Philips has also contracted former Alpha employees.

22. In addition to previously employing Mr. Silva, upon information and belief, Philips currently employs two former Alpha employees, Amilcar Zayas and Edgardo Garay.

23. At this time, Alpha does not currently have any knowledge as to which, if any, of its proprietary information and trade secrets these Philips employees may or may not have relayed to their employer.

**C. <u>Access granted to Philips employees</u>**

24. Upon information and belief, while working at Philips PR, neither of the employees hired by Alpha had any privileges or authority that would grant them access to Philips' purported trade secrets or copyrighted materials.

25. None of the former Philips employees that are currently working for Alpha have any special access to Philips' purported proprietary materials that would allow them to infringe upon Philips' copyrights.

26. Upon information and belief, access granted to Philips' FSEs is limited to their ability to conduct diagnostics and calibrations of the relevant equipment in order to ensure that these are operating adequately.

**D. Allegations as to Metro Pavia**

27. Upon information and belief, Philips' service contract with Metro Pavía Inc. expired under its own terms on December 31, 2018.

28. Upon information and belief, Metro Pavía, Inc. was not satisfied with Philips' service conditions and performance.

29. Shortly before voluntarily opting to let its service agreement with Philips expire, Metro Pavía opened a service bidding process in which Philips, Alpha, and another provider (CIRACET, Corp.) participated on equal conditions.

30. Metro Pavía unilaterally awarded the bid to Alpha, who presented the lowest bid.

31. Upon information and belief, the change in service provider from Philips to Alpha represented savings for Metro Pavía ranging from $700,000.00-$800,000.00.

**E. Philips' interference with Alpha's clients**

*a. Removal of equipment*

32. Upon information and belief, at least since December 2019, Philips has been taking Alpha clients' equipment to perform what they have told Alpha's clients to be "mandatory security updates".

33. Upon information and belief, Philips has performed these "updates" even when no Philips' servicing agreement is in place.

34. Upon information and belief, the result of these "updates" has been the elimination of the previously granted Level 0 access.

35. Upon information and belief, third-party service providers, such as Alpha, cannot even run diagnostics or calibrations on their clients' equipment without an access key purchased through Philips.

36. Upon information and belief, at least one of Alpha's clients -Dr. José A. Rivera Rivera of Medical X-Ray Center- questioned the need for the alleged "update". Dr. Rivera specifically asked if these "updates" were needed to comply with the corresponding equipment technical standards: the American College of Radiology (ACR) Technical Standard for Diagnostic Medical Performance Monitoring of Real-Time Ultrasound Equipment.

37. Upon information and belief, Philips' representatives merely informed Dr. Rivera that the alleged mandatory "update" was solely to address a security issue.

38. Upon information and belief, when Dr. Rivera rejected the assertion provided by Philips' representatives -since his equipment was not connected to the Internet (where the purported security issue would come into play)- Philips' representatives threatened Dr. Rivera that they would inform the corresponding medical insurance companies that Dr. Rivera's equipment was obsolete, even though they could not demonstrate that the failure to update the equipment violated the applicable ACR standards.

39. Upon information and belief, through their actions, Plaintiffs are attempting to intimidate Alpha's clients, and, perhaps, other third-party service providers, into abandoning their contractual relationships with their current providers in order to strongarm these clients into executing direct contracts with Plaintiffs.

*b. Illegal access to Alpha's clients without a valid contract*

40. Upon information and belief, Philips continues to have remote access to the equipment installed in Alpha's client's facilities.

41. Upon information and belief, through this access, Philips has free range to modify any information stored in the equipment's systems, including logging information.

42. Upon information and belief, such illegal access took place, at least once, on December 21, 2018, when an employee of Philips (William Ríos) accessed Dr. Susoni Hospital's systems. The corresponding log shows the initials "wr" during a time that Philips had no service contract with Dr. Susoni Hospital.

*c.* *"Litigation hold" letters*

43. Upon information and belief, Plaintiffs, acting through their counsel, have been attempting to intimidate Alpha's clients by presenting to their side of the above-caption claim's allegations.

44. Upon information and belief, Plaintiffs, acting through their counsel, have been sending copies of their Amended Complaint to Alpha's clients. Plaintiffs are doing this through the guise of sending "litigation hold letters" for the pretextual purpose of asking these clients to preserve relevant evidence.

45. Upon information and belief, Plaintiffs, acting through their counsel, have sent these "litigation hold letters" to, at least, the following of Alpha's clients: Montehiedra MRI & CT Center, the Metro Pavía Hospitals network, Diagnostics Nuclear Medicine, Manatí Medical Center, among others. Through these actions, Plaintiffs are attempting to intimidate Alpha's clients into abandoning their relationships with Alpha.

46. There is no legitimate legal justification for sending non-parties this type of letter.

47. Plaintiffs have been at least partially successful in their actions, intimidating one of Alpha's clients into deciding to renew its contract with Alpha on a month-by-month basis rather than the usual yearly renewal.

**F. <u>Irreparable harm of Philips' conduct</u>**

48. In addition to endangering Alpha's existence, Plaintiffs' decision to eliminate Level 0 access to Alpha's clients' equipment is already creating potentially life-threatening situations.

49. During the weekend a February 1-2, 2020, a situation occurred in one of the facilities (San Francisco Hospital) of Alpha's client, Metro Pavía, that severely endangered the client's ability to diagnose patients.

50. An MRI lost its internal pressure, creating the potential of the MRI's magnetic field collapsing, which would have significantly disrupted the hospital's ability to treat patients and would have taken at least $60,000 to fix.

51. To avoid this issue, Alpha could have used the Level 0 access to restart the magnet, thus solving the issue in less than an hour.

52. However, because Philips had installed its purported "mandatory update", effectively shutting down Level 0 access, Alpha was constrained in its ability to fix the problem and had to find other ways to address the issue.

53. Fortunately, Alpha managed to fix the problem by shutting down the MRI and restarting it. The entire process took 24 hours, which left the hospital without the ability to use the MRI during this time.

54. If Level 0 access were still available, Alpha could have fixed the issue in approximately one hour.

55. Instead, the Hospital was left a full 24 hours without access to one of its life-saving equipment.

**FIRST COUNTERCLAIM CAUSE OF ACTION: TORTIOUS INTERFERENCE WITH CONTRACT**

56. Alpha incorporates by reference all preceding paragraphs as is fully set forth and

alleged herein.

57. As a general rule, "contracts are valid only between the parties who execute them and their heirs." *Dennis v. City Federal Savings,* 21 P.R. Offic. Trans. 186, 200 (1988). Therefore, a contract usually is irrelevant as to third parties since it only regulates the relations between the parties to the contract. *Id.* Nevertheless, there is a duty to respect the contractual obligations of others.

58. Article 1802 of the Puerto Rico Civil Code, 31 L.P.R.A. §5141, allows an action for tortious interference against third parties that interfere with a valid contract. The interfering party and the contracting party who knowingly breaches the contract are jointly liable to the aggrieved party. *Gen. Office Prods. v. A.M. Capen's Sons*, 15 P.R. Offic. Trans. 727 (1984).

59. For the third party to be liable to the aggrieved party, no breach is required. All that is required in that the third party acted tortuously with the knowledge that damage will be caused by a breach. *Id,* at p. 734.

60. The Puerto Rico Supreme Court has outlined the following elements for a tortious interference claim: (1) there is a contract with which a third party interferes; (2) the third party acted tortuously; (3) there is damage to the plaintiff, and (4) said damage results from the tortious act of the third person. *Id*.

61. In order to maintain its operations in Puerto Rico, Alpha currently has multiple servicing agreements with local entities to perform services required.

62. Many of Alpha's clients contain Philips brand equipment and their corresponding systems.

63. Since Philips abruptly ended Alpha's exclusive distribution agreement, Philips has undertaken affirmative steps to undermine Alpha's operations in Puerto Rico, including but not

limited to attempting to interfere and actually interfering with Alpha's relationships with its clients.

64. Examples of these attempts at improperly interfering with Alpha's contracts include Philips unilateral elimination of Level 0 access in Alpha clients' equipment under threats by Philips' representatives; Philips' illegal remote access to the equipment installed in Alpha's client's facilities, even when there is no Philips agreement in place; Plaintiffs' delivery of supposed "litigation hold letters" to Alpha's clients with the express intention of intimidating these into abandoning their relationships with Alpha.

65. These tortious and malicious acts have interfered with Alpha's ability to provide services to its customers according to terms established in its servicing agreements. The purpose of Plaintiffs' interference is to cause harm and take over the Puerto Rico market developed mainly by Alpha for the Philips' products and to unilaterally control it.

66. Philips' exclusionary conduct has resulted in the misuse of the Level 0 key access in an attempt to monopolize the market. It is clear that the Philips-brand system requires maintenance services and Philips' is creating barriers to third-party providers, such as Alpha, to provide these services.

67. Recognizing the competitive threat posed by Alpha, and fearing the loss of business, Philips' has chosen to engage in anticompetitive and exclusionary conduct. There is no valid business justification for Philips' conduct by blocking Alpha's access.

68. Given that Philips' improperly interfered with the servicing agreements between Alpha and its customers, Philips' is liable to Alpha for all damages it has suffered on account of its tortious interference. These damages are currently estimated at $7,500,000.00.

**SECOND COUNTERCLAIM CAUSE OF ACTION: DEFAMATION**

69. Alpha incorporates by reference all preceding paragraphs as is fully set forth and

alleged herein.

70. Under Puerto Rico law, "[L]ibel is defamation that comes in the written form." *Segarra Jiménez v. Banco Popular, Inc.* 421 F. Supp. 2d. 452 (2006). "A private citizen who seeks redress for defamation must prove the following: (1) that information that is false and defamatory was (2) negligently published, with the result that (3) the defamed person suffered real damages." *Id.* at p. 458.

71. "The information published must be injurious," which requires that the libelous publication tend to subject the person to public hatred or contempt, or to deprive it of the benefits of public confidence and social intercourse, or to injure in its business, or in any other way to throw discredit, contempt of dishonor. *Id.* at p. 458.

72. Philips is attempting to intimidate Alpha's clients into abandoning their relationships with Alpha. Moreover, Philips' sent letters with copies of the Amended Complaint to Alpha's clients including but not limited to Montehiedra MRI & CT Center, the Metro Pavía Hospitals network, Diagnostics Nuclear Medicine, Manatí Medical Center, among others, embarking in a libelous campaign accusing Alpha of dishonest acts that Plaintiffs' know are false.

73. Philips' actions, carried out with the purpose of destroying Alpha's reputation with its clients and intimidating them into discontinuing their servicing agreements with Alpha, have caused serious damages to Alpha's business.

74. Philips has already been at least partially successful in its actions, intimidating one of its clients into deciding to renew its contract with Alpha on a month-by-month basis, instead of the usual yearly renewal. This clearly shows at least some of the damages caused by Philip's malicious and negligent conduct.

75. These ongoing damages are currently estimated at $24,864,000.00.

76. Philips' will continue its injurious conduct unless enjoined by this Honorable Court.

**THIRD COUNTERCLAIM CAUSE OF ACTION: PRELIMINARY AND PERMANENT INJUNCTION**

77. Alpha incorporates by reference all preceding paragraphs as is fully set forth and alleged herein.

78. Rule 65(a) of the Federal Rules of Civil Procedure governs whether a preliminary injunction is warranted. *See* Fed. R. Civ. P. 65 (a).

79. In considering a preliminary injunction request, the court weighs four factors: "(1) the plaintiff's likelihood of success on the merits; (2) the potential for irreparable harm in the absence of an injunction; (3) whether issuing the injunction will burden the defendants less than denying an injunction would burden the plaintiffs and (4) the effect, if any, on the public interest." *Sindicato Puertorriqueño de Trabajadores v. Fortuño*, 699 F. 3d. 1 (1st Cir. 2012).

80. "While no single factor is dispositive, the First Circuit Court of Appeals has indicated that the first factor is the *sine qua non* of the preliminary injunction test." *Torres Rivera v. García Padilla*, 2014 WL 357172, at p. 2 (D.P.R. 2014).

81. Philips, in bad faith, has blocked Alpha's authorized access of Level 0 to the MRI's computers by falsely alleging that the system requires a "mandatory security update". The access now restricted, initially allowed Alpha to offer its maintenance services and generate revenues for the services provided.

82. Therefore, Philips' improper actions have deprived Alpha of its right to use the Level 0. For this, and the reasons stated below, Alpha will likely succeed on the merits.

83. Philips has also engaged in conduct with the purpose of intimidating Alpha's clients into abandoning their relationships with Alpha.

84. Due to Philips' actions, Alpha stands to lose millions of dollars in service contracts,

affecting Alpha's ability to continue operations.

85. The extent of the losses to be potentially suffered by Alpha, absent Court action, constitutes irreparable harm. See *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 932 (1975) (threat of substantial loss of business and certainly bankruptcy qualified as the sort of irreparable harm needed to support preliminary injunction); *Rio Grande Cmty. Health Ctr., Inc. v. Rullan*, 397 F.3d 56, 76 (1st Cir. 2005) (substantial loss of business as sufficient to prove the irreparable harm required when seeking preliminary injunctions); *Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197 (2d Cir.1970) (there is irreparable harm where a party is threatened with the loss of a business).

86. "For purposes of a preliminary injunction, an injury will only be considered irreparable if no adequate remedy for the injury exists at law." *Total Petroleum v. Colón Colón*, 577 F. Supp. 2d. 537, 551 (D.P.R. 2008).

87. Through its actions, Philips' has undermined Alpha's operations in Puerto Rico causing irreparable harm to the business ability to generate revenues, to its reputation, and the alienation of customers. Moreover, it has limited Alpha's ability to expand its services to new customers.

88. Even more importantly, Plaintiffs' actions have endangered Alpha's client's ability to treat patients in a timely fashion. Plaintiffs' decision to revoke Level 0 access has already unreasonably delayed the availability of one of Alpha's client's MRIs during a span of 24 hours.

89. The nature of the harm these patients could face cannot be accurately quantified. Even a slight interruption of MRIs' operations (let alone one of 24 hours) will cause these patients irreparable harm. See *Massachusetts Ass'n of Older Americans v. Sharp*, 700 F.2d 749, 753–54 (1st Cir. 1983) (vacating a district court ruling denying preliminary injunctive relief because

plaintiff had demonstrated that the terminated Medicaid benefits would have cause patients undue harm, being unable to obtain necessary medical treatment); *Harris v. Bd. of Supervisors, Los Angeles Cty.*, 366 F.3d 754, 766 (9th Cir. 2004) (plaintiffs would have suffered irreparable harm if certain cuts to health facilities were performed and plaintiffs were to face pain, infections, amputations, medical complications and death due to delayed treatment); *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, No. CIV. 12-00064 LEK, 2012 WL 381209, at p. 6 (D. Haw. 2012) (plaintiffs' patients suffering cancer were likely to suffer irreparable harm if preliminary injunction was denied or delayed); *Nat'l Ass'n of Psychiatric Treatment Centers v. Weinberger*, 661 F. Supp. 76, 81 (D. Colo. 1986) (preliminary injunction was justified to enjoin the implementation of new terms of reimbursement for care expenses when the interruption of said care would have been deleterious to the patients and their families).

90. Alpha seeks an order for a preliminary and permanent injunction to be allowed to access its client's equipment without being encumbered by Philips' "mandatory security updates" and for the reestablishment of pre-December 2019 Level 0 access. This would ensure that Alpha's client's patients have assured access to the relevant equipment that might save their lives.

91. Moreover, a preliminary and permanent injunction will ensure that Alpha does not continue to suffer irreparable harm on account of Philips' interference with its operations and dealings with thirds parties.

92. On the other hand, no harm would follow if Philips' is ordered to reestablish Alpha's access to Level 0.

93. The public interest weighs heavily in Alpha's favor since its public reputation is being harmed and the requested injunctive relief would limit Plaintiffs' monopoly-driven actions. The issuance of preliminary and permanent injunctions is likely to also avoid unnecessary loss of

life.

**FOURTH COUNTERCLAIM CAUSE OF ACTION: DECLARATORY JUDGMENT OF NO COPYRIGHT INFRINGEMENT**

94. Alpha incorporates by reference all preceding paragraphs as is fully set forth and alleged herein.

95. Rule 57 of the Federal Rules of Civil Procedure, 28 U.S.C. §2201, provides that: "[a]ny court […], upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

96. Considering the facts of this case and the preceding allegations, Alpha respectfully requests that this Honorable Court declare that no copyright infringement was committed by Alpha.

97. In its Amended Complaint, Philips' accuses Alpha of copying, reproducing, distributing, displaying, using, and /or creating an unauthorized derivative work of Philips' software and materials. *See* **Dkt. 9, ¶¶115-116.**

98. Alpha categorically denies the allegations that it has copied, reproduced, distributed, displayed, used or accessed copyrighted information from Philips' at any time relevant to this dispute, and thus asserts that Philips' is not entitled to a judgment of copyright infringement under 17 U.S.C. §101, *et. seq.*

99. "In addition to the registration requirement, a plaintiff alleging copyright infringement has the burden of proving two elements: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Airframe System, Inc. v. Communications Corp.* 658 F. 3d. 100, 104 (1st Cir. 2011).

100. Here, Philips vague allegations generally assert that Alpha copied Philips's

copyrighted materials, without asserting the sources, aspects, and elements infringed. Moreover, the only benefit that Alpha has received from Philips' software and materials is the one allowed by accessing Level 0, which is now blocked by Philips.

101. Here, Philips' alleges that Alpha's employees had misappropriated Philips' copyrighted materials, pursuant to 17 U.S.C. §101 *et seq*. Besides Alpha's employees having access limited to Level 0, none of the former Philip's employees, now hired by Alpha, have access to Philips' purported copyrighted materials nor the ability to copy any of Philips' licenses.

102. Based on the above, Alpha seeks a declaration that Philips is not entitled to a judgment of copyright infringement.

**FIFTH COUNTERCLAIM CAUSE OF ACTION: DECLARATORY JUDGMENT OF NO TRADE SECRETS MISAPPROPRIATION UNDER THE DEFEND TRADE SECRET ACT**

103. Alpha incorporates by reference all preceding paragraphs as is fully set forth and alleged herein.

104. Pursuant to Rule 57 of the Federal Rules of Civil Procedure, 28 U.S.C. §2201, Alpha respectfully requests a declaration from this Honorable Court establishing that no Trade-Secrets misappropriation was committed.

105. Under the Defend Trade Secret Act, 18 U.S.C. §1836 *et seq.*, the "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means" constitutes a misappropriation.

106. Here, Philips alleges that Alpha's employees had misappropriated Philips' trade secrets, pursuant to 18 U.S.C. §1836 *et seq.*, specifically Philips claims that a Philips' ex-employee, Radamés Bracero, used his login credentials to access restricted areas of the MRI's host computers. *See* **Dkt. 9, ¶¶ 141-144.**

107. Alpha categorically denies these allegations and thus asserts that Philips is not entitled to a judgment of trade secrets misappropriation.

108. As previously stated, during its 26 years of operations, Alpha has contracted a total of two (2) employees that formally worked at Philips. While working at Philips, none of these employees had any privileges or authority that would grant them access to Philips' purported trade secrets.

109. Moreover, "[i]t is […] well settled that an employee upon terminating his employment may carry away and use the general skill or knowledge acquired during the course of the employment." *CVD, Inc. Raytheon Co.* 769 F. 2d. 842, 852 (1st Cir. 1985).

110. Here, Alpha's employees were authorized to access Level 0 of the MRI's computers, and they used their experience and expertise to complete the services established in the services agreements with Alpha's clients.

111. Alpha's employees never had access to Philips' trade secrets.

112. Based on Philips' argument, it is worth noting that Philips has also contracted former Alpha employees; therefore, Philips' claim reeks of unclean hands since Alpha could easily allege that its proprietary information and trade secrets are being transferred and misappropriated by Philips.

113. Based on the above, Alpha asks for a declaration that no misappropriation trade-secrets was committed, as alleged by Philips.

**SIXTH COUNTERCLAIM CAUSE OF ACTION: UNFAIR COMPETITITON**

114. Alpha incorporates by reference all preceding paragraphs as is fully set forth and alleged herein.

115. Law Number 77 of 1964[4], known as the Antitrust Act of Puerto Rico, declares unlawful unfair methods of competition, unreasonably restrictions to business and commerce and unfair or deceptive acts or practices in the trade, and establishes the remedies a party may seek for violations of its provisions. The Sherman Act[5] is the federal equivalent of the Antitrust Act and prohibits similar conduct.

116. Article 2 of the Antitrust Act declares act to unreasonably restrict business and commerce as unlawful. It also prohibits attempts to monopolize.

117. Article 13 of the Antitrust Act invests the Court with the authority to award injunctions or any other remedy it deems applicable, in order to prevent, sanction and impede these unlawful practices.

118. Section 2 of the Sherman Act addresses the actions of single firms that monopolize or attempt to monopolize a certain market. This is established by showing: "(1) the defendant has monopoly power and (2) the defendant has engaged in impermissible 'exclusionary' practices with the design or effect of protecting or enhancing its monopoly position." *Coastal Fuels of Puerto Rico, Inc. v. Caribbean Petroleum Corp.*, 79 F.3d 182, 196 (1st Cir.1996); *see also Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477, 97 S.Ct. 690 (1977); *U.S. v. Grinnell Corp.*, 384 U.S. 563, 570, 86 S.Ct. 1698 (1966).

119. Alpha's claim seeks to prevent Plaintiffs' continued unfair and unscrupulous methods of competition under the Puerto Rico Antitrust Act and the Sherman Act.

120. As stated before, Plaintiffs have blocked Alpha's authorized access to Level 0 of the MRI's computers by falsely alleging that the system requires a "mandatory security update". The access, now restricted, initially allowed Alpha to offer its maintenance services and generate

[4] 10 L.P.R.A. §§259-276.
[5] 15 U.S.C. §§1-14.

revenues for the services rendered. This bad faith conduct by Plaintiffs has deprived Alpha of its right to use the Level 0.

121. Additionally, Plaintiffs are attempting to intimidate Alpha's clients into abandoning their relationships with Alpha by sending letters with copies of the Amended Complaint to Alpha's clients including but not limited to Montehiedra MRI & CT Center, the Metro Pavía Hospitals network, Diagnostics Nuclear Medicine, Manatí Medical Center, among others, embarking in a libelous campaign accusing Alpha of dishonest acts that Plaintiffs' know are false.

122. Philips' actions, carried out with the purpose of destroying Alpha's reputation with its clients and intimidating them into discontinuing their servicing agreements with Alpha, have caused serious damages to Alpha's business.

123. Philips has already been at least partially successful in its actions, intimidating one of its clients into deciding to renew its contract with Alpha on a month-by-month basis, instead of the usual yearly renewal.

124. Plaintiffs' actions have unreasonably restricted commerce in the Commonwealth of Puerto Rico, undermining Alpha's operations in Puerto Rico, causing irreparable harm to the Alpha's ability to generate revenues, to its reputation, and the alienation of customers. It has also considerably limited Alpha's ability to expand its services to new customers.

125. Plaintiffs' business practices alleged above are unfair and offend public policy because they are unlawful, unfair, and/or fraudulent on the public, and substantially detrimental to Alpha's business, its partners business, customers, and consumers.

126. Plaintiffs' conduct has given them an illegal competitive advantage over Alpha that impedes Alpha from engaging in business it would have otherwise secured.

127. Plaintiffs' actions are effectively harming the public at large.

128. Plaintiffs' actions constitute unfair business practices in violation of Puerto Rico's Antitrust Law and, its federal equivalent, the Sherman Act**.**

129. Because of Plaintiffs' intentional acts of unfair competition, Alpha is entitled to restitution and/or disgorgement of Plaintiffs' ill-gotten gains.

130. As a direct and proximate result of Plaintiffs' willful, wanton, and/or fraudulent acts and conduct, Alpha has been injured and will continue to suffer injury to its business and reputation unless Plaintiffs are restrained from continuing such unfair business practices.

131. For the reasons stated above, Alpha seeks relief from this Honorable Court under the Antitrust Act of Puerto Rico, the Sherman Act, and/or under similar legal provisions, to prohibit Plaintiffs from continuing their unlawful practices (the monopolization or attempt to monopolize the Puerto Rico market) and awarding any corresponding remedies to Alpha.

**WHEREFORE**, Alpha respectfully requests that this Honorable Court dismiss Plaintiffs' Amended Complaint in its entirety and grant Alpha's Counterclaims and the following remedies:

- enter a declaration that Philips is not entitled to a judgment of copyright infringement;
- enter a declaration that no misappropriation trade-secrets was committed, as alleged by Philips;
- award Alpha damages (currently estimated at $7,500,000.00) resulting from Plaintiffs' tortious interference with its contracts with third parties;
- award Alpha damages (currently estimated at $24,864,000.00) resulting from Plaintiffs' libelous statements, through their "litigation hold letters", to Alpha's clients;
- issuing preliminary and permanent injunctions to allow Alpha to have access to its

client's equipment without being encumbered by Philips' "mandatory security updates" and for the reestablishment of pre-December 2019 Level 0 access;

- award relief under the Antitrust Act of Puerto Rico, the Sherman Act, or under similar legal provisions because of Plaintiffs' unlawful monopolistic practices and/or their attempts to monopolize the Puerto Rico market;
- and award attorney fees and costs in favor of Alpha, because of Plaintiffs' temerity in bringing this action.

**CERTIFICATION**: We hereby certify that on this date, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

In San Juan, Puerto Rico, this 12th day of February 2020.

**RESPECTFULLY SUBMITTED,**

*/S/ Crystal N. Acevedo-Jiménez*
USDC-PR 306204
cacevedo@reichardescalera.com

*/S/Carlos R. Rivera-Ortiz*
USDC-PR 303409
riverac@reichardescalera.com