**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

| | |
|---|---|
| PHILIPS MEDICAL SYSTEMS PUERTO RICO, INC., PHILIPS MEDICAL SYSTEMS NEDERLAND B.V.; AND PHILIPS INDIA LIMITED,<br><br>Plaintiff,<br><br>v.<br><br>ALPHA BIOMEDICAL AND DIAGNOSTIC CORP.,<br><br>Defendant. | CIVIL No. 3:19-cv-01488<br><br>RE: PERMANENT INJUNCTIVE RELIEF PURSUANT TO THE COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. §1030, COPYRIGHT ACT, 17 U.S.C. § 1201, PUERTO RICO'S INDUSTRIAL AND TRADE SECRET PROTECTION ACT, 10 P.R. LAWS ANN. §§4131-4141; UNFAIR COMPETITION; DIGITAL MILLENNIUM COPYRIGHT ACT, 17 U.S.C. § 1201; COPYRIGHT INFRINGEMENT, 17 U.S.C. § 101, *et seq.* AND DEMAND FOR JURY TRIAL. |

## MOTION TO COMPEL DISCOVERY

**THE HONORABLE COURT:**

**COMES NOW** Philips Medical Systems Puerto Rico, Inc., Philips Medical Systems Nederland B.V., and Philips India Limited (collectively, "Philips" or "plaintiffs"), through their undersigned attorneys, very respectfully states and prays as follows:

## I. INTRODUCTION

After engaging in multiple good faith —yet unsuccessful— attempts to reach mutually beneficial agreements with defendant Alpha Biomedical & Diagnostics Corp. ("Alpha" or "defendant") extrajudicially in an effort to objectively balance both parties' interests in furtherance of the discovery process, Philips has been left with no other option but seek the Court's intervention to halt Alpha's vulpine discovery tactics once and for all. As the litigation history of this case and the cumulative evidence of the record shows, Alpha has engaged in a continued

pattern of occlusion aimed at frustrating the efficient progression of discovery. Alpha has obstructed every effort employed by Philips to discover relevant material, including withholding information based on bogus grounds devoid of any legal sufficiency, opposing Philips' efforts to seek relevant information in possession of third parties, failing to produce documents consistent with this Court's Order (**Dkt. 61**), all while being unwilling to execute a protective order to enable the parties to protect confidential material, while engaging in discovery.

As will be shown below, the discovery responses by defendant are incomplete, evasive, inadequate, and replete with impermissible boilerplate and generalized objections. Furthermore, defendant has failed to produce highly relevant materials in its possession, and despite the fact the Court's most recent discovery Order (**Dkt. 61,** p. 3 and 6) held that documents such as contracts with Alpha, documentation related to repairs by Alpha, proof of payment to Alpha, communications with Alpha, documents related to indebtedness to Alpha (all documents requested by Philips in its request for production of documents to Alpha) are in Alpha's possession and had to be discovered through Alpha. (**Dkt. 61,** p. 6).

Accordingly, Philips, hereby certifies that pursuant to Fed. R. Civ. P. 26 and 37, and Lc. Civ. P. 26 that Philips engaged not once, but <u>multiples times</u> in good faith discussions with Alpha to resolve the underlying discovery issues to no avail. Thus, Philips moves the Court, to enter an order to compel discovery from defendant Alpha.

## II. RELEVANT PROCEDURAL BACKGROUND

1. On March 30, 2020 Philips served Alpha with a *First Set of Interrogatories and Request for Production of Documents to Defendant ("First set of Interrogatories").* **(Exhibit A)**.

2. On April 30, 2020 Alpha submitted overly deficient and evasive *Answer to Plaintiffs' First Set of Interrogatories and Request for Production of Documents* ("Answers"). Many --if not all-- of Alpha's *Answers* were incomplete, evasive, inadequate, and replete with impermissible boilerplate and generalized objections. **(Exhibit B)**.

3. Considering that both parties have raised trade secret and confidentiality objections in their responses to written discovery exchanged, on May, 22 2020 Philips relayed Alpha a draft of a *Proposed Confidentiality and Protective Order* ("Proposed Protective Order") for its consideration. (**Exhibit C).** Although Alpha acknowledged receipt of Philips' email and advised it would review and get back to counsel, weeks passed without a response from defendant.

4. After not hearing from Alpha, on June 19, 2020 Philips sent Alpha correspondence following up on its *Proposed Protective Order* in order to begin discovery (**Exhibit C)**. A brief telephone conference was held between the parties on June 23, 2020 in which they discussed Alpha's concerns related the *Proposed Protective Order* and discovery of what Alpha alleges is trade secret.

5. With no response from Alpha on its decision concerning the *Proposed Protective Order*, another email was then again sent on June 30th, 2020 advising that most if not all of Alpha's objections to the purported confidential and commercially sensitive nature of the documents requested could be solve by executing the confidentiality agreement. Alpha did not respond, instead it reiterated a previous request to stay all discovery, which Philips plainly rejected. **(Exhibit C)**.

6. On July 2nd, 2020 Philips sent Alpha its objection letter addressing Alpha's deficient *Answers ("Philips Objections")*. On that same letter, among other things, Philips insisted on the *Proposed Protective Order* as a mechanism to address many of Alpha's responses involving confidentiality and trade secret claims. Additionally, Philips requested to hold a meet and confer session within the next seven (7) days in compliance with Fed. R. Civ. P. 26 and 37 in order to discuss both parties' stances in the hopes of reaching an extrajudicial, expeditious, and mutually beneficial agreement. **(Exhibit D)**.

7. After following up with Alpha's counsel to schedule the meet and confer, on July, 9 2020 Alpha requested a 10-day period to file a written reply to *Philips' Objections*. Parties agreed to grant Alpha until July 17 to submit its reply.

8. On July 17, 2020 Alpha submitted a letter vaguely addressing *Philips' Objections* to Alpha's *Answers* (the "Reply Letter"). (**Exhibit E**). Later, on July 22, 2020 Philips reached out to Alpha's counsel to schedule the meet and confer, Alpha confirmed its availability, and the meet and confer took place on July 29, 2020.

9. During the July 29th meet and confer session, most of *Philips' Objections* centered on three grounds. *First*, Alpha's evasiveness in responding to matters involving IST certificates and access to the systems. *Second*, on Alpha's evasiveness and boilerplate responses to interrogatories and requests involving defendant's affirmative defenses. *Third*, Alpha's self-serving and generalized objections that information constituted confidential, commercially sensitive and/or trade secret information. As to the latter, Philips insisted, yet again, that all of the parties claims on confidential and commercially sensitive information could be solved by executing the *Proposed Protective Order*, which Alpha had been unwilling to execute. Instead, Alpha voiced some concerns over the proposed order primarily based on the potential misuse of the information by Philips. In response, Philips explained that the purpose of the agreement was precisely to set the safeguards necessary to avoid the unauthorized disclosure of the materials, and emphasized that the person from Philips

who would most likely have access to the information was an in-house counsel with no decision-making power over Philips Puerto Rico.

10. In a good faith effort to reach a mutually agreeable compromise during the meet and confer, Philips agreed to allow Alpha until August 7,2020 to confer with its client whether to amend or supplement its answers and to provide a response and/or proposed edits to the *Proposed Protective Order* relayed to defendant back on May 22, 2020. Philips also sent an email to Alpha detailing the compromises reached between the parties during the July 29th meet and confer session, which Alpha confirmed. **(Exhibit F)**.

11. Thereafter, on August 7, 2020 Alpha sent a response e-mail to Philips, however, it did not supplement or amend any of the disputed interrogatories or requests. Instead, it submitted a revised draft of a confidentiality agreement, which among other matters, proposed that the designation of materials as *Attorneys Eyes Only* and *Highly Confidential* exclude Philips' in-house counsel. In that same correspondence, without formally amending its answers to Philips' *First Set of Interrogatories*, Alpha informed, for the first time, that defendant had in fact acquired an IST certificate for Philips' systems which allegedly had not been used on MRI systems, and agreed to circulate a copy of said IST certificate, but only to the extent Philips agreed to the designation of said IST certificate as *Attorneys Eyes Only*. **(Exhibit G)**.

12. On August 12, Philips responded to Alpha's August 7th e-mail with an explanation on why Philips couldn't accept all of Alpha's proposed changes to the *Proposed Protective Order*. Most specifically, Philips explained that given the technical nature of the information involved in the case such as Philips' IST certificates, Plaintiffs needed someone from Philips, such as the in-house counsel for intelectual property to interpret the information. Philips instead proposed to limit access to only one (1) designated in-house counsel to access the sensitive information. In its response e-mail Philips also reiterated that the designated in-house counsel would be someone with no decision-making power in Puerto Rico. Therein, Philips' also objected to the designation *Attorneys' Eyes Only* on the allegedly legal IST certificate acquired by Alpha as it was not a trade secret or commercially sensitive information to Alpha to warrant such an extreme protection. Quite the contrary, the IST certificate works with Philips' IST code, which contains confidential code **of** Philips. The IST has to match up with Philips' code in order to allow access to protected software. It is the key to the Philips' lock. Furthermore, Philips' informed that responses on the IST certificate needed to be supplemented in light of the new information provided since the scope of discovery was not limited to MRIs. (**Exhibit H**).

13. A follow up e-mail was sent by Philips on August 13 requesting a final answer on issues involving the *Proposed Protective Order* by Wednesday, August 19, 2020[1]. (**Exhibit I)**.

14. On August 18, 2020, among other matters, Alpha mailed Philips a revised *Proposed Protective Order*, and again informed that it intended to supplement the responses on the IST certificates insisting, however, that the allegations of the *Amended Complaint* were limited to MRIs. **(Exhibit J**).

[1] On Wednesday, August 19, 2020 parties agreed to hold a meet and confer session summoned by Alpha to discuss Philips' answers to defendant's written discovery.

15. After conferring with client, on August 24, 2020 Philips responded to Alpha's August 18th e-mail rejecting the counterproposal to the exclusion of the in-house counsel and explaining the legal basis of its position. Therein, Philips informed Alpha that if a compromise could not be reached on this matter, Philips would move for entry of a protective order. Additionally, Philips insisted that various interrogatories and requests for production dealing with the issue of IST certificates and access to the systems needed to be supplemented in accordance to the new information disclosed by Alpha. Furthermore, Philips refenced specific relevant portions of the *Amended Complaint* to refute Alpha's previous position that the pleadings were limited to MRI systems. Lastly, in a final good faith effort to secure the discovery and materials sought, Plaintiffs again granted Alpha until August 28, 2020 to supplement responses advising Alpha that if appropriate responses were not received, Plaintiffs would have no other choice than to move to compel. **(Exhibit K**).

16. After substantial and sustained good faith efforts by Philips to secure the materials sought without the court's intervention no ground has been gained. The August 28th, 2020 deadlines passed without any response from Alpha. Accordingly, Philips hereby requests the Court's intervention in the hopes of solving discovery issues once and for all and begin discovery that is now behind due to Alpha's unwarranted delays.

## III. LAW & ARGUMENTS

The discovery process delineated in the Federal Rules of Civil Procedure is intended to allow litigants to "prepare for trial in a manner that will promote the just, speedy, and inexpensive determination of the action...." 8 C. Wright, A. Miller, & R. Marcus, Federal Practice and Procedure § 2001, p. 22 (3rd ed.2010). "Thus, the spirit of the rules is violated when advocates attempt to use discovery tools as tactical weapons rather than to expose the facts and illuminate the issues...." *Burlington Northern & Santa Fe Ry. Co. v. United States District Court for the District of Montana,* 408 F.3d 1142, 1149 (9th Cir.2005). Courts are called upon to curve gamesmanship of this sort, with a wide degree of latitude afforded for the task. *Ayala–Gerena v. Bristol Myers–Squibb Co.,* 95 F.3d 86, 91 (1st Cir.1996).

### A. PHILIPS'S FIRST DISCOVERY REQUEST - INTERROGATORIES

**a. None of the objections raised by Alpha are factual or legally sufficient. Accordingly, Alpha should be ordered to either lodge legally sound objections or answer each interrogatory or request for production in its entirety.**

***i. Alpha's Objections based on Relevancy***

Alpha failed to answer the following discovery requests based on their alleged lack of relevancy to the underlying issues in this case: Interrogatories #2, #11, #12, # 13, #16, #17, #18 and Request for Production of Documents ("RFP") #11, #12, #13, #14, #21, #24, #25, and #29. *See* **Exhibit B** and **E**.

A significant number of Philip' interrogatories and requests for production of documents related to IST certificates[2] for access to Philips' systems. *See for example* **Exhibit B,** Interrogatories #11, #12, # 13, and RFPs #11, #12, #13, #14, #24, and #29. IST certificates are of high importance to Philips and the prosecution of its claims because, as described in the *Amended Complaint*, they provide one of the ways by which Alpha and its employees were able to manipulate – i.e. create, remove, spoof or bypass –security control measures in the Philips' systems. More specifically, Philips alleges that Alpha was using an unauthorized IST certificate, referenced in the *Amended Complaint* as IST account, "12345". **Dkt. No. 9**, ¶¶ 74-77 and 79-81.

However, in all of Alpha's responses to Philips' interrogatories and RFPs involving IST certificates, Alpha responded with the evasive answer that: "*No IST certificate is required to access Philips' MRI's systems*." **Exhibit B**. After being confronted by Philips with its objections to said response, Alpha's maintains that since IST certificates are not required to gain access to the MRI systems "Interrogatories #11, #12, # 13, #16, #17, #18 and to Requests #11, #12, #13, #14, #21, #23, #24, #25, #29 and #32 are not relevant to this litigation." **Exhibit F** and **G.**

Mere statements that interrogatories or requests for production of documents are irrelevant are deemed inadequate to voice a successful objection to show that such discovery should not be permitted. *See Aponte-Navedo v. Nalco Chemical Co.*, 208 F.R.D. 31,36 (D.P.R. 2010). "Federal

[2] An IST certificate works with Philips' IST code to allow access to certain levels and proprietary information on the systems. It is the key to the Philips lock. The code has to match up with Philips' code in order to allow access.

Rule of Civil Procedure 26 ("Rule 26") states that ***'[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case' and that information 'need not be admissible in evidence to be discoverable.'"*** *Autoridad de Carreteras y Transportación v. Transcore Atlantic, Inc.*, 319 F.R.D. 422, 427 (D.P.R.2016). In other words, the term "relevant information" within Rule 26 includes any matter that is or may become an issue in the litigation. *See Vazquez Fernandez v. Cambridge College, Inc.*, 269 F.R.D. 150, 164 (D.P.R. 2010); *see also U.S. v. Matias*, 707 F.3d 1, 5 (1st Cir. 2013) (holding that relevant evidence includes any matter which has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence); *In re Bard IVC Filters Prod. Liab. Litig*., 317 F.R.D. 562, 564 (D. Ariz. 2016) (stating in regards to Rule 26 that after the 2015 amendments "The test going forward is whether evidence is 'relevant to any party's claim or defense…'"); *America Health Inc. v. Chevere*, 37 F.Supp.3d 561, 564 (D.P.R. 2014) ("Relevant evidence is that which may prove or disprove a party's liability theory.").

Here, Alpha's answers run afoul of the clear strictures of Rule 26 and 33 and their interpretative case law. The basis of Philips' claims under the Computer Fraud and Abuse Act is premised in Alpha's illegal access to Philips' proprietary material (Philips' CSIP). It is Philips' position that Alpha's access exceeded the levels of authorization permitted to non-Philips entities. *See* **Dkt. 9** ¶ 99. The IST certificates are also essential to the Digital Millennium Copyright Act claims because the unauthorized certificates are used to circumvent technological measures that protect copyrighted work embedded in the systems. *See* **Dkt. 9** ¶¶124 and 124. Indeed, the *Amended Complaint* alleges that Alpha has created, removed, spoofed or bypassed –security control measures to gain access to ***Philips CSIP.*** **Dkt. 9**, ¶¶75 and 81. As the well-pleaded

allegations in the *Amended Complaint* reveal, Philips has proof that Alpha used an unauthorized IST certificate (IST 12345), to gain access to proprietary, trade secret and copyrighted material, in at least two different systems. *See* **Dkt. 9** ¶¶ 74-77 and 79-81. The *Amended Complaint* further alleges, that upon information and belief "defendant engages in the same improper and unauthorized conduct at sites it services island wide". **Dkt. 9** ¶ 67. Thus, the information requested on the IST certificates, including how they were acquired, the circumstances of such acquisition and copies of such certificates as requested in Interrogatories #11, 12, 13, 17, 18 and RFP #11, 12, 13, 14, and 32 are **<u>highly</u>** relevant to the instant case.

Furthermore, the response offered by Alpha reiterating that "*No IST certificate is required to access Philips' MRI's systems*" is totally evasive, and relates to facts that go to the essence of Plaintiffs case. *See* **Exhibit B**. Without an IST certificate or other unauthorized mechanism to circumvent access controls, non-Philips entities, such as defendant, would have access to a basic level of information in the systems. *See* **Dkt. 9** at ¶¶ 33-34. However, here the basis of Philips' claims is precisely the fact that Alpha has used mechanisms, including the use on an unauthorized IST certificates, to gain access to Philips CSIP levels **<u>beyond</u>** those authorized.

Equally relevant is information requested is Interrogatory #16. As described in the *Amended Complaint*, Alpha was able to unlawfully bypass and circumvent Philips' software security measures for purposes of accessing protected data, diagnostic tools, maintenance logs, and other information beyond authorized levels of access by using a hacked version of a former Philips' employee, Radames Bracero, deactivated credentials. *See* **Dkt. 9** at ¶¶40-66.

Documents requested in RFPs #21, 24, and 25 is also germane since the requested items relate to means and tools used by Alpha to gain access or generate credentials to gain access to Philips' systems. *See* **Exhibit A**. Again, the information requested is central to this action because

this is a case where, among other things, defendant fraudulently accessed Philips' systems. Philips is entitled to the information so that Philips can investigate the scope of defendant's unauthorized access. The information requested is no doubt in defendant's possession, custody, or control. It can reasonably be inferred that in maintaining the alluded evidence out and its failure to produce the requested information stems from the prejudicial character of that information to its defense.

Moreover, Interrogatory #2 request the identification of names and addresses of any parent, subsidiary or affiliated companies to Alpha Biomedical and Alpha has failed to respond based on lack of relevancy. **Exhibit B** and **G**. Despite Philips' explanation that such information is relevant to consider for example, whether there is a common ownership and control between the corporations and a possible custody and control of information by a related entity that might be relevant in this case, Alpha has generally and without justification failed to respond.

Consequently, Alpha's responses fall within the category of responses referred to in Fed. R Civ. P. 37(a)(2)(B), and entitle plaintiffs to an order compelling proper and sufficient written responses and production of documents.

***ii. Alpha's Boilerplate Objections***

Alpha also objected to Interrogatories and RFPs by making boilerplate, non-particularized objections and despite Philips' insistence in said response has repeatedly failed to produce any response or documents. Specifically, Alpha objected Interrogatory #4, #5, #7, #8, and #9 and RFPs #5 and ##7-9 arguing that Philips "failed to establish its burden". *See* **Exhibit G**.

However, contrary to defendant's assertion it is the party that withholds information, who "bears the burden of establishing lack of relevancy or undue burden." *Autoridad de Carreteras y Transportación*, 319 F.R.D. at 427 (citations omitted). That is to say, the objecting party "must show specifically how each interrogatory or request for production is not relevant or how each question is overly broad, burdensome or oppressive." *Id.* at 430 (citations omitted) (emphasis

supplied); *see also* Fed. R. Civ. P. 33(b)(4) (providing that "grounds for objecting to an interrogatory must be stated with specificity."). Accordingly, generalized objections to an opponent's discovery requests are insufficient. *See, e.g., Mancia v. Mayflower Textile Servs. Co.*, 253 F.R.D. 354, 358 (D. Md. 2008) ("Boilerplate objections that a request for discovery is overbroad and unduly burdensome…are improper ***unless based on particularized facts***.") (citations and quotation marks omitted) (emphasis supplied); *Walker v. Lakewood Condo. Owners Ass'n*, 186 F.R.D. 584, 587 (C.D. Cal. 1999) ("Boilerplate, generalized objections are inadequate and tantamount to not making any objection at all."). From this follows that if "a party fails to answer an interrogatory submitted under Rule 33" or "fails to produce documents…as requested under Rule 34", the opposing party may move for an order compelling discovery. Fed. R. Civ. P. 37(a)(3)(B)(iii)-(iv).

Alpha objects to numerous interrogatories on the basis that placed an “undue burden” and “expense” upon defendant, yet defendant failed to specify the characteristics that render each interrogatory burdensome. *See* **Exhibit B, E** and **G**. For Alpha’s responses to RFP #9, which seeks information “identifying, describing, or referring to methods of accessing Philips’ systems or information, including methods of disabling or circumventing access controls”; and RFP #10 that seeks “documents containing or referring to passwords for accessing Philips’ systems or information” does **<u>not</u>** set forth particularized facts that purportedly render the request “is burdensome, oppressive, vexatious and harassing”. **Exhibit B** and **E**. Despite this instance, Alpha did not demonstrate any reason, other than the presence of the word “all”, to justify its objections.[3] Contrary, to Alpha’s assertions, these RFPs are limited in scope and time. In fact, the Instructions

[3] Courts have held that just indicating the presence of the word “all” does not automatically or by itself make the request overly broad, burdensome, or oppressive. *Arthrex, Inc. v. Parcus Medical*, LLC, 2012 WL 5382050 *4 (M.D.Fl. November 1, 2012).

in Philips's *First Set of Interrogatories* state that "[u]nless otherwise specifically indicated, the period of time encompassed by each Interrogatory and Request for production of documents shall be from March 2011 to present date.".

Remarkably, Alpha objects to Interrogatories #4, #5, #7, #8, and #9 even though they are based on affirmative defenses raised by Alpha in its answer to the *Amended Complaint*. It is well-settled that a plaintiff is entitled to discover factual information upon which defendant's affirmative defenses are based. *See* 6 Annotated Patent Digest (stating that plaintiffs may explore claims for affirmative defenses "through the architecture of pretrial discovery."); *see also Vázquez-Fernández,* 269 F.R.D. 150 n. 5 (quoting *Cason v. Builders Firstsource-Southeast Group, Inc*., 159 F.Supp.2d 242, 247 (W.D.N.C.2001) (emphasizing "the Plaintiff's right to conduct meaningful discovery…[of facts] "ha[ving] a direct bearing on the Plaintiff's claims or Defendant's affirmative defenses…")); *Great Northern Storehouse, Inc. v. Peerless Ins. Co*., 2000 WL 1901266, at *3 (D.Me. Dec. 29. 2000) (same).

***B. Alpha's objections based on the purported confidential and commercially sensitive nature of the information requested in certain discovery request renders the information undiscoverable.***

The bulk of Alpha's objections were based on trade secrets grounds, including interrogatory #14 and requests for productions ##2-22, and ##24-28. *See* **Exhibit B.** However, Alpha's objections on the grounds that this particular interrogatory seeks the production of valuable and confidential information of a commercially sensitive nature, including trade secrets is adverted to in a cursory manner and without any supporting authority. Unlike Alpha's contentions, it is well-settled that "[m]ere subjective belief that something is a trade secret, is not dispositive[.]" *TLS Mgmt. & Mktg. Serv., Inc. v. Rodríguez-Toledo*, 2018 WL 4677451, at *12 (D.P.R. Sept. 28, 2018) (quoting Trade Secrets § 4.04 (Law Journal Press 2018) citing *Fail-Safe, LLC v. A.O. Smith Corp*., 674 F.3d 889, 894 (7th Cir. 2012)). For information to be considered a

"trade secret" under the Puerto Rico Commercial and Industrial Trade Secret Protection Act (the "Trade Secret Act"), P.R. Laws Ann. tit. 10, §§ 4131-4141, the party seeking protection must establish that: (1) it is information that; (2) has financial value or provides a business advantage; (3) because they are not common knowledge or readily accessible; and (4) the party employs reasonable security measures to maintain secrecy. *See* P.R. Laws Ann. tit. 10, §§4132 (a)-(b); *see also Ponce Adv. Med. v. Santiago González*, 197 D.P.R. 891, 904-05 (2017). Simply put, to be afforded this protection, "it is axiomatic that the trade secret must be secret." *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 475 (1974).

Furthermore,"…even a bona fide trade secret is not protected against discovery by fair means[.]" *Fisher Stoves, Inc. v. All Nighter Stove Works, Inc*., 626 F.2d 193, 196 (1st Cir. 1980) (citing *Kevanee Oil Co*., 416 U.S. at 476). In fact, in *Ponce Adv. Med., supra*, the PR Supreme Court held that information ostensibly considered trade secrets is nevertheless discoverable so long as the party seeking its disclosure can establish that there is a "substantial need" for the information sought. A "substantial need" exists if the following four (4) criteria are met: (1) the allegations are set forth to establish either the existence or absence of liability have been specifically asserted; (2) the information sought is directly relevant and/or material to the allegations specifically asserted; (3) the information sought is of such importance that without it, the party seeking it would suffer a substantial prejudice; and (4) there exists a good faith belief that the testimony or evidence that may be obtained from the information sought will be admissible at trial. 197 D.P.R. at 904-05 (translation ours).

Notably, the purpose of Fed. R. Civ. P. 26 is "to promote[] fairness both in the discovery process and trial[]," *Thibeault v. Square D. Co.*, 960 F.2d 239, 244 (1st Cir. 1992), and it expressly recognizes the discoverable nature of trade secrets. *See* Fed. R. Civ. P. 26(c)(1)(G). However, to

prevent the inappropriate dissemination of confidential and protected information, such as trade secrets, the courts encourage parties to enter into **confidentiality agreements.** *See, e.g., BPP Retail Properties. LLC v N. Am. Roofing Serv., Inc.*, 300 F.R.D. 59, 63 (D.P.R. 2014) ("In the meantime, the parties are free -and encouraged- to consider entering into a confidentiality agreement which would allow this discovery [on trade secrets] to take place."). Further, Rule 26(c)(1)(G) also provides the moving party challenging the disclosure of trade secrets the alternative of disclosing the same in a limited way pursuant to a protective order upon a showing of good cause. *See* Fed. R. Civ. P. 26(c)(1)(G); *see, e.g., Irizarry-Santiago v. Essilor Indus*., 293 F.R.D. 100, 103-104 (D.P.R. 2013) ("In order to justify a protective order limiting a party's right to disseminate discovery documents, a party must make a showing of good cause, which 'must be based on a particular factual demonstration of harm, not on conclusory statements.'"). Simply put, there exists appropriate measures to ensure that the integrity of Alpha's purported trade secrets will be protected, without unreasonably curtailing Philips' express right to access such information.

Here, Alpha has claimed a trade secret in a significant number of items. See for example, **Exhibit B** - RFP ##4-7, 15-19, and 26-28[4]. However, defendant has proffered meritless reasons for withholding this information. More importantly, Alpha's failure to produce the documents is totally at odds with this Honorable Court's *Order* on the Motion to Quash. **Dkt. 61**. As observed by the Court, the documents requested in these RFPs, which were sough through third parties given

[4] These RFPs consist mostly of invoices, receipts, service logs or other documentation related to the defendant's repair, maintenance and/or service in the various facilities referenced in the *Amended Complaint* and other facilities serviced by Alpha (**Exhibit B** - RFP ##4-7); disbursements, cleared checks or other proofs of payment of Alpha in hospitals and facilities serviced by defendant (RFPs ##15, 16 and 17); financial documentation such as our sales volume, revenues, and gross and net profits in connection with your service of Philips' MRI systems (RFP ##18 and 19); marketing, promotion and/or sales materials (RFP #26); communications with medical facilities in relation to the servicing of Philips' systems (RFPs ##27 and 28); among other information (RFP #8).

Philips lack of corporation, are the type "which [] could [be] obtain[ed] directly from Alpha", since they consists of "contracts with Alpha, documentation related to repairs by Alpha proof of payment to Alpha, communications with Alpha, documents related to indebtedness to Alpha". Dkt. 61 at 3. In fact, pursuant to the *Order,* Philips was instructed to obtain those documents from Alpha. As the record here shows, Philips had long requested these documents before issuing the subpoenas, but Alpha has obstructed every attempt to discover the materials.

Furthermore, it must be emphasized that since May 22, 2020 Philips has reiterated its willingness to enter into a confidentiality agreement and protective order with Alpha and has exhausted all good faith efforts to reach an amicable solution, to no avail. As reiterated to Alpha multiple times, it is Philips' position that the entry of a Protective Order would address parties' concerns over the discovery of trade secrets and other confidential information, while enabling the parties to conduct discovery necessary for the litigation.[5] However, despite this assurances and multiple conversations and e-mails with Alpha, defendant has been simply unwilling to reach an agreement.[6]

**WHEREFORE**, Philips respectfully requests this Honorable Court to issue an order compelling Alpha to fully respond to Philips' *First Set of Interrogatories*, with any other and further relief it deems appropriate.

**RESPECTFULLY SUBMITTED**.

---

[5] To that end, on this same date Philips has moved this Honorable Court to issue a protective and confidentiality order. Before filing the instant motion, parties had agreed on almost all matters of the protective order, except for two discrete provisions. The motion ungently requests this Court's intervention considering that discovery is completely blocked as a result of Alpha's intransigence.

[6] Ironically, in its *Motion to Quash* Alpha accused Philips of not seriously engaging in negotiations for the protective order, but as the record shows, it has been Alpha who was been resistant or unwilling to reach an agreement. In fact, it seems that since Philips rejected Alpha's repeated request to stay discovery (**Exhibit C**), defendant has employed a self-serving strategy of stalling and delaying the progress of litigation. This effort by Alpha included objecting to third party subpoenas, which this Court granted, and at the same time refusing to produce itself the very same information and documents being sought from third parties. Perhaps now the Court understands why plaintiffs initially opted to try to obtain this critical evidence (of wrongdoing) from other sources.

In San Juan, Puerto Rico, this September 4th, 2020.

**WE HEREBY CERTIFY** that on this same date, we electronically filed the foregoing motion with the Clerk of the Court using the CM/ECF system, which will provide notice to all counsel of record.

**ADSUAR MUÑIZ GOYCO**
**SEDA & PÉREZ-OCHOA, PSC**
P.O. Box 70294
San Juan, Puerto Rico 00936-8294
Tel: 787.756.9000
Fax: 787.756.9010

/s/Eric Pérez-Ochoa
Eric Pérez-Ochoa
USDC-PR No. 206314
epo@amgprlaw.com

*/s/Lourdes Arroyo Portela*
LOURDES ARROYO PORTELA
USDC-PR No. 226501
larroyo@amgprlaw.com

*s/Alexandra Casellas Cabrera*
ALEXANDRA CASELLAS CABRERA
USDC-PR No. 301010
acasellas@amgprlaw.com

*Counsel for Plaintiffs*