Exhibit A

**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

PHILIPS MEDICAL SYSTEMS PUERTO RICO, INC., PHILIPS MEDICAL SYSTEMS NEDERLAND B.V.; AND PHILIPS INDIA LIMITED,

Plaintiff,

v.

ALPHA BIOMEDICAL AND DIAGNOSTIC CORP., COOPERATIVA DE SEGUROS MÚLTIPLES DE PUERTO RICO,

Defendant.

CIVIL No. 3:19-cv-01488

RE: PERMANENT INJUNCTIVE RELIEF PURSUANT TO THE COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. §1030, COPYRIGHT ACT, 17 U.S.C. § 1201, PUERTO RICO'S INDUSTRIAL AND TRADE SECRET PROTECTION ACT, 10 P.R. LAWS ANN. §§4131-4141; UNFAIR COMPETITION; DIGITAL MILLENNIUM COPYRIGHT ACT, 17 U.S.C. § 1201; COPYRIGHT INFRINGEMENT, 17 U.S.C. § 101, *et seq.* AND DEMAND FOR JURY TRIAL.

**FIRST SET OF INTERROGATORIES AND**
**REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, plaintiff Philips Medical Systems Puerto Rico, Inc. ("Philips PR"), Philips Medical Systems Nederland B.V. ("Philips Nederland") and Philips India Limited ("Philips India") (collectively, "Philips" or "plaintiffs") by and through its undersigned counsel, hereby requests defendant Alpha Biomedical and Diagnostic Corp. ("Alpha Biomedical") to answer each of the following interrogatories, separately and fully, in writing and under oath, within 30 days of service per the federal rules, or by May 1st 2020, as agreed by the parties. *See* **Docket No. 34**. In responding to these interrogatories, Alpha Biomedical is requested to furnish all information available to it, its attorneys, its investigators or anyone else acting on its behalf.

In addition, pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Alpha Biomedical is also required to produce for inspection and photocopying the documents requested

below. Alpha Biomedical is further required to respond individually and in writing to each request for production of documents and to identify and produce documents which are responsive to each request. These responses and documents shall be produced within 30 days of service per the federal rules, or by any later date agreed in writing by both parties, at the law offices of Adsuar Muñiz Goyco Seda & Pérez-Ochoa, P.S.C., 208 Ponce de León Avenue, Suite 1600, Hato Rey, Puerto Rico 00918.

## I. GENERAL INSTRUCTIONS

The law requires that your answers to these interrogatories disclose all information that is known or available to you, including not only your own present and personal knowledge, but also information in the possession of your agents, employees, officers, attorneys, accountants, auditors, engineers, experts or other representatives, or any other person acting on your behalf. If any of these interrogatories cannot be answered fully, please answer to the extent possible and provide whatever information, knowledge or belief you do have concerning the unanswered portion. If you object to an interrogatory or a portion of an interrogatory, answer that portion of the interrogatory to which you do not object, and specify the precise ground or basis for your objection and the precise portion of the interrogatory to which an objection is made.

Each interrogatory is a continuing one. If after serving an answer to an interrogatory, you obtain or become aware of any further knowledge pertaining to the subject matter of such interrogatory, amended answers setting forth such information must be provided.

If you claim any form of privilege or immunity, whether based on statute or otherwise, as a ground for not responding in whole or in part to any interrogatory, you shall set forth in complete detail each and every fact or ground upon which the privilege is based, including sufficient facts for the Court to make a full determination whether the claim or privilege is valid. If you claim any

form or privilege as the ground for not producing a document or answering an interrogatory, please state the following for each such response: (a) the name of each author of the communication concerned; (b) the name of each person to whom the communication was addressed; (c) the name of each person to whom the document indicates was to be copied; (d) the date of the communication; (e) a brief description of the nature and subject matter of the communication or the portion withheld; (f) name of each person to whom the communication was shown or with whom it was discussed; and (g) the nature of the claim of privilege or immunity.

## II. DEFINITIONS

1. Each interrogatory and request for production of documents seeks information available to Alpha Biomedical, its affiliated entities, attorneys or agents, and all persons acting on its behalf. Accordingly, the terms "defendant", "you", and "your" refers without limitation to Alpha Biomedical, its affiliated entities, its attorneys and agents, and all persons acting on its behalf.

2. The term "Complaint" refers to the "Amended Complaint" filed by plaintiff, Philips, at **Docket No. 9** of the captioned case.

3. The term "Affirmative Defenses" refers to those contained in the document entitled "Answer to Amended Complaint and Compulsory Counterclaims" filed by Alpha Biomedical at **Docket No. 33**.

4. "Philips" or "Plaintiffs" shall mean and refer to plaintiffs Philips Medical Systems Puerto Rico, Inc., Philips Medical Systems Nederland B.V., and Philips India Limited, to be construed in such a way as to give the broadest reading to each Interrogatory and Request for Production of Documents, and include any and all of Philips' subsidiaries, divisions, predecessors

or successors-in-interest, affiliates, parent companies, officers, directors, employees, agents, contractors, and other persons or entities controlled by or acting on behalf of Philips.

5. "Alpha Biomedical" shall refer to defendant Alpha Biomedical and Diagnostic Corp.

6. "MRI" refers to Magnetic Resonance Imaging systems.

7. "Philips CSIP" refers to Philips proprietary software embedded in the MRI systems' host computers.

8. The terms "employee" or "contractor" are used in the broadest possible sense, and mean, without limitation, any employee or contractor, whether currently or formerly in that capacity.

9. The term "any" includes "all" and vice versa.

10. The term "communications" is used in the broadest possible sense, and means any transmission or exchange of information from one person or entity to another, by any means including but not limited to electronic mail or chat communications.

11. The terms "regarding," "relate to," and "related to" as used with respect to any category of documents, refer to, mean, and include all documents that (a) constitute or are encompassed within that category; (b) memorialize, concern, mention, summarize, or refer to matters within that category; or (c) may provide evidence concerning the subject matter of that category.

12. The term "access" means to instruct, communicate with, store data in, retrieve data from, or otherwise make use of any resources of a computer, computer system, computer network or medium in which electronic information can be stored or obtained.

13. The term "user" means any person who uses a computer, mobile or electronic device.

14. The term "person," when used herein, means any natural person, partnership, association, corporation, governmental unit/entity, organization, or other entity (including nonprofit organization), as well as present and former officers, directors, managers, agents, employees, attorneys, and others acting, or purporting to act, on behalf of such natural person, partnership, association, corporation, governmental unit/entity, organization, or other entity.

15. The term "document", "record" or "records", when used herein, means the original or, if no original is available, all copies of any written, printed, typed, electronic, or other graphic matter of any kind or nature, as well as any other tangible thing in the possession, custody, or control of Defendant or known by Defendant to exist, including, but not limited to, the following:

(i) All contracts, agreements, letter agreements, representations, warranties and opinions;

(ii) All letters or other forms of Correspondence or Communication (as "Correspondence" and "Communication" are defined below), including e-mails, in addition to all notes, memoranda, or other tangible things relating to any telephone conversations, conferences, or other verbal communications;

(iii) All memoranda, test results, test data, financial statements, notes, scripts, transcripts, tabulations, studies, analyses, evaluations, projections, work papers, corporate records, expressions or statements of policy, lists, charts, graphs, summaries, extracts, statistical statements, compilations, and opinions of any Person;

(iv) All minutes, notes, transcripts, or any other tangible thing relating to any meetings or conferences, in addition to any lists or other tangible thing that may provide the names of any Person who attended such meetings or conferences;

(v) All desk calendars, appointment books, and diaries;

(viii) All tape recordings (regardless of the medium), microfilms, photographs, tapes, punch cards, magnetic tapes, discs, data cells, drums, printouts, and

other mediums from which electronically stored information can be directly stored/obtained;

(ix) All drafts of any Document and revisions of drafts of any Document, in addition to any original or preliminary notes which are in any way related to such Document;

(x) All tangible things derived from any work done by any Person which are in any way related to this action;

(xi) All computer files and/or e-mail.

16. The term "computer" is used in the broadest sense possible and includes including without limitation desktops, laptops, tablets, servers, mobile devices, Systems, or virtual machines (in each case whether stored and/or accessed locally or remotely).

17. The term "application" refers to the collection of one or more related software programs that enable an end-user to enter, store, view, modify, or extract information from files or databases. The term is commonly used in place of "program" or "software." Applications may include word processors, Internet browsing tools, spreadsheets, email clients, personal information managers (contact information and calendars), and other databases.

18. The term "software" refers to any set of coded instructions (programs) stored on computer-readable media that tells a computer what to do. Includes operating systems and software applications.

19. The term "hardware" not only refers to a computer, but also the physical parts – external or internal – of a computer and related devices. Internal hardware devices include motherboards, hard drives, and RAM. External hardware devices include monitors, keyboards, mice, printers, and scanners.

20. The term "login credentials" or "User Id" refers to any type of identity data or credentials – e.g. User ID and password – utilized or required to obtain access to a computer system or other restricted area.

21. The term "IST" refers to Integrated Security Tool.

22. The term "program" means a set of instructions or steps, usually in symbolic form, that generates machine instructions and tells the computer how to handle a problem.

23. The terms "and" and "or" mean either the conjunctive or the disjunctive as context may require so that the meaning is inclusive rather than exclusive.

## A. INSTRUCTIONS

1. Unless otherwise specifically indicated, the period of time encompassed by each Interrogatory and Request for production of documents shall be from March 2011 to present date.

2. Unless otherwise specifically indicated, the term "document" shall be understood to encompass/include electronically stored information.

3. The words "identify", "identity" or "identification", when used with respect to a person or persons, require a statement of the full name and present or last known residence and business address of such person or persons and, if a natural person, his or her present or last known job title, and the name and address of his or her present or last known employer.

4. The words "identify", "identity" or "identification", when used with respect to a document or documents, requires a description of the document or documents by date, subject matter, name of the addressee, and the name and address of each person or persons having possession, custody or control of such document or document. If any such document was, but is no longer in your possession, custody or control, or in existence, state the date and manner of its disposition.

5. In responding to these Interrogatories and Requests for Production of Documents, the responding party shall furnish all information available to said party or within said party's possession, custody, or control, or in the possession, custody, or control of any Person acting, or purporting to act, on said party's behalf.

6. Each Interrogatory and Request for Production of Documents shall be responded to separately and as completely as possible. The fact that investigation is continuing, but is not complete, is not an excuse for failure to respond to each Interrogatory as fully as possible. If unable to respond to an Interrogatory or Request completely after there has been an attempt to obtain the requested information, the responding party is to respond to that particular Interrogatory or Request to the extent possible. The party responding to these Interrogatories and Requests is to further provide what information said party has concerning the unresponsive portion of the particular Interrogatory or Request.

7. If any form of privilege or other protection from disclosure is claimed as a ground for withholding responsive information, as requested in a particular Interrogatory or Request, the responding party is to set forth, with respect to that information, the date, title, identity of the author, subject matter (without revealing the information for which the privilege is claimed), and any and all facts and reasons supporting such grounds. The claim should contain such specificity as to permit a court to make a full determination of its validity.

8. If any Interrogatory or Request of Production of Document, or any part of thereof, is objected to, state with particularity the basis for the objection and proceed to respond to the remaining Interrogatories and their sub-parts. The fact that an objection is made is no excuse for failing to respond to the remaining Interrogatories or Requests or any of their sub-parts. The fact that an objection is made to a sub-part of any Interrogatory or Request is no excuse for failing to

respond to the remaining sub-parts of that Interrogatory or Request, or any other Interrogatory or Request. Accordingly, respond to each and every Interrogatory or Request, and sub-part thereof, unless specifically objected to in the space provided.

9. These Interrogatories and Requests for Production of Documents are deemed to be continuing in nature.

10. No response is to be left blank.

**INTERROGATORIES**

1. Identify all natural persons supplying answers to these interrogatories, as well as those assisting and/or consulted for these purposes. For each such person state the following: (a) full name; (b) date and place of birth; (c) present home and business address, and telephone number; (d) occupation; and (e) relationship with Alpha Biomedical.

2. Identify the names and addresses of any parent, subsidiary or affiliated companies to Alpha Biomedical.

3. Please state each and every fact upon which you intend to rely to establish the defense or claim that the defendant had the authority, or such authority was not exceeded within the meaning of the Computer Fraud and Abuse Act (CFAA), 18 U.S.C. §1030, to access Philips' MRI systems, which were the subject of an intrusion/hacking/damage, as alleged by Philips in the Complaint.

4. Please state each and every fact upon which you intend to rely to establish the defense or claim that the plaintiff did not suffer a loss, during a one-year period, aggregating at least $5,000 as a result of defendant's alleged intrusion/hacking/damage to the Philips CSIP, as alleged by Philips in the Complaint.

5. Please state each and every fact upon which you intend to rely to establish the defense or claim that any losses suffered by the plaintiff related to intrusion/hacking/damage to the Philips CSIP was not caused by the conduct of the defendant, as alleged in Affirmative Defense No. 16.

6. Please state each and every fact upon which you intend to rely to establish that Philips' claims are precluded, in whole or in part, by FDA regulations, as alleged in Affirmative Defense No. 5.

7. Please state each and every fact upon which you intend to rely to establish the defense or claim that the court lacks jurisdiction, as alleged in Affirmative Defense No. 6.

8. Please state each and every fact upon which you intend to rely to establish that it is exempted from liability under 17 U.S.C. § 1201, as alleged in Affirmative Defense No. 11.

9. Please state each and every fact upon which you intend to rely to establish the defense or claim that Philips failed to commence the instant action within the applicable statute of limitations, as alleged in Affirmative Defense No. 19.

10. Describe, step by step, the method, manner, process and precise means by which Alpha Biomedical gains access to the computer system embedded in the Philips' MRIs within the relevant period, and explain in detail when and how you acquired each method, including identifying each person involved in the acquisition, development, or refinement of such method and any individuals who approved such method.

11. List all IST certificates you acquired to access Philips' systems, whether acquired from Philips or not, and for each IST certificate identify who the IST certificate was acquired from and how it was acquired.

12. Identify any amounts paid for the IST certificates used by Alpha Biomedical and describe the transaction through which the IST certificate was acquired (including the date of the transaction).

13. Identify every person involved in the acquisition of the IST certificates acquired by Alpha Biomedical, and identify everyone you provided the IST certificate to.

14. List the names and addresses of all medical and/or health care providers to which Alpha Biomedical has provided services repair and maintenance services to Philips' systems within the last five (5) years.

15. List the names of all Alpha Biomedical employees or persons with whom defendant has or had a contractual relationship for the repair and maintenance of Philips' systems.

16. State whether Alpha Biomedical, by and through any of its present and/or former officers, directors, managers, agents, employees or persons acting, or purporting to act, on its behalf, have ever utilized any type of credentials – e.g. username, password – pertaining or belonging to any current or former Philips' employees, including Radames Bracero, during his employment with Philips, while servicing Philips' systems.

17. State whether Alpha Biomedical, by and through any of its present and/or former officers, directors, managers, agents, employees or persons acting, or purporting to act, on its behalf, have ever utilized the IST/PMSSec account 12345, while servicing Philips' systems.

18. Identify all persons with whom Alpha Biomedical and any of its present and/or former officers, directors, managers, agents, employees or persons acting, or purporting to act, on its behalf, have shared any software, hardware, login credentials, IST certificates, and/or application(s) for the repair and maintenance of Philips' systems.

19. List all IST certificates you acquired to access Philips' systems, whether acquired from Philips or not, and for each IST certificate identify who the IST certificate was acquired from and how it was acquired.

20. Identify each person you expect to call at trial as witness. For each such person: (a) state his/her present home and business address, and telephone number; (b) describe in detail the subject matter as to which the person is expected to testify; and (c) identify any and all sworn statements or unsworn declarations given by the witness concerning any facts or issues material to this litigation.

21. Identify each person affiliated or employed by you, other than the above stated, who may have any information concerning the facts object of this case and/or the allegations contained in the Complaint. For each such person: (a) state the present home and business address, and telephone number; (b) describe in detail the subject matter or information as to which the person is acquainted with; and (c) identify any and all sworn statements or unsworn declarations concerning any facts or issues material to this litigation.

**REQUESTS FOR PRODUCTION OF DOCUMENTS**

1. Please produce copies of any and all documents and/or tangible things identified in Alpha Biomedical's answers to the Philips' first set of interrogatories to defendant.

2. Produce all agreements and/or contracts entered into by and between Condado X Rays, Hospital Dr. Susoni, and Pavia Breast & Imaging for the repair and maintenance of Philips' MRIs for the relevant period.

3. Produce all agreements and/or contracts entered into by and between Alpha Biomedical and any other medical and/or health care providers for the repair and maintenance of Philips' MRI medical equipment for the relevant time period.

4. Produce all Alpha Biomedical invoices, receipts or other documentation related to the repair, maintenance and/or service of Philips' MRI's located at Condado X Ray, for the relevant period.

5. Produce all Alpha Biomedical invoices, receipts, service logs or other documentation related to the repair, maintenance and/or service of Philips' MRIs located at Hospital Dr. Susoni for the period of December 2017 to the present.

6. Produce all Alpha Biomedical invoices, receipts, service logs or other documentation related to the repair, maintenance and/or service of Philips' MRIs located at Pavia Breast & Imaging, for the period of December 2017 to the present.

7. Produce all Alpha Biomedical invoices, receipts, service logs or other documentation related to the defendant's repair, maintenance and/or service of Philips' MRIs located at the affiliated facilities in Metro Pavia Health, Inc., for the period of December 2017 to the present.

8. Produce documents sufficient to identify the following information for each time you serviced a Philips' MRI system:

a. Customer name (and primary contractor name if you were subcontracted);

b. Customer address;

c. Make, model, and unique identifiers of all machine(s) serviced;

d. Location(s) of all machine(s) serviced;

e. Employee(s), contractor(s), and/or others who performed service(s);

f. Date(s) of service(s) performed;

g. Service(s) performed; and

h. Amounts billed for service(s) performed.

9. Produce all documents identifying, describing, or referring to methods of accessing Philips' systems or information, including methods of disabling or circumventing access controls.

10. Produce all documents containing or referring to passwords for accessing Philips' systems or information.

11. Produce a copy of all IST certificates you acquired to access Philips' systems, whether acquired from Philips or not.

12. Produce all documents containing or referring to IST certificates for accessing Philips' systems or information, whether the IST certificate was provided by Philips or not.

13. Produce all documents sufficient to identify how every IST certificate acquired by you was obtained, including who each IST certificate was acquired from, how it was acquired, the transaction to acquire the IST certificate, and every person involved in the acquisition of the IST certificate.

14. Please produce a native copy of every IST certificate acquired by defendant for accessing Philips' systems.

15. Produce copy of all disbursements, cleared checks or other proofs of payment to the order of Alpha Biomedical resulting from the repair, maintenance and/or service of Philips' MRI systems located at Condado X Ray, for the period of March 2011 to the present.

16. Produce copy of all disbursements, cleared checks or other proofs of payment to the order of Alpha Biomedical resulting from the repair, maintenance and/or service of Philips' MRI systems located at Hospital Dr. Susoni for the period of December 2017 to the present.

17. Produce copy of all disbursements, cleared checks or other proofs of payment to the order of Alpha Biomedical resulting from the repair, maintenance and/or service of Philips' MRI systems located at Pavia Breast & Imaging for the period of December 2017 to the present.

18. Produce documents sufficient to show your sales volume, revenues, and gross and net profits in connection with your service of Philips' MRI systems on a monthly and annual basis, itemized by customer.

19. Produce documents summarizing your financial performance for the periods from March 2011 to the present. These should include annual financial statements, federal tax returns, detailed "profit and loss" ("P&L") statements, and other documents relied upon by management to monitor and report the financial performance of the organization.

20. Produce all documents regarding your acquisition or use of proprietary service materials for Philips'systems..

21. Produce all documents that refer to or include any licenses granted to you by Philips or by any entity affiliated with Philips.

22. Produce documents sufficient to identify any software created by you for the purpose of being used in connection with the servicing of any Philips' system.

23. Produce documents sufficient to identify efforts being conducted by Alpha Biomedical to achieve interoperability of an independently created of computer programs under 17 U.S.C. §1201(f), as alleged in Affirmative Defense No. 3 and 1.

24. Produce any and all scripts, commands, or files you have copied to, installed on, or otherwise utilized to access or use Philips' systems, or have provided to third parties to access or use Philips' systems, and all documents regarding such scripts, commands, or files.

25. Produce all documents referring to or describing any tools, methods, techniques, or devices that may be used to generate access credentials or certificates for accessing any Philips' systems.

26. Produce all documents regarding marketing, promotion and/or sales materials concerning the nature of services offered by you for Philips' systems.

27. Produce copy of all communications, as they are kept in the usual course of business, by and between Condado X Ray representatives and Alpha Biomedical concerning, pertaining or relating in any way to the repair, maintenance and/or service of the Philips' MRI systems.

28. Produce copy of all communications, as they are kept in the usual course of business, by and between representatives of Metro Pavia Health Inc. and Alpha Biomedical concerning, pertaining or relating in any way to the repair, maintenance and/or service of the Philips' MRI systems.

29. Produce any document that includes a Philips issued IST activation code.

30. Produce any internal policies, correspondence, or management reports addressing the use of or the prohibition against using information or intellectual property of third parties by you or your employees.

31. Produce a copy of any document that includes the text "12345".

32. Produce a copy of any documents that includes the text "CSIP".

33. Produce a copy of any documents that includes the text "35914".

34. Produce a copy of all log files copied from Philips' MRI systems you serviced.

35. Produce copies of any and all documents and/or tangible that may or will be used as an exhibit at trial or any evidentiary hearing in the above-captioned action.

36. Please produce copies of any and all written or recorded statements from any person who may or will be called any potential witness in this action regarding the allegations set forth by the plaintiff in the Complaint.

**REQUEST FOR PHYSICAL INSPECTION**

1. Pursuant to Federal Rule of Civil Procedure 34, Philips requests that Alpha Biomedical permit plaintiff, plaintiff's attorneys and consultants, to enter onto its premises and inspect each USB drive or hardware key utilized by you to gain access to, copy files to, or otherwise modify files on, or provide services to a Philips' MRI system, including but not limited to a forensic copy of each USB drive or hardware key used to service any Philips' MRI systems.

2. Pursuant to Federal Rule of Civil Procedure 34, Philips PR requests that Alpha Biomedical permit plaintiff, plaintiff's attorneys and consultants, to inspect any laptop or other computer utilized by you to gain access to, copy files to or otherwise modify files on, or provide services to a Philips' MRI system.

3. Pursuant to Federal Rule of Civil Procedure 34, Philips PR requests that Alpha Biomedical permit plaintiff, plaintiff's attorneys and consultants, to enter onto its premises and inspect the hardware, or other physical devices that you have used or have provided to third parties for attachment to or interface with Philips' MRI systems in connection with or related to your or third-party access to or service of Philips' MRI systems, and all documents regarding such hardware or other physical devices.

4. Pursuant to Federal Rule of Civil Procedure 34, Philips requests that Alpha Biomedical permit plaintiff, plaintiff's attorneys and consultants, to enter onto its premises and inspect any computer equipment or computer system utilized or employed for the repair and maintenance of Philip' MRI systems, and claimed to have been "wiped clean" or re-formatted so that the information on the hard drive, memory or storage medium is stated to have been permanently destroyed.

In San Juan, Puerto Rico, this 30th day of March, 2020.

WE HEREBY CERTIFY, that the original of the foregoing request has been furnished via email to Carlos R. Rivera Ortiz, Esq. at riverac@reichardescalera.com and Crystal Acevedo Jiménez, Esq., at cacevedo@reichardescalera.com.

**ADSUAR MUÑIZ GOYCO**
**SEDA & PÉREZ-OCHOA, P.S.C.**
P.O. Box 70294
San Juan, Puerto Rico 00936-8294
Tel: 787.756.9000
Fax: 787.756.9010
Email: epo@amgprlaw.com
larroyo@amgprlaw.com
acasellas@amgprlaw.com

*/s/Eric Pérez-Ochoa*
ERIC PÉREZ-OCHOA
USDC-PR No. 206314

*/s/Lourdes Arroyo Portela*
LOURDES ARROYO PORTELA
USDC-PR No. 226501

*s/Alexandra Casellas Cabrera*
ALEXANDRA CASELLAS CABRERA
USDC-PR No. 301010

*Counsel for Plaintiffs Philips*