## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**PHILIPS MEDICAL SYSTEMS PUERTO
RICO, INC.**, *et al.*,
      Plaintiffs-Counterclaim Defendants,

    v.

**ALPHA BIOMEDICAL AND
DIAGNOSTIC CORP.** *et al.,*
      Defendants-Counterclaimants.

Civil No. 19-1488 (BJM)

### OPINION & ORDER

Philips Medical Systems Puerto Rico, Inc., Philips Medical Systems Nederland B.V., and Philips India Limited (collectively "Philips" or "counterclaim defendants") sought relief against Alpha Biomedical ("Alpha") based on allegations that Alpha had used Philips' intellectual property without authorization while servicing Philips brand MRI systems. Docket No. ("Dkt") 9 ("Am. Compl."). Alpha asserted counterclaims for tortious interference with contract, defamation, and unlawful restraint of trade and monopolization. Dkt. 33 at 26-46 ("Countercl."). Alpha also requested injunctive relief and sought declaratory judgment that it had neither infringed Philips' copyrights nor misappropriated its trade secrets. *Id.* Before the court is counterclaim defendants' motion to dismiss the counterclaim in its entirety under Fed R. Civ. P. 12(b)(6). Dkt. 39. Alpha opposed, Dkt. 41, counterclaim defendants replied, Dkt. 45, and Alpha submitted a surreply, Dkt. 50. This matter is before me by consent of the parties. Dkts. 35, 36. For the reasons that follow, counterclaim defendants' motion to dismiss is **GRANTED IN PART**.

### MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

When faced with a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court "accept[s] as true all well-pleaded facts alleged in the complaint and draws all reasonable inferences therefrom in the pleader's favor" to determine whether the complaint states a claim for which relief can be granted. *Santiago v. Puerto Rico*, 655 F.3d 61, 72 (1st

Cir. 2011). The court "may augment these facts and inferences with data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." *Starr Surplus Lines Ins. Co. v. Mountaire Farms Inc*., 920 F.3d 111, 114 (1st Cir. 2019) (quoting *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011)) (internal quotations omitted). In undertaking this review, the court must

> first, 'isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements[,]' then 'take the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief.'

*Zell v. Ricci*, 957 F.3d 1, 7 (1st Cir. 2020) (alterations in original) (quoting *Zenón v. Guzmán*, 924 F.3d 611, 615–16 (1st Cir. 2019)). "Plausible, of course, means something more than merely possible, and gauging a pleaded situation's plausibility is a 'context-specific' job," which requires drawing on "'judicial experience and common sense.'" *Schatz v. Republican State Leadership Comm*., 669 F.3d 50, 55 (1st Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

## BACKGROUND

Unless otherwise specified, the following facts are drawn from Alpha's counterclaim complaint. As with any 12(b)(6) motion, facts from the counterclaim complaint are taken as true and all reasonable inferences drawn in counterclaimant's favor.

Alpha is a Puerto Rico corporation that sells, distributes, and services sophisticated medical equipment, having engaged in that business for approximately 26 years. Countercl. ¶¶ 4, 12. From 2002 to 2011, Alpha served as the exclusive distributor in Puerto Rico of Philips brand medical products and parts. *Id.* ¶ 11. Before serving as the exclusive distributor of Philips' products, Alpha served in the same capacity for a company that was later acquired by Philips. *Id.* As Philips' distributor, Alpha developed the market for Philips brand products in Puerto Rico, placing Philips in an advantageous competitive position. *Id.* ¶¶ 13-14.

In March 2011, Philips abruptly ended its relationship with Alpha. *Id.* ¶ 15. Since then, Philips and Alpha have been competitors, and Philips has attempted to undermine Alpha's Puerto Rico operations. *Id.* ¶ 63. Alpha continues to provide services to clients who use Philips brand equipment, including by servicing Philips brand MRIs in medical facilities. *Id.* ¶¶ 48-53, 62.

Philips had a service contract with Metro Pavía Inc. ("Metro Pavía"), which expired on December 31, 2018. *Id.* ¶ 27. Metro Pavía was not satisfied with Philips' work, so it opened a service bidding process in which Philips, Alpha, and another provider participated. *Id.* ¶¶ 28-29. Alpha presented the lowest bid, and Metro Pavía awarded the contract to Alpha. *Id.* ¶ 31.

Starting around December 2019, Philips began contacting Alpha's clients to perform what Philips described as "mandatory security updates" to Philips brand medical equipment. *Id.* ¶ 32. The result of these "updates" is that "Level 0" access is eliminated. *Id.* ¶ 34. According to Philips, "Level 0" access is a means by which its medical devices can be serviced. Am. Compl. ¶ 29. Servicers with Level 0 access can perform "basic configuration, installation, and a few basic diagnostics." *Id.* According to Alpha, because Philips is eliminating Level 0 access, third-party service providers, such as Alpha, cannot run diagnostics or calibrate their clients' equipment without an access key purchased through Philips. Countercl. ¶ 35.

Philips has performed these "updates" whether or not the client has a servicing agreement with Philips. *Id.* ¶ 33. At least one client, Dr. José A. Rivera Rivera ("Dr. Rivera") of Medical X-Ray Center, has questioned the need for the update. *Id.* ¶ 36. He asked a Philips representative whether the update was necessary to comply with the applicable technical standards. *Id.* The representative informed Dr. Rivera that the update only addressed a security issue. *Id.* ¶ 38. When Dr. Rivera stated that the update was

Philips Medical Systems PR, Inc., et al. v. Alpha Biomedical & Diagnostic Corp., et al., Civil No. 19-1488 (BJM)     4

unnecessary in his case, the Philips representative threatened to inform medical insurance companies that Dr. Rivera's equipment was obsolete. *Id.*

Philips' elimination of Level 0 access is endangering Alpha's existence and creating potentially life-threatening situations. *Id.* ¶ 48. In early February 2020, an MRI at San Francisco Hospital (a Metro Pavía facility) lost its internal pressure. *Id.* ¶¶ 49-50. When this happens, an MRI's magnetic field can collapse, which would significantly disrupt the hospital's ability to treat patients. *Id.* ¶ 50. Alpha was charged with remedying the situation. If Alpha had Level 0 access, it could have solved the problem in less than an hour. *Id.* ¶ 51. But because Philips had eliminated Alpha's Level 0 access, Alpha had to find a workaround, solving the problem after 24 hours. *Id.* ¶ 53.

Alpha and Philips are now embroiled in litigation because Philips has accused Alpha of accessing its intellectual property without authorization. After filing suit, Philips sent letters to Alpha's clients along with copies of their amended complaint. *Id.* ¶ 44. These letters ask Alpha's clients to preserve relevant evidence and accuse Alpha of engaging in dishonest acts. *Id.* ¶ 44, 72. The reason Philips is sending these "litigation hold letters" and eliminating Level 0 access is that it aims to intimidate Alpha's clients into abandoning their contractual relationships with Alpha and instead executing contracts with Philips. *Id.* ¶¶ 39, 45. Because of Philips' conduct, one of Alpha's clients has decided to renew its contract with Alpha on a month-to-month basis, rather than the usual yearly renewal. *Id.* ¶ 47.

## DISCUSSION

Alpha alleges that Philips' conduct constitutes tortious interference with contract, defamation, and unlawful restraint of trade and monopolization. Alpha also seeks declaratory judgment that it did not infringe Philips' copyrights or misappropriate its trade secrets, and it requests injunctive relief. Philips seeks dismissal of each of Alpha's counterclaims. I will address each claim in turn.

   *(a)*  ***Tortious Interference***

   "The Supreme Court of Puerto Rico has recognized that under article 1802 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. § 5141, a cause of action exists for tortious interference with the contractual obligations of third parties." *Future Dev. of Puerto Rico v. Estado Libre Asociado De Puerto Rico*, 276 F. Supp. 2d 228, 241 (D.P.R. 2003). There are four elements to a tortious interference claim. First, "there must be a contract with which a third person interferes." *General Office Prods. v. A.M. Capen's Sons*, 15 P.R. Offic. Trans. 727, 734, 115 P.R. Dec. 553, 558-59, 1984 WL 270915 (1984). "[A]n expectation or a profitable financial relationship where there is no contract" is not sufficient. *Id.* Second, there must be fault, although "the prejudiced party need only show or present facts allowing the court to infer that the third person has acted tortiously, with knowledge of the contract's existence." *Id.* The defendant must "intentionally interfere, knowing that such interference will injure the plaintiff." *Future Dev. of Puerto Rico*, 276 F. Supp. 2d at 241 (citing *Jusino Figueroa v. Walgreens of San Patricio Inc.*, 2001 TSPR 150, 2001 WL 1414693 (2001)). Third, the plaintiff must have suffered damage, and fourth, that damage "must be a consequence of the tortious acts of the third person." *General Office Prods.*, P.R. Offic. Trans. at 734.

   Here, Alpha has alleged that it holds service agreements with various local entities to perform certain services on medical equipment, such as MRIs. *See* Countercl. ¶¶ 12, 29-30, 49-53, 61. Among these is an agreement with Metro Pavía, Inc. ("Metro Pavía"). *Id.* ¶¶ 27-31. Alpha became Metro Pavía's service provider after a competitive bidding process, *id.*, and, as part of its work for Metro Pavía, Alpha has serviced at least one MRI. *See id.* ¶¶ 48-55. Although Alpha certainly could have done more to describe its contracts with specificity, drawing all reasonable inferences in favor of the pleader, Alpha has alleged more than "mere expectancies that factor in [its] prospect of economic gain." *Future Dev. of Puerto Rico*, 276 F. Supp. 2d at 242. It has sufficiently alleged the existence of a contract.

Philips maintains that Alpha's allegations are nonetheless insufficient because they fail to specify that the relevant contracts have a fixed time period. It is true that, for a tortious interference claim to stand, the contract at-issue must not be terminable at will. *See Burckhart Search Grp., Inc. v. Doral Fin. Corp.*, No. CV. 11–1565 (JAF), 2011 WL 6029817, at *8 (D.P.R. Nov. 30, 2011) (quoting *A.M. Capen's Co., v. Am. Trading and Prod. Corp.*, 200 F. Supp. 2d 34, 48 (D.P.R. 2002)) (dismissing tortious interference claim when plaintiff failed to "offer any clues as to when the contract began, when it was in effect, or the agreed-upon termination date—or lack thereof. Thus, no liability could lie, as the underlying contract, as alleged, 'has no fixed period of time.'"). It is also true that Alpha has not provided specific start and end dates for each of its contracts. However, it has alleged that, as a result of Philips' conduct, one of Alpha's clients has decided "to renew its contract with Alpha on a month-by-month basis rather than the usual yearly renewal." Countercl. ¶ 47. Again drawing all reasonable inferences in the pleader's favor, I find that this statement sufficiently alleges that the contracts with which Philips has purportedly interfered generally have a fixed time period.

Alpha has also alleged that Philips interfered with its contracts, knowing that such interference would injure Alpha, and in fact damaged Alpha. According to the counterclaim complaint, Alpha served as the exclusive distributor in Puerto Rico of Philips' medical products for nine years until Philips abruptly ended their business relationship. Countercl. ¶¶ 11, 15. Alpha and Philips are now competitors, as both seek to service Philips brand medical equipment in Puerto Rico. *See id.* ¶¶ 27-31. Philips held a service agreement with Metro Pavía, which expired on December 31, 2018. *Id.* ¶ 27. Philips, Alpha, and another provider participated in a competitive bidding process to win a service agreement with Metro Pavía, and Metro Pavía awarded the bid to Alpha. *Id.* ¶¶ 27-30. From these facts, I can reasonably infer that Philips knows Alpha holds contracts to service Philips brand medical equipment in Puerto Rico.

Alpha also alleges that, since Philips discontinued its business relationship with Alpha, Philips has been attempting to undermine Alpha's operations in Puerto Rico by limiting Alpha's ability to perform services on its clients' medical equipment. Countercl. ¶¶ 15-16, 32-35. According to Alpha, Philips has been taking Alpha's clients' medical equipment to perform so-called "mandatory security updates," which are in reality a means by which Philips is eliminating Alpha's ability to access, diagnose, and calibrate the equipment without a Philips access key. *Id.* ¶¶ 32-35. In one instance, a hospital was left without an MRI for 24 hours because Philips had eliminated Alpha's ability to access and service the equipment. *Id.* ¶¶ 48-55. Alpha further alleges that Philips has attempted to interfere with its contracts by remotely accessing Alpha's client's equipment and sending "litigation hold" letters intended to intimidate Alpha's clients into abandoning their relationships with Alpha. *Id.* ¶¶ 40-47, 64. All this conduct, according to Alpha, is a result of Philips' desire to monopolize the market. *Id.* ¶ 66. These facts permit an inference that Philips "intentionally interfere[d] [with Alpha's contracts], knowing that such interference will injure [Alpha]." *Future Dev. of Puerto Rico*, 276 F. Supp. 2d at 241 (citing *Jusino Figueroa v. Walgreens of San Patricio Inc.*, 2001 TSPR 150, 2001 WL 1414693 (2001)).

Finally, Alpha alleges that Philips' conduct has "interfered with Alpha's ability to provide services to its customers according to terms established in its servicing agreements," Countercl. ¶ 66, and that, because of Philips' interference, at least one client has elected to renew its contract with Alpha on a month-to-month basis rather than renew for a year. *Id.* ¶ 47. At this stage, Alpha has sufficiently alleged that it suffered damages as "a consequence of the tortious acts of [Philips]." *General Office Prods.*, P.R. Offic. Trans. at 734.

In short, Alpha has stated a claim for tortious interference with contract, and counterclaim defendants' motion to dismiss this claim is denied.

### (b)     *Defamation*

Claims for defamation under Puerto Rico law arise from three sources: (1) Section 8 of Article II of the Constitution of the Commonwealth of Puerto Rico; (2) the Libel and Slander Act of 1902, P.R. Laws Ann. tit. 32, §§ 3141–49; and (3) Puerto Rico's General Tort Statute, Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 5141. *See Aponte v. Calderón*, 284 F.3d 184, 197 (1st Cir. 2002). "A defamation claim based on all three sources of Puerto Rico law requires that the plaintiff prove: (1) that the information is false, (2) that plaintiff suffered real damages, and (3) in the case of a private figure plaintiff, that the publication was negligent." *Garcia-Garcia v. Costco Wholesale Corp.*, 878 F.3d 411, 427 (1st Cir. 2017) (citations and internal quotation marks omitted).[1] Claims for defamation under Puerto Rico law follow the common law tradition. *Aponte*, 284 F.3d at 197 (citing *Villaneuva v. Hernández Class*, 28 P.R. Offic. Trans. 618, 128 P.R. Dec. 618, 646, 1991 WL 735303 (1991)).

In support of its defamation claim, Alpha alleges as follows:

> Philips is attempting to intimidate Alpha's clients into abandoning their relationships with Alpha. Moreover, Philips' [sic] sent letters with copies of the Amended Complaint to Alpha's clients including but not limited to Montehiedra MRI & CT Center, the Metro Pavía Hospitals network, Diagnostics Nuclear Medicine, Manatí Medical Center, among others, embarking in a libelous campaign accusing Alpha of dishonest acts that Plaintiffs' know are false.

Countercl. ¶ 72. In other words, the statements Alpha challenges are contained within the "litigation hold letter" and/or the amended complaint, and they accuse Alpha of dishonest acts. Beyond these broad parameters, Alpha offers precious few details regarding which statements it believes are false and defamatory. It has provided no information regarding the statements Philips made in the litigation hold letters aside from suggesting that they asked the clients to preserve relevant evidence and accused Alpha of engaging in dishonest

---

[1] Because neither party suggests that Alpha is a public figure, I do not consider the law of defamation applicable to such figures.

acts. *Id.* ¶¶ 44, 72. Additionally, the amended complaint contains more than 174 numbered paragraphs. I can infer that the statements Alpha challenges must be among those it denied in its answer. But Alpha has denied the vast majority of allegations in the amended complaint, including entirely mundane statements. For instance, Alpha denies that "Plaintiff Philips India is a foreign corporation with a principal place of business in Bangalore, India." Am. Compl. ¶ 7. Surely, this statement cannot be the source of Alpha's defamation claim. Although I might venture a guess as to which paragraphs within the amended complaint Alpha deems defamatory, a complaint may not leave a defendant guessing as to the accusation against him. Rather, it must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Alpha's broad assertion that Philips, somewhere in its amended complaint, falsely accused it of dishonest acts fails to provide Philips with fair notice of the grounds upon which its defamation claim rests. *U.S. ex rel. Vasudeva v. Dutta-Gupta*, No. CA 11-114 ML, 2014 WL 6811506, at *9 (D.R.I. Dec. 2, 2014) (citing *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) ("Without any actual factual recitations of actual defamatory statements, the Relators are not put on notice of statements that might constitute defamation."). Because Alpha provides too few facts regarding which statements it deems defamatory, it has failed to nudge its defamation claim "across the line from conceivable to plausible."[2] *Iqbal*, 129 S.Ct at 1951. Alpha's defamation claim is dismissed.

**(c)    *Sherman Act***

The Sherman Act, 15 U.S.C. §§ 1–7, is primary among federal antitrust laws. Section One prohibits concerted activity that produces restraints of trade, 15 U.S.C. § 1, and Section Two prohibits unilateral and concerted conduct resulting in actual or attempted

---

[2] I do not reach Philips' argument that the challenged statements must be immune because they were made during a judicial proceeding, or Alpha's retort, that immunity does not protect those who distribute a complaint to a third party. Should Alpha amend its counterclaim complaint and again present a defamation claim, Philips may renew this argument.

monopoly, 15 U.S.C. § 2. Puerto Rico is treated as a state for purposes of the Sherman Act. *Arroyo-Melecio v. Puerto Rican Am. Ins. Co.*, 398 F.3d 56, 66 (1st Cir. 2005).

Alpha contends that it has stated a claim under Section 2 of the Sherman Act, which makes it unlawful to "monopolize, or attempt to monopolize, or combine or conspire with any other person ... to monopolize any part of the trade or commerce among the several States." 15 U.S.C. § 2. Monopolization occurs when a person or entity (1) has monopoly power, and (2) "has engaged in impermissible 'exclusionary' practices with the design or effect of protecting or enhancing its monopoly position." *Coastal Fuels of P.R., Inc. v. Caribbean Petrol. Corp.*, 79 F.3d 182, 195 (1st Cir. 1996) (quoting Herbert Hovenkamp, *Federal Antitrust Policy: The Law of Competition and its Practice* § 6.4a (1994)). Attempted monopolization claims require a plaintiff to show "(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power." *Spectrum Sports v. McQuillan*, 506 U.S. 447, 456 (1993).

"To determine whether a party has or could acquire monopoly power in a market, 'courts have found it necessary to consider the relevant market and the defendant's ability to lessen or destroy competition in that market.'" *Coastal Fuels*, 79 F.3d at 196 (quoting *Spectrum Sports*, 506 U.S. at 456; *see also Gilbuilt Homes, Inc. v. Contl. Homes of New Eng., a Div. of Wylain, Inc.*, 667 F.2d 209, 211 (1st Cir. 1981) (quoting *Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.*, 382 U.S. 172, 177 (1965)) ("'To establish monopolization or attempt to monopolize a part of trade or commerce under [Section Two] of the Sherman Act, it would ... be necessary to appraise the exclusionary power of the (defendant's conduct) in terms of the relevant market for the product involved. Without a definition of that market there is no way to measure (defendant's) ability to lessen or destroy competition.'"). Plaintiff carries the burden to define the relevant geographic and product market. *Coastal Fuels*, 79 F.3d at 196-97. "'Market definition is crucial.'" *Id.*

at 197 (quoting *Rebel Oil Co., Inc. v. A. Richfield Co.*, 51 F.3d 1421, 1434 (9th Cir. 1995)).
"Without a definition of the relevant market, it is impossible to determine market share."
*Id.*

Here, Alpha's counterclaim complaint fails to plead sufficient facts with regard to
the relevant market. Alpha alleged that it served as the exclusive distributor in Puerto Rico
of Philips' brand parts and medical products for nine years, and before that, it was the
exclusive distributor of certain medical products and parts for a company that Philips
acquired. Countercl. ⁋ 11. Alpha also alleged that it "developed the market for products of
the Philips brand," and "developed Philips' market, putting it [in] an advantageous
competitive position." *Id.* ⁋⁋ 13-14. Although these allegations *refer* to a "market," they
offer little information *about* that market.

"In general, the relevant geographic market consists of 'the geographic area in
which the defendant faces competition and to which consumers can practically turn for
alternative sources of the product.'" *Coastal Fuels*, 79 F.3d at 196 (quoting *Baxley–
DeLamar v. American Cemetery Assn*., 938 F.2d 846, 850 (8th Cir. 1991)). Alpha has
adequately defined the geographic market as limited to Puerto Rico. But it offers far too
few facts regarding the product market to make plausible a claim of monopolization or
attempted monopolization. Although the servicing of MRI equipment is clearly
contemplated as one aspect of the relevant market, Alpha also refers to other medical
products and parts. Countercl. ⁋ 11. It offers no clues, however, as to what those parts and
products might be, what sort of servicing they require, and how many companies offer that
servicing. Indeed, Alpha does not explain whether Philips is the sole provider of those
products in Puerto Rico or whether Philips is but one of a hundred providers who offer
such products and/or related servicing.

Because Alpha fails to mark with any specificity the limits of the relevant market,
its assertion that Philips wields a dangerous probability of achieving monopoly power is

implausible. *See Spectrum Sports*, 506 U.S. at 459 ("[D]emonstrating the dangerous probability of monopolization in an attempt case ... requires inquiry into the relevant product and geographic market and the defendant's economic power in that market."); *Ticket Ctr., Inc. v. Banco Pop. de Puerto Rico*, 613 F. Supp. 2d 162, 178 (D.P.R. 2008) (citing *Coastal Fuels*, 79 F.3d at 196) ("Determining market power is only possible once the relevant market has been defined."). Alpha alleges that Philips eliminated Level 0 access to its Philips-brand MRI equipment, limiting Alpha's ability to service that equipment. But because Alpha has provided no information regarding the market in MRI equipment and servicing, let alone the other products to which Alpha alludes, I cannot conclude that this conduct creates any danger of monopoly power. If there are 1,000 MRIs in Puerto Rico in need of ongoing servicing and 10 of them are Philips brand MRIs, Philips' alleged conduct could hardly "'lessen or destroy competition in [the] market.'" *Coastal Fuels*, 79 F.3d at 196 (quoting *Spectrum Sports*, 506 U.S. at 456). On the other hand, if the great majority of MRIs on the island are Philips brand equipment, Alpha might have stated a plausible claim. But details such as these are absent from the counterclaim complaint. Similarly, Alpha alleges that Philips is sending letters to its clients in an attempt to intimidate those clients into abandoning their relationships with Alpha. Although such conduct may appear unfair, I cannot say that it threatens establishing monopoly power without any details about the market. Do Alpha's clients constitute the majority of potential buyers of the sort of servicing Alpha provides? Or are they but a few players in a much larger market? Can those clients turn to a plethora of other competitors that also service whatever the relevant medical equipment might be, or are Philips and Alpha essentially their only options? "It is necessary for the pleadings, as a threshold matter, to sketch such relevant details." *Gilbuilt Homes*, 667 F.2d at 211. "Specific information, even if not in the form of admissible evidence, would likely be enough at this stage; pure speculation is not." *Peñalbert–Rosa v. Fortuño–Burset*, 631 F.3d 592, 596 (1st Cir. 2011).

"Once [Alpha] knew the thrust of [Philips'] arguments for dismissal, it was perfectly free to respond to the motion to dismiss by providing the district court with additional facts to make its complaint concrete and plausible." *DM Research, Inc. v. College of Am. Pathologists*, 170 F.3d 53, 56 (1st Cir. 1999). It might have "responded with an amendment to the complaint or even with an affidavit setting forth [relevant] detail[s]." *Id.* But it has not done so. Left without a definition of the market, I cannot conclude that Alpha has stated a claim under Section 2 of the Sherman Act. Accordingly, Alpha's Sherman Act claim is dismissed.

### (d)      *Puerto Rico Antitrust Claims*

Alpha also alleges violations of sections 258[3] and 260[4] of the Antitrust Act of Puerto Rico, P.R. Laws Ann. tit. 10, §§ 257-276. "Section 260, prohibiting monopolies and attempted monopolization, tracks the language of section 2 of the Sherman Act and should be analyzed under the same criteria." *Ticket Ctr.*, 613 F. Supp. 2d at 180 (citing *Coastal Fuels*, 79 F.3d at 195). Alpha's Section 260 claim is thus dismissed for the reasons set forth in the previous section.

"Section 258 of Puerto Rico's antitrust law, prohibiting contracts or conspiracies in unreasonable restraint of trade, 'mirrors the language of Section 1 of the Sherman Act' and therefore courts have 'treated the two provisions as coextensive.'" *Id.* (quoting *Podiatrist Ass'n v. La Cruz Azul De P.R., Inc*., 332 F.3d 6, 16 (1st Cir. 2003)). Section 1 of the Sherman Act prohibits "[e]very contract, combination in the form of trust or otherwise, or

---

[3] "Every contract, combination in the form of trust or otherwise, or conspiracy in unreasonable restraint of trade or commerce in the Commonwealth of Puerto Rico or in any section thereof, is hereby declared to be illegal and every person who shall make any contract or engage in any combination or conspiracy hereby declared to be illegal shall be guilty of a misdemeanor." P.R. Laws Ann. tit. 10, § 258.

[4] "Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce in the Commonwealth of Puerto Rico, or in any section thereof, shall be guilty of a misdemeanor." P.R. Laws Ann. tit. 10, § 260.

conspiracy, in restraint of trade or commerce among the several States, or with foreign nations." 15 U.S.C. § 1. To state a claim under Section 1 of the Sherman Act, a plaintiff must plead facts plausibly alleging that defendant acted as part of a conspiracy, agreement, or arrangement. *Gilbuilt Homes*, 667 F.2d at 210. "[T]he crucial question is whether the challenged anticompetitive conduct stem[s] from [an] independent decision or from an agreement, tacit or express." *Evergreen Partnering Group, Inc. v. Pactiv Corp.*, 720 F.3d 33, 43 (1st Cir. 2013) (quoting *Twombly*, 550 U.S. at 553) (internal quotation marks omitted). The plaintiff may show agreement by showing that "'the conspirators had a unity of purpose or a common design and understanding, or a meeting of minds in an unlawful arrangement.'" *Id.* (quoting *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 771 (1984)).

In arguing that it has properly pleaded agreement, Alpha seems to rely on the fact that, at various points in its counterclaim complaint, it refers to "plaintiffs" in the plural. Dkt. 41 at 15. But simply stating that Philips Medical Systems Puerto Rico, Inc., Philips Medical Systems Nederland B.V., and Philips India Limited all took certain actions falls far short of alleging that there was some meeting of the minds among those entities that resulted in a restraint of trade. Alpha's reliance on *Abarca Health* is inapposite. *See Abarca Health, LLC v. PharmPix Corp.*, 915 F. Supp. 2d 210, 217 (D.P.R. 2012). In that case, counterclaim plaintiffs alleged that counterclaim defendants *agreed* to sue them on false grounds and spread word of that suit. *Id.* In other words, agreement and/or concerted action had been pled. Here, Alpha has entirely omitted reference to any agreement, instead suggesting that the presence of multiple counterclaim defendants and Alpha's references to those defendants in the plural satisfies its pleading obligations. It does not. If alleging a conspiracy simply required referring to parties in the plural, every action with multiple defendants would involve a conspiracy. Alpha has not stated a plausible claim under Section 258 of Puerto Rico's Antitrust Act, and this claim is dismissed.

      *(e)*      *Copyright Infringement and Misappropriation of Trade Secrets*

Next, Philips moves to dismiss Alpha's claim seeking a declaration that Alpha did not infringe Philips' copyrights or misappropriate its trade secrets, arguing that these counterclaims are redundant.

In its complaint, Philips alleges that, with the help of two former Philips employees now in Alpha's employ, Alpha used Philips' trade secrets and copyrighted property to provide unauthorized services on Philips brand medical equipment. *See* Am. Compl. ¶¶ 42-56. Philips thus brought claims for copyright infringement and misappropriation of trade secrets. In its counterclaim compliant, Alpha seeks declaratory judgment that it did not infringe Alpha's copyrights and that no trade secret misappropriation occurred. Countercl. ¶¶ 96, 104. Alpha denies that any infringement or misappropriation occurred, maintaining that its employees have never accessed or copied Philips' copyrighted property. *Id.* ¶ 101.

"Courts often dismiss 'mirror image' counterclaims where they merely restate issues already before the court as part of a plaintiff's affirmative case." *Atlantic Recording Corp. v. Serrano*, Civ. No. 07-CV-1824, 2007 WL 4612921, at *4 (S.D. Cal. Dec. 28, 2007); *see, e.g., Fed. Deposit Ins. Corp. v. Project Dev. Corp.*, 819 F.2d 289 (6th Cir. 1987) (unpublished) ("[W]hen a counterclaim merely restates the issue as a 'mirror image' to the complaint, the counterclaim serves no purpose.").

Here, Alpha's counterclaims for non-infringement and non-misappropriation merely duplicate issues already before the court. *See Sliding Door Co. v. KLS Doors, LLC*, 2013 WL 2090298, at *4 (C.D. Cal. May 1, 2013) (dismissing counterclaim as duplicative where it "present[ed] an issue that is already before the Court in Plaintiff's Complaint"). Although Alpha maintains that its claims seeking declaratory relief present new issues, I disagree. The allegations supporting Alpha's defense to Philips' infringement and misappropriation claims are identical to the allegations supporting Alpha's counterclaims for non-infringement—in both cases Alpha claims that its employees accessed only

authorized portions of the software, that its employees are unable to access Philips' protected intellectual property, and that they never did so. Although Alpha maintains that its claims seeking declaratory relief must be preserved if it is to require Philips to restore its "Level 0" access, a declaratory judgment would provide no such relief. Alpha can properly seek the injunctive relief it seeks via its claim for tortious interference with contract.

Even without Alpha's declaratory relief claims, the court will decide the copyright infringement and misappropriation of trade secrets issues unless the parties settle or Philips withdraws its complaint. Because at this time Alpha's declaratory judgment claims are redundant and unnecessary, counts four and five of Alpha's counterclaim complaint are dismissed without prejudice.

### (f)     *Injunctive Relief*

Finally, Philips moves to dismiss Alpha's claims for preliminary and permanent injunctive relief, arguing that Alpha has failed to identify any basis for its right to relief. Alpha seeks an injunction that would require Philips to restore its "Level 0" access so that it can continue servicing its clients' equipment. Countercl. ¶ 90. Although this request might be tied to Alpha's tortious interference with contract claim, Alpha has failed to identify the cause of action on which it believes it is likely to succeed on the merits.

Preliminary and permanent injunctions are remedies; neither constitutes "a standalone cause of action." *Doe v. Brown Univ*., 166 F. Supp. 3d 177, 197 (D.R.I. 2016) (citations and internal quotation marks omitted); *see also Linton v. N.Y Life. Ins. & Annuity Corp*., 392 F.Supp.2d 39, 41 (D. Mass. 2005) ("[A]llegations [that] actually describe the remedies sought by plaintiff ... do not constitute actionable claims.") (internal quotation marks omitted)). Accordingly, Alpha's third counterclaim is dismissed.

Philips Medical Systems PR, Inc., et al. v. Alpha Biomedical & Diagnostic Corp., et al., Civil No. 19-1488 (BJM)     17

However, this dismissal is without prejudice to the request for injunctive relief properly laid out in Alpha's prayer for relief. Should Alpha wish to pursue a preliminary injunction prior to final judgment, it may file a separate motion.

### (g)    Amendment

In the event that it failed to state a claim, Alpha sought leave to amend its defamation and antitrust claims. *See* Dkt. 50 at 9, 14 n.3. Leave to amend should be "freely give[n]" in instances in which "justice so requires." Fed.R.Civ.P. 15(a)(2). Here, Alpha's allegations are just short of stating antitrust and defamation claims, and parties have engaged in relevant discovery for several months. Under these circumstances, I find that justice favors permitting amendment. I also find no evidence of "undue delay, bad faith, futility, [or] the absence of due diligence" on Alpha's part that would favor denying leave to amend. *Nikitine v. Wilmington Tr. Co.*, 715 F.3d 388, 390 (1st Cir. 2013) (quoting *Palmer v. Champion Mortg.*, 465 F.3d 24, 30 (1st Cir. 2006)). Accordingly, Alpha may amend its counterclaim complaint.

## CONCLUSION

For the foregoing reasons, Alpha's claim for tortious interference with contract survives Philips' motion to dismiss, but all other claims are dismissed. Alpha's claims for declaratory judgment are dismissed without prejudice. Alpha may still pursue injunctive relief as a remedy, but the remedy sought must be tied to a cause of action. Alpha's amended counterclaim complaint must be submitted by December 30, 2020. Counterclaim defendants' motion is **GRANTED IN PART**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 30th day of November 2020.

*S/ Bruce J. McGiverin*
BRUCE J. McGIVERIN
United States Magistrate Judge