IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**PHILIPS MEDICAL SYSTEMS PUERTO RICO, INC.**, *et al.*,
    Plaintiffs-Counterclaim Defendants,

v.

**ALPHA BIOMEDICAL AND DIAGNOSTIC CORP.** *et al.,*
    Defendants-Counterclaimants.

Civil No. 19-1488 (BJM)

## ORDER

Before the court are two motions. The first is a motion for protective order filed by plaintiffs Philips Medical Systems Puerto Rico, Inc., Philips Medical Systems Nederland B.V., and Philips India Limited (collectively "Philips"). Docket No. ("Dkt.") 65; *see also* Dkt. 77. Defendant Alpha Biomedical and Diagnostic Corp ("Alpha") agrees that a protective order is necessary but disputes one term of Philips' proposed order, namely, that which would permit Philips' in-house counsel to access certain materials. *See* Dkt. 68 at 2. Philips replied to Alpha's opposition, maintaining that its in-house counsel's access is both necessary to the litigation and reasonable under the circumstances. Dkts. 69-1, 76. Also before the court is Philips' motion to compel responses to various discovery requests. Dkt. 64. Alpha opposed, Dkt. 67, and Philips replied, Dkt. 71. This matter is before me by consent of the parties. Dkt. 34. For the reasons set forth below, Philips' motion for protective order is **GRANTED**, and its motion to compel is **GRANTED IN PART** and **DENIED IN PART**.

Both Philips and Alpha are engaged in business related to medical imaging systems used in hospitals and medical centers. On May 22, 2019, Philips filed an original complaint against Alpha, Dkt. 1, which was amended on August 2, Dkt. 9 ("Am. Compl."). Philips alleges that Alpha gained unauthorized access to its proprietary material, computer software called Philips Customer Service Intellectual Property ("Philips CSIP"). Am.

Philips Medical Systems PR, Inc., et al. v. Alpha Biomedical & Diagnostic Corp., et al., Civil No. 19-1488 (BJM)    2

Compl. ¶¶ 13-17, 42-55. Philips CSIP is embedded in Philips' imaging systems, including its MRI systems. *Id.* ¶¶ 10, 13-21, 104. Access to Philips CSIP is restricted. *Id.* ¶ 16. While entities such as Alpha have basic access, only Philips employees have full access. *Id.* ¶¶ 31-33. Philips accuses Alpha of having bypassed its security measures to access Philips CSIP by using the credentials of former Philips employees who now work for Alpha. *Id.* ¶¶ 42-55. Philips also alleges that Alpha gained unauthorized access by using a fake UserID and IST account, "UserID 12345."[1] *Id.* ¶ 74.

Litigation progressed, and parties are now embroiled in discovery disputes. On March 30, 2020, Philips served Alpha with 21 interrogatories and 36 requests for production of documents ("RFPs"). Dkt. 64-1. Alpha answered on May 1, objecting to Philips' requests based primarily on trade secret, undue burden, and/or relevance. Dkt. 64-2. On May 22, Philips sent Alpha a draft of a proposed confidentiality and protective order to facilitate discovery of confidential materials. Dkt. 64-3 at 4. Much back-and-forth ensued as parties worked to negotiate the terms of a protective order and resolve their discovery disputes. *See* Dkt. 64 at 3-5. On August 24, Philips informed Alpha that if a compromise could not be reached, it would move to compel and seek a protective order. Dkt 64-11 at 1-2. Although Alpha believed most of parties' differences had been resolved, Dkt. 67 at 4, several disagreements remained by September 4, when Philips filed the motions now before this court.

I will first address Philips' motion for protective order and then turn to its motion to compel.

Unless the scope of permissive discovery is limited by court order, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case...." Fed. R. Civ. P. 26(b)(1). Information

---

[1] As Philips explains, an IST certificate is the means by which someone using its systems can access proprietary materials: it is the key to Philips' lock. Dkt. 64 at 6.

"need not be admissible in evidence to be discoverable," and proportionality is determined by considering "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* Because the scope of discovery remains relatively broad, "it is necessary for the trial court to have the authority to issue protective orders conferred by Rule 26(c)." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984). Indeed, "[t]here is an opportunity . . . for litigants to obtain–incidentally or purposefully–information that not only is irrelevant but if publicly released could be damaging to reputation and privacy. The government clearly has a substantial interest in preventing this sort of abuse of its processes." *Id.* at 35 (citations omitted). Thus, the court has "'broad discretion' to decide 'when a protective order is appropriate and what degree of protection is required.'" *Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 532 (1st Cir. 1993) (quoting *Seattle Times Co.*, 467 U.S. at 36).

For good cause shown, the court may enter a protective order to prohibit or limit discovery, including by requiring that a trade secret or other confidential information be revealed in a specified way. Fed. R. Civ. P. 26(c)(1)(G). "Rule 26(c) is highly flexible, having been designed to accommodate all relevant interests as they arise." *Gill v. Gulfstream Park Racing Ass'n., Inc.*, 399 F.3d 391, 402 (1st Cir. 2005) (citation and internal quotation marks omitted). "[T]he 'good cause' standard … requires an individualized balancing of the many interests that may be present in a particular case." *Id.* (citation and internal quotation marks omitted). The party seeking the more restrictive protective order carries the burden to show good cause for its proposed restriction under Rule 26(c). *Voice Domain Techs., LLC v. Apple, Inc.*, Civ. No. 13-40138-TSH, 2014 WL 5106413, at *2 (D. Mass. Oct. 8, 2014); *see In re Roman Catholic Archbishop of Portland in Or.*, 661 F.3d 417, 424 (9th Cir. 2011), *cert. denied*, 132 S. Ct. 1867 (2012) ("The party opposing disclosure has the burden of proving 'good cause.'"). That party must demonstrate a

Philips Medical Systems PR, Inc., et al. v. Alpha Biomedical & Diagnostic Corp., et al., Civil No. 19-1488 (BJM)    4

particular need for protection: "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasons, do not satisfy the Rule 26(c) test." *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir.1986).

Here, parties agree on all terms of a proposed protective order, except Alpha proposes that Philips' in-house counsel, Attorney Douglas McKnight ("McKnight"), be denied access to materials designated "HIGHLY CONFIDENTIAL" or "ATTORNEYS' EYES ONLY." *See* Dkt. 65-1 at 2 (defining those terms). Alpha maintains that McKnight should not be permitted to view Alpha's confidential materials because McKnight advises Philips on product security and unauthorized access to Philips products. Dkt. 68 at 3. In Alpha's view, given McKnight's job duties, his review of confidential materials would create a grave risk of inadvertent disclosure of Alpha's trade secrets. *Id.*[2] Any disclosure, in turn, would cause Alpha competitive harm, as Philips could design its products to undermine Alpha's trade secrets. *Id.*

To determine whether McKnight should be permitted access to confidential material, the court must weigh the risk of "inadvertent or accidental disclosure" against the burden the protective order would place on Philips and its ability to prosecute its case should McKnight be denied access. *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984)). This determination must be made "on a counsel-by-counsel basis" and turns on whether "in-house counsel are involved in competitive decisionmaking." *Id.* "Competitive decisionmaking" includes "counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions . . . made in light of similar or corresponding information about a competitor." *Id.* at 1468 n. 3. Pricing and product design are hallmarks of competitive

---

[2] Alpha also intimates that there is a risk of disclosure of its trade secrets because it believes Philips misused a business competitor's trade secrets in prior litigation. Dkt. 68 at 2. But Alpha does not address Philips' retort, that the alleged abuse could not possibly have occurred, as no materials were produced in that case given that they were all destroyed in a fire. Dkt. 76 at 3. I do not credit as true Alpha's rather serious accusation, as Alpha has offered no support for its allegation.

Philips Medical Systems PR, Inc., et al. v. Alpha Biomedical & Diagnostic Corp., et al., Civil No. 19-1488 (BJM)    5

decisionmaking, but "they are only two activities that might implicate or involve competitive decisionmaking." *In re Deutsche Bank Trust Co. Americas*, 605 F.3d 1373, 1378–79 (Fed. Cir. 2010). "[S]tatus as in-house counsel cannot alone . . . serve as the sole basis for denial of access." *U.S. Steel Corp.*, 730 F.2d at 1469.

Here, McKnight's declaration provides unrebutted evidence that he is not engaged in competitive decisionmaking to a degree that would require barring his access to certain confidential information. *See* Dkt. 65-2 ("McKnight Decl."). Parties to this suit accuse one another of various improper business practices related to medical products and services in Puerto Rico. But McKnight is largely removed from Philips' operations in Puerto Rico. As McKnight explains, Philips is a global company divided into various divisions. *Id.* ¶ 9. Its operations in Puerto Rico are led by Philips Medical System North Latam and its legal team, located in Panama. *Id.* ¶ 10. McKnight, on the other hand, is employed by Philips North America LLC and resides in Chardon, Ohio, and he does not report to anyone in Philips Puerto Rico or Philips North Latam. *Id.* ¶¶ 1-2. In other words, McKnight is both geographically and organizationally separated from those engaged in competitive decisionmaking in Puerto Rico.

Further, Philips has taken steps to reduce the risk of any inadvertent disclosure by designating only one in-house counsel to review confidential materials. That counsel has certified that he will "not use Alpha's confidential information for any purpose other than this litigation," and his files are inaccessible to, and kept separate from, those who make such business decisions *Id.* ¶¶ 13, 15.

Additionally, rather than "advising his employer on a gamut of legal issues, including contracts, marketing, and employment," *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1471 (9th Cir. 1992), McKnight focuses on Philips' intellectual property. McKnight Decl. ¶ 4. He is not general counsel to Philips' Puerto Rico or Philips North Latam. *Id.* ¶ 11. Thus, McKnight would not be placed "in the untenable position of having to refuse his employer legal advice on a host of contract, employment, and competitive

Philips Medical Systems PR, Inc., et al. v. Alpha Biomedical & Diagnostic Corp., et al., Civil No. 19-1488 (BJM)    6

marketing decisions" if permitted to review confidential materials produced in the instant litigation. *Brown Bag Software*, 960 F.2d at 1471 (internal quotation marks omitted).

It is true that McKnight provides legal advice regarding product security and unauthorized access to Philips' products. McKnight Decl. ¶ 4. But Alpha does little to explain why such legal advice should be deemed a form of competitive decisionmaking. Arguably, McKnight's involvement in decisions to initiate lawsuits such as this one, *see id.* ¶ 6, could be characterized as competitive decisionmaking. *See PhishMe, Inc. v. Wombat Sec. Techs., Inc*., Civ. No. 16-403-LPS-CJB, 2017 WL 4138961, at *6 (D. Del. Sept. 18, 2017). But that fact alone is not dispositive. McKnight does not advise on pricing, marketing, design, or business decisions in Puerto Rico, McKnight Decl. ¶¶ 8-10, and neither he nor the other attorneys in his division interact with Philips Puerto Rico outside the instant litigation, Dkt. 76 at 9. Under these circumstances, I find that McKnight is not "a meaningful participant in a process that leads to the making of decisions affecting competition" in Puerto Rico, and any risk of inadvertent disclosure is relatively low. *PhishMe, Inc.*, 2017 WL 4138961, at *4 (D. Del. Sept. 18, 2017) (citing *Matsushita Elec. Indus. Co., Ltd. v. United States*, 929 F.2d 1577, 1580 (Fed. Cir. 1991)).

While the risk of inadvertent disclosure is low, Philips has shown that it would experience some burden were McKnight prohibited from viewing materials produced during discovery. The instant litigation involves complex questions related to proprietary software embedded within Philips systems and the alleged circumvention of security measures designed to protect that property. McKnight oversees Philips' trademarks, patents, copyrights, and other intellectual property, and he is responsible for the protection of Philips CSIP, which is the subject of this suit. McKnight Decl. ¶¶ 4, 6. He thus has specialized knowledge related to technical questions likely to arise during discovery. For instance, as Philips explains, McKnight can more readily recognize what constitutes one of Philips' trade secrets than can outside counsel. Dkt. 76 at 8. Further, McKnight began working on the instant case prior to its commencement, having participated in fact

Philips Medical Systems PR, Inc., et al. v. Alpha Biomedical & Diagnostic Corp., et al., Civil No. 19-1488 (BJM)    7

discovery and the decision to commence this lawsuit. McKnight Decl. ¶ 6. His longstanding familiarity with the case and technical knowledge related to Philips' trade secrets would likely facilitate discovery, potentially improving efficiency for all litigants. *See 3M Co. v. Reflexite Corp.*, Civ. No. 02-1251 ADM/AJB, 2003 WL 25867456, at *2 (D. Minn. Aug. 21, 2003) (permitting in-house counsel to access confidential materials produced during discovery where they had "participated in the litigation since its beginning" and where one in-house attorney managed the party's intellectual property litigation and held decisionmaking authority over the suit). In short, the harm that would flow from denying Philips the counsel of its choosing outweighs any risk of disclosure of Alpha's trade secrets, which is minimal. Accordingly, Philips' motion for protective order is granted.

I turn now to Philips' motion to compel. Philips served 21 interrogatories and 36 RFPs on Alpha. Alpha objected to the vast majority of these requests, contending that they were burdensome, disproportionate to the needs of the case, and sought irrelevant information. Philips moved to compel, seeking an order requiring Alpha to respond fully to its discovery requests. Philips argues that Alpha impermissibly relies on conclusory, boilerplate objections and that its relevance objections are misplaced. Alpha stands by its objections and contends that Philips' motion is premature.

"Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). Discovery permits parties to acquire this mutual knowledge, thus promoting fairness at trial. *Thibeault v. Square D Co.*, 960 F.2d 239, 244 (1st Cir. 1992). A party acting within the scope of Rule 26 may conduct discovery by, among other things, serving another party with interrogatories, Fed. R. Civ. P. 33 ("Rule 33"), or by making requests for the production of documents, Fed. R. Civ. P. 34 ("Rule 34"). If disputes arise, a party may move to compel discovery, after first attempting in good faith to resolve the problem without court action. *See* Fed. R. Civ. P. 37(a)(3)(B).

Philips Medical Systems PR, Inc., et al. v. Alpha Biomedical & Diagnostic Corp., et al., Civil No. 19-1488 (BJM)        8

Initially, a party seeking discovery must "make a showing, as meager as that may be, of relevance." *Ramos v. Vizcarrondo*, Civ. No. 14-1722 (GAG), 2016 WL 9460635, at *1 (D.P.R. Apr. 25, 2016); *see also Caouette v. Office Max, Inc*., 352 F. Supp. 2d 134, 136 (D.N.H. 2005)). This initial "burden is not onerous." *Aronstein v. Massachusetts Mut. Life Ins. Co*., Civ. No. 15-12864-MGM, 2017 WL 2818993, at *2 (D. Mass. June 29, 2017). Once this burden is met, the party resisting production bears the burden to show that discovery is improper. *Autoridad de Carreteras y Transportacion v. Transcore Atl., Inc.*, 319 F.R.D. 422, 427 (D.P.R. 2016); *see also Rodriguez-Ruiz v. Microsoft Operations Puerto Rico, L.L.C.*, Civ. No. 18-1806 (PG), 2020 WL 1675708, at *2 (D.P.R. Mar. 5, 2020). The objecting party must show "'specifically how each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive.'" *BPP Retail Properties, LLC v. N. Am. Roofing Services, Inc*., 300 F.R.D. 59, 61 (D.P.R. 2014) (quoting *Vazquez–Fernandez v. Cambridge Coll., Inc*., 269 F.R.D. 150, 155–56 (D.P.R.2010)); *see* Fed. R. Civ. P. 33(b)(4), 34(2)(B) (requiring that the grounds for an objection be stated "with specificity"). Boilerplate, generalized objections to an opponent's discovery requests are inadequate. *Autoridad de Carreteras y Transportacion*, 319 F.R.D. at 427; *Moreno Rivera v. DHL Glob. Forwarding*, 272 F.R.D. 50, 55 (D.P.R. 2011). If a party does not object to an interrogatory, she must answer that interrogatory "separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). "[A]n evasive or incomplete" answer constitutes a failure to answer. Fed. R. Civ. P. 37(a)(4).

As a threshold matter, I find that Philips' made a good faith effort to resolve this dispute before bringing it before the court in compliance with Local Rule 26. *See* Local Rules of the U.S. Dist. Court for the Dist. of P.R. Rule 26(b) ("A judge shall not consider any discovery motion that is not accompanied by a certification that the moving party has made a reasonable and good-faith effort to reach an agreement with opposing counsel on the matters set forth in the motion. An attempt to confer will not suffice."). As Philips explained, its efforts to resolve this dispute included months of back-and-forth negotiation

with Alpha. *See* Dkt. 64 at 2-5 (detailing correspondence and meetings between the parties). I am satisfied that Philips exhausted efforts to resolve this dispute without the assistance of the court.

Next, I address Alpha's objections as to relevance. Interrogatories numbered 11, 12, 13, 16, 17, and 18, as well as RFPs numbered 11, 12, 13, 14, 21, 24, 25, and 29, all seek information related to the manner in which Alpha and its representatives access Philips systems. Alpha objected to some of these requests on relevance grounds. Its responses to Interrogatory Nos. 11, 12, 13, 16, 17, 18, and 19 are illustrative:

> **Interrogatory No. 11:**
> List all IST certificates you acquired to access Philips' systems, whether acquired from Philips or not, and for each IST certificate identify who the IST certificate was acquired from and how it was acquired.
>
> **Answer:**
> No IST certificate is required to access Philips' MRI's systems.
>
> **Interrogatory No. 12:** Identify any amounts paid for the IST certificates used by Alpha Biomedical and describe the transaction through which the IST certificate was acquired (including the date of the transaction).
>
> **Answer:** See answer to interrogatory #11.
>
> **Interrogatory No. 13:** Identify every person involved in the acquisition of the IST certificates acquired by Alpha Biomedical, and identify everyone you provided the IST certificate to.
>
> **Answer:** See answer to interrogatory #11.
>
> **Interrogatory No. 16:** State whether Alpha Biomedical, by and through any of its present and/or former officers, directors, managers, agents, employees or persons acting, or purporting to act, on its behalf, have ever utilized any type of credentials – e.g. username, password – pertaining or belonging to any current or former Philips' employees, including Radames Bracero, during his employment with Philips, while servicing Philips' systems.
>
> **Answer:** No employee credentials are required to access Philips' MRI's systems. See answers to interrogatories #3 and #11.[3]

---

[3] Alpha's answer to Interrogatory No. 3 follows:

>    **Interrogatory No. 17:** State whether Alpha Biomedical, by and through any of its present and/or former officers, directors, managers, agents, employees or persons acting, or purporting to act, on its behalf, have ever utilized the IST/PMSSec account 12345, while servicing Philips' systems.
>
>    **Answer:** See answer to interrogatory #11.
>
>    **Interrogatory No. 18**: Identify all persons with whom Alpha Biomedical and any of its present and/or former officers, directors, managers, agents, employees or persons acting, or purporting to act, on its behalf, have shared any software, hardware, login credentials, IST certificates, and/or application(s) for the repair and maintenance of Philips' systems.
>
>    **Answer**: See answers to interrogatories #3 and #11.

Dkt. 64-2 at 11-13.

Essentially, Alpha declined to respond to requests related to IST certificates and other means of accessing Philips systems on the theory that Philips' MRI systems can be accessed without IST certificates. Parties treat this explanation as an objection based on relevance.

>    a.  General Objection #1, because it requires extensive research, compilation or evaluation of documents inuring to undue effort or expense upon the Defendant. See Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 358 (1978).
>
>    b.  Alpha further objects to this interrogatory's characterization of an alleged intrusion/hacking/damage of Philips' MRI systems.
>
>    c.  General Objection #9, because it requires Alpha to provide information or documents that are already in Plaintiffs' possession, custody, or control. Alpha gains access to Philips' MRI systems using the information provided by Philips through their installation manuals (e.g. Level 0 access Intera & Achieva System Manual Installation), which is required to be delivered to any entity having Philips equipment installed in its facilities. Given that Philips asserts a copyright over the manual -which Alpha rejects- and warns its users not to copy it in whole or in part, disclose it to others, or disseminate it without the prior written permission of the Philips Legal Department, we are a unable to provide a copy of the manual at this time. Any additional information identified through the discovery process will be promptly notified.
>
>    d.  Without waiving any objections or rights, see Dkt. 12, pp. 9-10.; Dkt. 19, pp. 7-8. Any additional information identified through the discovery process will be promptly notified.

Dkt. 64-2 at 8-9.

Philips Medical Systems PR, Inc., et al. v. Alpha Biomedical & Diagnostic Corp., et al., Civil No. 19-1488 (BJM)        11

Any relevance objection to these requests is misplaced. Philips' claims rise and fall on the manner by which Alpha accesses Philips' systems and software. According to Philips, third-party service providers may access its systems for repair and maintenance via Level 0 access, but a higher level of authorization is required before anyone can access Philips' proprietary materials. Philips alleges that Alpha employees bypassed its security measures to gain access to its proprietary material by using the credentials of former Philips employees and/or an unauthorized IST certificate, IST 12345. All information related to the means by which Alpha accesses Philips systems is thus relevant to Philips' claims. This includes both the IST certificates Alpha possesses and the origins of their acquisition. Lawful acquisition of those certificates would tend to make the facts essential to Philips claims less likely, whereas unauthorized acquisition of those certificates would tend to support Philips' assertions. With one exception, interrogatories numbered 11-13 and 16-19 as well as RFPs numbered 11-14, 21, 24, 25, and 29 all seek information related to Alpha's access to Philips' systems and proprietary information.[4] The answers to these requests are thus relevant to Philips' claims.

Alpha also contends that several interrogatories and RFPs seek irrelevant information and are disproportionate to the needs of the case because they seek information related to "Philips systems." According to Alpha, this litigation relates only to Philips' MRI systems, making information related to other Philips systems irrelevant. *See* Dkt. 67 at 6.

---

[4] Philips has not shown that all the documents sought by RFP 13 would be relevant. RFP 13 provides as follows:

> Produce all documents sufficient to identify how every IST certificate acquired by you was obtained, including who each IST certificate was acquired from, how it was acquired, the transaction to acquire the IST certificate, and every person involved in the acquisition of the IST certificate.

Dkt. 64-2 at 34. Although this request seeks relevant information insofar as it relates to IST certificates used to access Philips systems, it is worded such that it would theoretically include IST certificates related to non-Philips systems, assuming such certificates exist. I do not see how such certificates could bear on the present matter. Nonetheless, to the extent RFP 13 refers to IST certificates associated with Philips systems, Alpha must respond.

Although Alpha is correct that most of the allegations in Philips' complaint relate to unauthorized access to the proprietary materials embedded within its MRI systems, Philips' allegations are not strictly limited to MRIs. Rather, Philips raises claims for misappropriation of trade secrets based on alleged unlawful access to its proprietary materials. *See* Am. Compl. ¶¶ 130-66. Those proprietary materials are embedded not only within Philips MRI systems, but also in its other imaging systems, including computed tomography and x-ray machines. *See* Am. Compl. ¶¶ 10, 14-21, 104. And the complaint expressly addresses unauthorized access to systems other than MRI systems:

> Through defendant's actions, as outlined in paragraphs above, defendant has obtained information from protected computers, since the data contained where the MRIs *and other systems* defendant wrongfully accessed securely host Philips' CSIP, constitutes trade secret/confidential information of high commercial value and importance, useful to any entity which would compete with Philips PR, if publicized.

Dkt. 9 ¶ 104 (emphasis added). Alpha's assertion that information sought in discovery is only relevant if it relates to Philips' MRI systems is thus unavailing.

Although interrogatories numbered 11, 12, 13, 16, 17, and 18 and RFPs numbered 11, 12, 13, 14, 21, 24, 25, and 29 seek relevant information, Alpha's answers are evasive and incomplete. The most substance Alpha provided in responding to these requests was to state that no IST certificate is required to access Philips' MRI systems. But this does little to respond to Philips' requests. For instance, Alpha did not explain whether and how it acquired IST certificates to access Philips' systems, whether agents of Alpha have used IST 12345 to access Philips systems, or whether they have used the credentials of former Philips employees to gain access. Alpha's reference to its answer to Interrogatory No. 3 is similarly non-responsive and arguably evasive, as that answer explains only that Alpha accesses Philips systems by using the information Philips provides in its user manuals. Dkt. 64-2 at 8. It does not explain whether Alpha also accesses Philips systems by other means and, if so, how. And Alpha's later offer to produce IST certificates neither answers the above interrogatories nor fulfills its duty to actually produce those certificates. In other

Philips Medical Systems PR, Inc., et al. v. Alpha Biomedical & Diagnostic Corp., et al., Civil No. 19-1488 (BJM)    13

words, while the above-named interrogatories and RFPs sought relevant information, Alpha failed to provide it or raise a sound objection.[5] Accordingly, Philips' motion to compel complete answers to interrogatories 11, 12, 13, 16, 17, and 18 and RFPs numbered 11, 12, 13, 14, 21, 24, 25, and 29 is granted. The motion to compel production in response to RFP 13 is granted insofar as that request relates to IST certificates used to access Philips systems.

Alpha also objects on relevance grounds to Philips' Interrogatory No. 2, which reads as follows: "Identify the names and addresses of any parent, subsidiary or affiliated companies to Alpha Biomedical." Dkt. 64-2 at 8. As Philips explains, it seeks this information to determine "whether there is a common ownership and control between the corporations and a possible custody and control of information by a related entity that might be relevant in this case." Dkt. 64 at 9. The 2015 Amendments to the Federal Rules of Civil Procedure permit discovery of "information about organizational arrangements," as well as "the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." Fed. R. Civ. P. 26, Advisory Committee Note to 2015 Amendments. The information Philips seeks by means of Interrogatory No. 2 is a standard discovery request seeking basic information. The language expressly authorizing such requests was removed from Rule 26 because the Advisory Committee deemed them "so entrenched in practice" that it was no longer necessary to "clutter" the text of Rule 26 by mentioning them. *Id.*; *see also Tanner v. McMurray*, 405 F. Supp. 3d 1115, 1182 (D.N.M. 2019) (discussing the effect of the Advisory Committee's 2015 amendments). Moreover, Philips' request is hardly burdensome, as it seeks nothing more than names and addresses. Philips' motion to compel an answer to Interrogatory No. 2 is granted.

---

[5] I disregard Alpha's unadorned objections to these requests based on undue burden for reasons described below.

Next, I turn to Philips' contention that Alpha impermissibly relies on conclusory, boilerplate objections throughout its answers. Interrogatories numbered 4, 5, 7, 8, and 9 all seek information related to Alpha's affirmative defenses. It is undisputed that such information is relevant, but Alpha objects to these requests on grounds of undue burden. For example, Alpha provided the following response to Interrogatory No. 4:

> **Interrogatory No. 4:**
> Please state each and every fact upon which you intend to rely to establish the defense or claim that the plaintiff did not suffer a loss, during a one-year period, aggregating at least $5,000 as a result of defendant's alleged intrusion/hacking/damage to the Philips CSIP, as alleged by Philips in the Complaint.
>
> **Answer:**
> a. General Objection #1, because it requires extensive research, compilation or evaluation of documents inuring to undue effort or expense upon the Defendant. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358 (1978).

Dkt. 64-2 at 9.

If a party objects to an interrogatory or RFP, she must state her grounds "with specificity." Fed. R. Civ. P. 33(b)(4); Fed. R. Civ. P. 34(2)(B). Bald, generic reasons for an objection are inadequate. *Moreno Rivera*, 272 F.R.D. at 55; *see also* Fed. R. Civ. P. 26, Advisory Committee Note to 2015 Amendments (explaining that Rule 26 does not "permit the opposing party to refuse discovery simply by making a boilerplate objection that it is not proportional"). Alpha's undue burden objections to interrogatories numbered 4, 5, 7, 8, and 9 offer no explanation whatsoever, and Alpha offered no further elaboration in its opposition to Philips' motion to compel. It has thus failed to "show specifically" how each request is overly broad, burdensome or oppressive. *See Autoridad de Carreteras y Transportación*, 319 F.R.D. at 430 (citation and internal quotation marks omitted).

Alpha argues that it nonetheless satisfied any duty to respond by referring to portions of its motion to dismiss and related reply at Dkts. 12 and 19. "Answering interrogatories simply by directing the proponent to rummage through other discovery materials falls short of the obligations imposed by Rule 33." *Mulero–Abreu v. Puerto Rico*

Philips Medical Systems PR, Inc., et al. v. Alpha Biomedical & Diagnostic Corp., et al., Civil No. 19-1488 (BJM)   15

*Police Dept.*, 675 F.3d 88, 93 (1st Cir. 2012). "Additionally, an incorporation by reference of the allegations of a pleading is not a responsive and sufficient answer to an interrogatory." *Autoridad de Carreteras y Transportacion*, 319 F.R.D. at 431(citation and internal quotation marks omitted). Rather, Alpha is under a duty to answer Philips' interrogatories "separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). Mere reference to Alpha's motion to dismiss and related reply does not satisfy this duty.

Nonetheless, I will not grant Philips' motion to compel answers to Interrogatory Nos. 4, 5, 7, 8, and 9 at this time. These requests take the form of contention interrogatories, which, as other courts have explained, are frequently better answered after discovery is well under way when issues have already been developed and clarified. *See, e.g.*, *Nestle Foods Corp. v. Aetna Cas. and Sur. Co.*, 135 F.R.D. 101, 110–11 (D.N.J. 1990); *HTC Corp. v. Tech. Properties Ltd.*, C08-00882 JF HRL, 2011 WL 97787, at *1–2 (N.D. Cal. Jan. 12, 2011). Here, discovery is still in its earlier stages, as Philips brings this motion in connection with its first set of discovery requests. I find judicial economy and efficiency for litigants better served by permitting Alpha to respond to these interrogatories at a later date. Alpha must provide complete answers to these interrogatories by the close of discovery. Should Alpha fail to do so, Philips may renew its motion to compel.

Alpha also made boilerplate objections to RFPs numbered 1-17 and 24-28, again claiming undue burden. For example, Alpha provided the following response to RFP No. 1:

> **RFP No. 1:**
> Please produce copies of any and all documents and/or tangible things identified in Alpha Biomedical's answers to the Philips' first set of interrogatories to defendant.
>
> **Answer:**
> a. General objection #1 because it is overly broad and lacks reasonable specificity as to time, place and subject matter in accordance to the Federal Rules of Civil Procedure. This Request is also overly burdensome and oppressive. Rule 34(a)(1) of the Federal Rules of Civil Procedure, Fed. R. Civ. P. 34(a)(1), states that a party may serve on any other party a request within the scope of Rule 26(b) in order to "produce and permit the

>    requesting party or its representative to inspect, copy, test, or sample the following items in the responding party's possession, custody, or control." The contents of the Request, pursuant to Rule 34(b)(1)(B), Fed. R. Civ. P. 34(b)(1)(B), "must describe with reasonable particularity each item or category of items to be inspected" (emphasis ours). The rule also states that the Request "must specify a reasonable time, place, and manner for the inspection and for performing the related acts." "Though what qualifies as reasonabl[y] particular surely depends at least in part on the circumstances of each case, a discovery request should be sufficiently definite and limited in scope that it can be said to apprise a person of ordinary [sic] produced." Wright & Miller, 8A Federal Practice and Procedure § 2211, at 415. *Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 649–50 (10th Cir. 2008) (internal quotation marks omitted).
>
> b.  Furthermore, the Request is burdensome, oppressive, vexatious and harassing because it requires extensive research, compilation or evaluation of documents inuring to undue effort or expense upon the Defendant; especially considering that the Request extends to "any and all" documents. *See Oppenheimer Fund, Inc. v. Sanders, supra*. In overseeing document production, the court should ... prevent indiscriminate, overly broad, or unduly burdensome demands ... such as those for 'all documents relating or referring to' a ... claim.... *Regan-Touhy v. Walgreen Co, supra*. Plaintiffs have failed to describe the Request with the reasonable particularity required by Rule 34.

Dkt. 64-2 at 16-17.

Like its objections to Interrogatory Nos. 4, 5, 7, 8, and 9, Alpha's objections to RFP Nos. 1-17 and 24-28 fail to explain why Philips' requests are burdensome, pointing out only that some of the requests use the language "any and all." But the presence of those words does not automatically render the request overbroad. Indeed, Alpha ignores the many ways in which Philips' requests are otherwise limited. For instance, RFP number 10 seeks "all documents containing or referring to passwords for accessing Philips' systems or information." Dkt. 64-2 at 30. Pursuant to the instructions governing Philips' requests, responsive documents are limited to those dated March 2011 to present. Dkt. 64-1 at 7. This is hardly a request for "all documents . . . that refer to, mention or relate in any way to . . . the litigation or the allegations, facts and circumstances concerning the litigation." *Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 649 (10th Cir. 2008) (quoting litigant's

Philips Medical Systems PR, Inc., et al. v. Alpha Biomedical & Diagnostic Corp., et al., Civil No. 19-1488 (BJM)    17

Philips Medical Systems PR, Inc., et al. v. Alpha Biomedical & Diagnostic Corp., et al., Civil No. 19-1488 (BJM)    17

discovery request) (internal quotation marks omitted). And Philips' other requests are similarly limited. Because Alpha's objections based on undue burden rely on boilerplate language and offer no explanation, they are invalid.

Most of Alpha's remaining objections are based on trade secret. Because a protective order is now in effect, I do not address those objections at this juncture.

For the reasons above, Philips motion to compel is granted in part and denied in part.

Finally, Alpha argues that Philips pursued the present motion to compel because it wished to harass its competitor and that, for this reason, the court must issue a protective order. Dkt. 67 at 9-10. To the contrary, Philips has shown that it worked with Alpha for months in an effort to agree to a protective order governing disclosure of confidential materials and otherwise resolve discovery disputes. I see no evidence that Philips filed the present motion for any improper reason. Accordingly, Alpha's motion for protective order related to Philips' alleged harassment is denied.

To sum up, Philips' motion to compel is **GRANTED IN PART** and **DENIED IN PART**. Alpha must provide full answers in writing under oath to Interrogatory Nos. 11, 12, 13,[6] 16, 17, and 18 and to produce responses to RFP Nos. 11, 12, 13, 14, 21, 24, 25, and 29. Alpha is not compelled to answer Interrogatory Nos. 4, 5, 7, 8, and 9 at this juncture, but it must do so by the close of discovery. Alpha is further ordered to review Philips' remaining discovery requests and provide complete answers and responsive productions or raise legally sound objections. Objections to interrogatories that Alpha could have raised previously but did not are waived, unless Alpha shows good cause why its failure should be excused. *See* Fed. R. Civ. P. 34(b)(4).

Additionally, Philips' motion for protective order is **GRANTED**, and the protection order at Dkt. 65-1 now governs discovery in the instant suit, with one amendment. The

---

[6] The motion to compel production in response to RFP 13 is granted insofar as that request relates to IST certificates used to access Philips systems.

following sentence shall be added to the end of Paragraph 4(d) of the proposed order: "Douglas McKnight is the designated in-house counsel for Plaintiffs."

Should further discovery disputes arise, parties must exhaust good faith efforts to resolve those disputes among themselves prior to bringing them to this court. Parties are strongly urged to consider settlement.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 15th day of January, 2021.

*S/ Bruce J. McGiverin*
BRUCE J. MCGIVERIN
United States Magistrate Judge