IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **PHILIPS MEDICAL SYSTEMS PUERTO RICO, INC.**, *et al.*,<br>　　Plaintiffs-Counterclaim Defendants<br><br>v.<br><br>**ALPHA BIOMEDICAL AND DIAGNOSTIC CORP.**, *et al.*,<br>　　Defendants-Counterclaimants. | Civil No. 19-1488 (BJM) |

## OPINION & ORDER

Philips Medical Systems Puerto Rico, Inc., Philips Medical Systems Nederland B.V. and Philips India Limited (collectively "Philips" or "counterclaim defendants") sought relief against Alpha Biomedical ("Alpha") based on allegations that Alpha had used Philips' intellectual property without authorization while servicing Philips brand MRI systems. Docket No. 9. Alpha asserted counterclaims for tortious interference with contract, defamation, and unlawful restraint of trade and monopolization. Docket No. 33 at 26-46. Philips moved to dismiss, and I granted that motion in part, finding that the claim for tortious interference survived but dismissing Alpha's defamation and antitrust claims with leave to amend. Docket No. 79. Alpha then filed an amended counterclaim asserting claims for tortious interference and defamation. Docket No. 80 ("Countercl. Compl."). Now before the court is Philips' motion to dismiss the amended counterclaim. Docket No. 85. Alpha opposed, Docket No. 92, Philips replied, Docket No. 107, and Alpha submitted a surreply, Docket No. 103. This matter is before me by consent of the parties. Docket Nos. 35, 36. For the reasons that follow, Philips' motion to dismiss is **GRANTED IN PART**.

## STANDARD OF REVIEW

When faced with a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court "accept[s] as true all well-pleaded facts alleged in the complaint and draws all reasonable inferences therefrom in the pleader's favor" to determine whether the complaint states a claim for which relief can be granted. *Santiago v. Puerto Rico*, 655 F.3d 61, 72 (1st Cir. 2011). The court "may augment these facts and inferences with data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." *Starr Surplus Lines Ins. Co. v. Mountaire Farms Inc.*, 920 F.3d 111, 114 (1st Cir. 2019) (quoting *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011)) (internal quotations omitted). In undertaking this review, the court must

> first, 'isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements[,]' then 'take the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief.'

*Zell v. Ricci*, 957 F.3d 1, 7 (1st Cir. 2020) (alterations in original) (quoting *Zenón v. Guzmán*, 924 F.3d 611, 615–16 (1st Cir. 2019)). "Plausible, of course, means something more than merely possible, and gauging a pleaded situation's plausibility is a 'context-specific' job," which requires drawing on "'judicial experience and common sense.'" *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

## BACKGROUND

Unless otherwise specified, the following facts are drawn from Alpha's amended counterclaim complaint. As with any 12(b)(6) motion, facts from the amended counterclaim are taken as true and all reasonable inferences drawn in counterclaimant's favor.

Alpha is a Puerto Rico corporation that sells, distributes, and services sophisticated medical equipment, having engaged in that business for approximately 26 years. Countercl. Compl. ¶¶ 4, 11. From 2002 to 2011, Alpha served as the exclusive distributor in Puerto Rico of Philips brand parts and medical products. *Id.* ¶ 10. In March 2011, Philips abruptly ended its relationship with Alpha. *Id.* ¶ 14. Since then, Philips has undertaken steps to undermine Alpha's operations in Puerto Rico. *Id.* ¶ 15.

Philips had a service contract with Metro Pavía Inc. ("Metro Pavía"), which expired on December 31, 2018. *Id.* ¶ 26. Metro Pavía was not satisfied with Philips' work, so it opened a service bidding process in which Philips, Alpha, and another provider participated. *Id.* ¶¶ 27-28. Alpha presented the lowest bid, and Metro Pavía awarded the contract to Alpha. *Id.* ¶ 29. Alpha has since lost its engagement with Metro Pavía. *Id.* ¶ 31.

Beginning around December 2019, Philips began contacting Alpha's clients to perform what Philips described as "mandatory security updates" to Philips brand medical equipment. *Id.* ¶ 32. The result of these "updates" is that "Level 0" access is eliminated. *Id.* ¶ 34. According to Philips, "Level 0" access is a means by which its medical devices can be serviced. Docket No. 9 ¶ 29. Services with Level 0 access can perform "basic configuration, installation, and a few basic diagnostics." *Id.* According to Alpha, because Philips is eliminating Level 0 access, third-party service providers, such as Alpha, cannot run diagnostics or calibrate their clients' equipment without an access key purchased through Philips. Countercl. Compl. ¶ 35.

Philips has performed these "updates" whether or not the client has a servicing agreement with Philips. *Id.* ¶ 33. At least one client, Dr. José A. Rivera Rivera ("Dr. Rivera") of Medical X-Ray center, has questioned the need for the update. *Id.* ¶ 36. He asked a Philips representative whether the update was necessary to comply with the applicable technical standards. *Id.* The

representative informed Dr. Rivera that the update only addressed a security issue. *Id.* ¶ 37. When Dr. Rivera stated that the update was unnecessary in his case, the Philips representative threatened to inform medical insurance companies that Dr. Rivera's equipment was obsolete. *Id.* ¶ 38.

Philips' elimination of Level 0 access is endangering Alpha's existence and creating potentially life-threatening situations. *Id.* ¶ 49. In early February 2020, an MRI at San Francisco Hospital (a Metro Pavía facility) lost its internal pressure. *Id.* ¶¶ 50-51. When this happens, an MRI's magnetic field can collapse, which would significantly disrupt the hospital's ability to treat patients. *Id.* ¶ 51. Alpha was charged with remedying the situation. If Alpha had Level 0 access, it could have solved the problem in approximately one hour. *Id.* ¶ 55. But because Philips had eliminated Alpha's Level 0 access, Alpha had to find a workaround, solving the problem after twenty-four hours. *Id.* ¶ 54.

Philips continues to have remote access to the equipment installed in Alpha's client's facilities, including the ability to modify any information stored in the equipment's system. *Id.* ¶¶ 57-58. Such access took place, at least once, on December 21, 2018, when an employee of Philips accessed Dr. Susoni Hospital's system during a time when Philips had no service contract with Dr. Susoni Hospital. *Id.* ¶ 59.

Alpha and Philips are now embroiled in litigation because Philips has accused Alpha of accessing its intellectual property without authorization. After filing suit, Philips sent litigation hold letters to Alpha's clients along with copies of their amended complaint. *Id.* ¶ 61. These letters ask Alpha's clients to preserve relevant evidence and accuse Alpha of dishonest acts. *Id.* ¶¶ 61, 106. Most of the allegations in the amended complaint attached to the litigation hold letters are false, and Philips is aware of their falsehood. *Id.* ¶ 67. The false statements contained in the amended complaint attached to the litigation hold letters include the following:

    a. Stating that after Mr. Bracero's employment with Philips, he transferred or otherwise disposed of without permission his Philips' deactivated login credentials, UserID 34914, and a circumvented copy of the *MRI Response Generator Tool* to Alpha to allow Alpha and its employees to interconnect and communicate without authorization with plaintiffs' MRI host computers' access-restricted areas, [and] unlock *Philips' CSIP* access protection tools to ultimately gain access to Philip's copyrighted and trade secret property.

    b. Stating that Alpha and its employees have used Mr. Bracero's deactivated login credentials to bypass and circumvent Philips' software security measures for purposes of accessing data, diagnostic tools, maintenance logs, and other information and software functionalities beyond authorized levels of access.

    c. Stating that Alpha has been performing servicing on Philips' Systems of a type that it was not authorized or granted license to do, and of a type that intruded upon Philips' proprietary software and trade secrets.

    d. Stating that Alpha used Mr. Bracero's Philips' deactivated credentials, UserID 34914 to unlock the Servicios Radiológicos del Este, Condado X-Ray & Ultrasound's (hereinafter, "Condado X-Ray") MRI's host computer's access-restricted areas in order to access its Philips CSIP Level 1 and Level 2 and the copyrighted and trade secret information contained therein. Plaintiffs further state that the names "victor" and "silva", referring to current Alpha employees, appeared in the corresponding recorded entry.

    e. Stating that Alpha, through its employees, hacked and/or illegally accessed the *Achieva 1.5T Software* manipulating and/or circumventing access-control measures that effectively control access to *Philips CSIP* by using a fake UserID and IST account, "UserID 12345".

    f. Stating that Alpha used this alleged fake UserID and IST account, "UserID 12345", to service Hospital Dr. Susoni and Pavia Breast & Imaging.

*Id.* ¶ 66.

The reason Philips is sending these "litigation hold letters" and eliminating Level 0 access is that it aims to intimidate Alpha's clients into abandoning their contractual relationship with Alpha and instead execute contracts with Philips. *Id.* ¶¶ 47, 62. Because of Philips' conduct, one of Alpha's clients has decided to renew its contract with Alpha on a month-to-month basis, rather than the usual yearly renewal. *Id.* ¶ 64.

**DISCUSSION**

Alpha alleges that Philips' conduct constitutes tortious interference with contract and defamation. Philips seeks dismissal of each of Alpha's counterclaims. I will address each claim in turn.

*(a) Tortious Interference*

The allegations contained in Alpha's amended counterclaim in support of its tortious interference claim are substantially the same as the allegations in Alpha's first counterclaim. *Compare* Countercl. Compl. ¶¶ 73-85, *with* Docket No. 33 ¶¶ 56-68. Yet Philips again argues that Alpha's tortious interference claim is devoid of facts that establish a claim for relief. Docket No. 85 at 4. I have already ruled that the factual allegations contained in Alpha's first counterclaim complaint were sufficient to state a claim for tortious interference with contract, Docket No. 79 at 7, and I find no reason to revisit that decision now. The argument Philips wishes to press—that the contracts have no fixed period—is largely a factual dispute better left to later stages of the litigation. Accordingly, Philips' motion to dismiss Alpha's tortious interference claim is denied.

*(b) Defamation*

I dismissed Alpha's defamation claim as pleaded in Alpha's first counterclaim but allowed leave to amend. Docket No. 79 at 9, 17. Alpha now seeks to cure the deficiencies in its original pleading by adding greater detail regarding the statements it believes are false and defamatory. Countercl. Compl. ¶¶ 107-08.

Claims for defamation under Puerto Rico law arise from three sources: (1) Section 8 of Article II of the Constitution of the Commonwealth of Puerto Rico; (2) the Libel and Slander Act of 1902, P.R. Laws Ann. tit. 32, §§ 3141–49; and (3) Puerto Rico's General Tort Statute, Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 5141. *See Aponte v. Calderón*, 284

F.3d 184, 197 (1st Cir. 2002). "A defamation claim based on all three sources of Puerto Rico law requires that the plaintiff prove: (1) that the information is false, (2) that plaintiff suffered real damages, and (3) in the case of a private figure plaintiff, that the publication was negligent." *Garcia-Garcia v. Costco Wholesale Corp.*, 878 F.3d 411, 427 (1st Cir. 2017) (citations and internal quotation marks omitted).[1] "[L]ibel is defamation that comes in the written form." *Segarra Jiménez v. Banco Popular, Inc.*, 421 F. Supp. 2d. 452, 459 (2006). Claims for libel or defamation under Puerto Rico law follow the common law tradition. *Aponte*, 284 F.3d at 197 (citing *Villanueva v. Hernández Class*, 28 P.R. Offic. Trans. 618, 128 P.R. Dec. 618, 646 (1991)).

Alpha alleges that Philips "knowingly published false and defamatory information about Alpha to Alpha's clients with the purpose of intimidating Alpha's clients into abandoning their relationship with Alpha." Countercl. Compl. ¶ 107. According to Alpha, these defamatory statements were contained in the amended complaint that accompanied the litigation hold letters sent by Philips to Alpha's clients. *Id.* ¶¶ 107-08. Alpha further alleges that it has suffered damages estimated at $24,864,000.00 because of Philips' defamatory statements. *Id.* ¶ 115. Philips contends that a cause of action for defamation cannot lie because all the statements Alpha identifies as defamatory were made during a judicial proceeding and are thus privileged under Puerto Rico law. Docket No. 85 at 9-10.

Under Puerto Rico law, "[a] publication or communication shall not be held or deemed malicious when made in any legislative or judicial proceeding." P.R. Laws Ann. tit. 31, § 3144. In interpreting this statute, the Puerto Rico Supreme Court has held that a complaint constitutes a "communication … made in [a] … judicial proceeding." *Giménez Álvarez v. Silen Maldonado*, 131 D.P.R. 91, 99 (1992) (internal quotation marks omitted). Thus, "any statement pleaded [in a

---

[1] Because neither party suggests that Alpha is a public figure, I do not consider the law of defamation applicable to such figures.

complaint] shall not be deemed malicious for purposes of the libel action if it has a bearing on the issue in controversy." *Id.*; *see also Schroeder v. De Bertolo,* 912 F. Supp. 23, 27 (D.P.R. 1996) ("allegations contained in [a] Complaint are [] immune from prosecution for libel.").

Although Alpha identified various statements it deems defamatory, they all come from Philips' amended complaint. Countercl. Compl. ¶¶ 106-08. Moreover, they all refer to the instant litigation, as they describe how Alpha allegedly obtained "unauthorized access to Philips' software, diagnostic tools and documents for servicing its medical imaging systems." Docket No. 85 at 1. Because statements (a)-(f) in Alpha's counterclaim complaint, Countercl. Compl. ¶ 108, all come from Philips' complaint and "bear[] on the issue in controversy," *Giménez Álvarez,* 131 D.P.R. at 99, they are privileged from suit as statements made during a judicial proceeding.

Before concluding, however, I address two of Alpha's arguments that merit further discussion. First, Alpha argues that the allegedly libelous statements are not protected under Puerto Rico law because Philips disseminated them to third parties. Docket No. 92 at 9. Critically, however, Alpha points the court only to non-binding authority dealing with dissemination of allegedly defamatory statements to news services. But statements made to the press, as the cases Alpha cites explain, are quite different than those made here. Indeed,

> [d]elivery of a complaint or summary of a complaint to the press is neither essential nor relevant to the judicial proceedings themselves. It in no way aids a party in furthering his or her cause before a judicial tribunal and, hence, must fall outside the privilege afforded statements made during the course of judicial proceedings.

*D'Annunzio v. Ayken, Inc.*, 876 F. Supp. 2d 211, 217 (E.D.N.Y. 2012). In stark contrast, the statements Philips allegedly made were directed at third parties who likely possess evidence relevant to the litigation. And they were made, at least on their face, to preserve that evidence. In other words, the statements merit protection under the judicial proceeding privilege because they "further [Philips'] causes." *Id.*

Alpha also argues that the litigation hold letters themselves are libelous because they "accuse Alpha of misappropriating Philips' trade secrets" "[u]nder the guise of having 'asserted' said allegations in the Amended Complaint." Docket No. 92 at 8. But this argument, too, must fail. Allegations against a defendant made during a civil proceeding cannot be used to state a claim for libel. *See Schroeder,* 912 F. Supp. at 27; *Boateng v. Inter Am. Univ.*, 190 F.R.D. 29, 32 (D.P.R. 1999) ("[T]he statements made during any judicial proceeding do not create a cause of action for defamation"); DAVID ELDER, DEFAMATION: A LAWYER'S GUIDE § 2:11 (December 2020) ("The absolute privilege applies to all necessary, customary, or useful communications made in preparing for or developing a pending case."). As the Puerto Rico Supreme Court has explained,

> [i]n view of the public interest in the administration of justice, and, in allowing broad and free access to the courts, immunity also covers anything that may be said with regard to the controversy, whether it be in the pleadings, in affidavits, or in open court.

*Giménez Álvarez,* 131 D.P.R. at 99. The fact that allegedly defamatory statements were made in a litigation hold letter, as opposed to a complaint, thus does not place them beyond the protection offered by the judicial proceeding privilege. Rather, the relevant inquiry is whether the statements "bear on the issue in controversy." *Id.* Here, the statements made in the litigation hold letters are protected because they serve to preserve evidence likely to be relevant to the ongoing litigation.

## CONCLUSION

For the foregoing reasons, Alpha's tortious interference claim survives, but Alpha's claim for defamation is dismissed. Philips' motion is **GRANTED IN PART**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 16th day of July, 2021.

*S/ Bruce J. McGiverin*
BRUCE J. MCGIVERIN
United States Magistrate Judge