EXHIBIT B

AMG
ADSUAR MUÑIZ GOYCO SEDA & PÉREZ-OCHOA, PSC
Attorneys and Counselors at Law

Popular Center
208 Ponce de León Ave.
Suite 1600
San Juan, Puerto Rico
00918
www.amgprlaw.com

PO Box 70294
San Juan, Puerto Rico
00936-8294

**Tel** 787.756.9000
**Fax** 787.756-9010

April 1st, 2021

**VIA E-MAIL**
riverac@reichardescalera.com
cacevedo@reichardescalera.com

MCS Plaza, 10th Floor
PO Box 364148
San Juan, PR 00936-4148
Tel. (787) 777-8888/Fax (787) 765-4225

**Re:** ***Philips Puerto Rico, et al v. Alpha Biomedical and Diagnostic*, Corp. Civil No. 3:19-cv-01488 (BJM) Our File No. 9395-36 – ALPHA'S SUPPLEMENTAL ANSWERS**

Dear Counsel:

Plaintiffs, Philips Medical Systems Puerto Rico, Inc., Philips Medical Systems Nederland B.V., and Philips India Limited (collectively, "Philips" or "plaintiffs"), hereby addresses in **Part I** of this letter unresponsive answers in *Alpha's Answer to Plaintiffs Second Set of Request for Production of Documents* ("Answers to Second RPD"), and in **Part II** deficiencies in the *Supplemental Answer to Plaintiffs' First Set of Interrogatories and Request for Production of Documents* ("Supplemental Answers"), both lodged and notified by defendant, *Alpha Biomedical and Diagnostic, Corp*. ("Alpha") on December 1st, 2020, and February 1st, 2021, respectively. This letter is a good faith effort to secure the information in question without the Court's intervention pursuant to Fed. R. Civ. P. 37 and L. Cv. R. 26.

Additionally, to maximizing judicial economy and pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, in **Part III** Philips incorporates an additional request to Alpha to produce for inspection certain materials referred in its *Supplemental Answers*.

## PART I: Alpha's *Answers to Second RPD*

**RPD Number 25: Produce Alpha's service logs, service records, or other documentation related to the repair, maintenance and/or service of Philips' systems during the last five (5) years.**

**Alpha's Answer**: See objection to Request #1. Plaintiffs' Request imposes upon Alpha an undue burden that is not reasonably expected to lead to relevant information. Alpha has estimated that the search for

the requested information may produce upwards of 100,000 documents (including service requests, diagnostics, parts requests, parts and services quotes and invoices for each client request) through its more than 150 clients using Philips' systems, each with one or more Philips equipment. Alpha estimates that it would need to hire at least four full-time and fully dedicated employees to complete the task of extracting and processing the Request, and it may take as long as 8 months. In addition to the approximate $64,000 in direct labor costs, Alpha estimates the need to habilitate an office for these new employees, equipped with printers, scanners and computers. Additionally, Alpha would need to invest in these employees' trainings and would need to supervise their work to ensure that the information they are extracting is responsive, requiring an additional monetary investment. At the end of this exercise, the information to be obtained will not advance the purposes of the litigation, since it will not show what kind of access is being performed on the equipment or how this access is achieved.

**Objection:** Alpha's self-serving assertion that the request imposes upon defendant an undue burden is inapposite. As a threshold matter, the information sought in RPD No. 25 was precisely part of the subpoenas issued by Philips to the medical facilities on or about June 20, which Alpha objected and successfully quashed. As Docket 53 reveals, Alpha argued that the subpoenas, and thus the requests contained therein, "were improperly attempting to circumvent party discovery procedures" […] "even though the non-privileged information sough can easily and less burdensomely be found though party discovery". **Dkt. 53** at p. 9. It further emphasized that there was "no reason that Plaintiffs cannot seek the required information directly from Alpha." *Id.* The Court sided with Alpha ordering Philips to seek and obtain documents in Alpha's possession directly from Alpha. *See* **Dkt. 61** at p. 6. Now Alpha cannot conveniently object on unduly burdensome grounds the very same requests it was willing to produce if discovery was directed to them.

Furthermore, the request is not unduly burdensome as it is limited in time -- a 5-year period -- and pertains only to Philips' branded medical systems. Defendants have had since August 31, 2020, date on which the discovery request was served to gather the data. Thus, there is simply no valid reason for withholding the information. Please withdraw the objection and provide the requested information.

**<u>RPD Number 30:</u> Documents sufficient to identify the personnel, their titles, responsibilities, and internal organization structure of Alpha during the past five (5) years.**

**Alpha's Answer:** Alpha objects to this Request for lack of relevance insofar as it is not proportional to the needs of the case.

Given the sensitive nature of this information (see Alpha's trade secret privilege objections in its Answer to Plaintiffs' First Set of Interrogatories and Request For Production Of Documents) Alpha will provide this information subject to the execution of an approved and executed Stipulated Confidentiality and Protective Order.

**Objection:** Please note that on Jan. 15, 2021 the Court issued a Protective Order. *See* **Dkt. 83**. Accordingly, please provide the requested information.

**RPD Number 31: Produce all communications between you and Tom Quinn referring to or pertaining to Philips from May 2019 to the present.**

**Alpha's Answer:** Alpha objects to this Request insofar as it requires the disclosure of information and documents protected from discovery under Federal Rule of Civil Procedure 26(b)(3), specifically barred by the work product rule established in Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). This rule protects against the disclosure of information prepared in anticipation of a litigation. "Maine v. U.S. Dep't of the Interior, 298 F.3d 60, 68 (1st Cir.2002) (citing United States v. Adlman, 134 F.3d 1194, 1202 (2d Cir.1998)). The work product doctrine also extends to materials prepared by non-lawyers so long as they are "prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed.R.Civ.P. 26(b)(3)(A). United States v. Nobles, 422 U.S. 225, 238–239, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975). Plaintiffs cannot show a substantial need for these materials nor that they are unable to obtain equivalent material without undue hardship. Fed.R.Civ.P. 26(b)(3).

**Objection:** Alpha did not meet its burden of showing specifically why RPD No. 31 seeks information protected by the attorney-work product doctrine. The work product rule, established in Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), and codified by Fed. R. Civ. P. 26(b)(3), protects from discovery materials prepared **"in anticipation of litigation" by a party or a party's representative**. Furthermore, the party seeking to take shelter under the work-product doctrine must first "affirmatively demonstrate that disclosure of the allegedly protected materials would reveal the mental impressions or other work product of the attorney." 310 Corporate Counsel's PRIMERS NL 1.

The doctrine entails a connection between the probability of some type of judicia proceeding and the preparation of the document. With regards to the phrase "in anticipation of litigation," the First Circuit adopted the standard applied by a number of other appellate courts holding that documents serving both a litigation and business purpose may be protected work product "if, 'in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained *because of* the prospect of litigation.'" Maine v. U.S. Dep't of the Interior, 298 F. 3d 60, 68 (1st Cir. 2002) (citing U.S. v. Adlman, 134 F. 3d 1194, 1202 (2nd Cir. 1998). Under this rule, the privilege does not attach to documents that were prepared in the ordinary course of business or that would have been prepared in essentially similar form irrespective of the litigation." Adlman, 134 F. 3d at 1202.

In other words, the work product doctrine extends to protect materials prepared by non-lawyers so long as they are "prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). Just because the withheld information is *self-servingly characterized* by the objecting party as privileged or work product information, does not mean in any way, shape or form that the information is automatically not discoverable. As the party asserting the privilege, Alpha bears the burden of establishing that a privilege applies to the contested communications. U.S. v. Wilson, 798 F.2d 209, 212 (1st Cir. 1986). Furthermore, the privilege can be deemed rejected or waived and, thus, be discoverable if the party claiming privilege fails to describe the basis for the privilege adequately, or

to assert it in a timely manner. *See Marx v. Kelley, Hart & Hallman, P.C.*, 929 F.2d 8, 12 (1st Cir.1991); *Dorf & Stanton Commc'ns, Inc. v. Molson Breweries*, 100 F.3d 919, 923 (Fed.Cir.1996). In fact, numerous cases have held that the party seeking to assert the work-product doctrine must do more than simply allege that the doctrine applies. See for example National Uniorn Fire Ins. Co., of Pittsburgh v. Midland Bancor, Inc., 159 F.R.D. 562 (D. Kan. 1994).

Here, it is evident that Alpha has failed to comply with Rule 26, 34, as well as with dispositive authority on the work-product doctrine given that it did not specify how this rule applies. *First*, Alpha failed to describe the relationship of Tom Quinn with Alpha that would protect the requested communications. *Second*, there is no indication that Mr. Quinn is a legal representative of Alpha, nor that communications and materials prepared by Mr. Quin to Alpha were created in anticipation of this litigation. This is unlikely since the request involves communications post May 2019, which means that the information sought could not have been prepared in anticipation of litigation. Thus, the fact that the communications may refer to this case does not shield them from disclosure under the work-product doctrine.

Furthermore, Philips has information that communications from Mr. Quinn to Alpha have included multiple parties, in addition to Alpha. Such disclosures to third party are a waiver of the work product protections. Accordingly, please withhold the objection and provide the requested information.

## PART II: *Supplemental Answers*

### A. Answers and Objections to Interrogatories

**Interrogatory Number 11**: List all IST certificates you acquired to access Philips' systems, whether acquired from Philips or not, and for each IST certificate identify who the IST certificate was acquired from and how it was acquired.

**Alpha's Answer**: See pages 0088-0089 of Alpha's Production of Documents. The two licenses that were acquired from Radiological Service Training Institute ("RSTI") were used to access CSIP Level 0 of X-Ray equipment. The numbers for these licenses will be supplied under the "Attorney Eyes Only" ("AOE") designation of Dkt. 65-1, because Plaintiffs would otherwise be able to deactivate their credentials to harm Alpha (See page 0090 of Alpha's Production of Documents). Of the licenses acquired from Imaging Technology, only two were activated, but were not used for MRI or CT Scan equipment. These were never renewed. Therefore, Alpha does not know the license numbers. Alpha does not know the username or passwords for these keys.

Furthermore, Defendant lists only two certificates to access Philips' systems. However, during the time "UserID12345" was identified in MRI equipment's at Dr. Susoni and Pavia Breast & Imaging (Se Amended Complaint Exhibits 7 and 8) – Abril 28th and 29th 2018-- Alpha was the systems' service and maintenance provider under its service agreement with Metro Pavia. Defendant should have investigated such access to Philips' systems as part of its obligations under Federal Rules of Civil Procedure Rule 26 (g)(1)(B) Alpha's response is evidently evasive and incomplete. Please provide the requested information. before responding.

**Objection**: Alpha' supplemental response is evasive and insufficient as it does not address *how the certificates where acquired.* Accordingly, Philips hereby requests that Interrogatory 11 be fully answered.

Furthermore, Philips objects to the designation of the materials as *Attorney Eyes Only*, as will be explained below, the certificates are used to access Philips' proprietary materials, it does not contain any trade secret or proprietary information belonging to Alpha to justify such designation under the terms of the Protective Order.

**Interrogatory Number 12**: Identify any amounts paid for the IST certificates used by Alpha Biomedical and describe the transaction through which the IST certificate was acquired (including the date of the transaction).

**Alpha's Answer**: Alpha's Answer: See Answer to Interrogatory #11.

**Objection**: Alpha's response to Interrogatory #11 is not responsive to Interrogatory #12. Alpha has not indicated the amounts paid for the certificates nor described the transaction, or the dates they were acquired, as requested. Accordingly, Philips hereby requests that Interrogatory 12 be fully answered.

**Interrogatory Number 16:** State whether Alpha Biomedical, by and through any of its present and/or former officers, directors, managers, agents, employees or persons acting, or purporting to act, on its behalf, have ever utilized any type of credentials – e.g. username, password – pertaining or belonging to any current or former Philips' employees, including Radames Bracero, during his employment with Philips, while servicing Philips' systems.

**Alpha's Answer:** Alpha gains access to Philips' systems using the information provided by Philips through their installation manuals (e.g. Level 0 access Intera & Achieva System Manual Installation), which is required to be delivered to any entity having Philips equipment installed in its facilities. See Dkts. 90-1, 90-2, 90-3 & 90-4.

**Objection**: Alpha's supplemental response is still deficient. First, Alpha's response is evasive as it does not provide a clear answer to the interrogatory. Furthermore, Alpha's response conflicts with its supplemental answer to Interrogatory #11, demonstrating that Alpha has in fact acquired access tools from entities other than Philips and thus used information not included in Philips' installation manuals to access proprietary information.

**Interrogatory Number 17:** State whether Alpha Biomedical, by and though any of its present and/or former officers, directors, managers agents, employees, or persons actin, or purporting to act, on its behalf, have ever utilized the IST/PMSSec account 12345, while servicing Philips' systems.

**Alpha's Answer:** Alpha nor its employees have ever utilized IST/PMSSEC account 12345.

**Objection**: Alpha's response to Interrogatory No. 17 remains deficient. Per Alpha's own allegations during the time "UserID12345" was identified in MRI equipment's at Dr. Susoni and Pavia Breast &

Imaging (Se Amended Complaint Exhibits 7 and 8) – April 28th and 29th 2018-- Alpha was the systems' service and maintenance provider under its service agreement with Metro Pavia. Defendant should have investigated such access to Philips' systems as part of its obligations under Federal Rules of Civil Procedure Rule 26 (g)(1)(B). Alpha's response is evidently evasive and incomplete. Please provide the requested information.

**B. Answers and Objections to Requests for Production of Documents**

**RPD Number 11:** Produce a copy of all IST certificates you acquired to access Philips' systems, whether acquired from Philips or not.

**Alpha's Answer**: See Answer to Interrogatory #11.

**Objection**: See Philips' Objection to Alpha's Answer to Interrogatory #11.

Philips objects Alpha attempt to designate the certificates referred to in its Answer to Interrogatory # 11 "AEO". There is no legitimate reason to designate such materials "AEO" under the terms of the Protective Order and its section 3(d). As a threshold matter, the only entity that can lawfully generate, sale, distribute and/or market IST certificates or any other tools to access Philips' CSIP is Philips. Thus, any certificates not acquired through Philips are not lawfully obtained and constitute an unlawful bypass of access control measures. Second, the certificates serve as keys to access Philip's software and proprietary materials. Such tools are not trade secrets of Alpha, nor confer defendant with any legal commercial advantage. They could noy possibly be privilege information. Please withdraw this baselesss qualification and produce a copy of the certificates.

Furthermore, Alpha has failed to provide an actual copy of the certificates referred to in Alpha's Answer to Interrogatory #11, as requested. Accordingly, please provide the requested information.

**RPD Number 12:** Produce all documents containing or referring to IST certificates for accessing a Philips' systems or information, whether the IST certificate was provided by Philips or not.

**Alpha's Answer**: See Answer to Interrogatory #11.

**Objection:** Alpha's supplemental answer is deficient. Alpha's Answer to Interrogatory #11 is incomplete as it merely refers to two certificates. However, Philips has learned that during the time "UserID12345" was identified in MRI equipment's at Dr. Susoni and Pavia Breast & Imaging (Se Amended Complaint Exhibits 7 and 8) – April 28th and 29th 2018-- Alpha was the systems' service and maintenance provider under its service agreement with Metro Pavia. Defendant should have investigated such access to Philips' systems as part of its obligations under Federal Rules of Civil Procedure Rule 26 (g)(1)(B). Alpha's response is evidently evasive and incomplete. Please withdraw this baselesss qualification and produce a copy of the certificates.

Furthermore, Alpha has failed to provide an actual copy of the certificates referred to in Alpha's Answer to Interrogatory #11, as requested. Accordingly, please provide the requested information.

**RPD Number 13:** Produce all documents sufficient to identify how every IST certificate acquired by you was obtained, including who each IST certificate was acquired from, how it was acquired, the transaction to acquire the IST certificate, and every person involved in the acquisition of the IST certificate.

**Alpha's Answer**: See Answer to Interrogatory #11.

**Objection:** Alpha's supplemental answer is still deficient. The response does not address Philips' request of documents. It does not produce any documents on how the IST certificates referred to in Answer to Interrogatory #11 were acquired, documents involving the transaction, or the persons involved in the acquisition. Accordingly, please provide the requested information.

**RPD Number 14:** Please produce a native copy of every IST certificate acquired by defendant for accessing Philips' systems.

**Alpha's Answer:** As far as Alpha is concerned, there is no way to extract native copies IST certificates. As Alpha understands the workings of IST, the IST certificate is downloaded from Philips' systems, and when a user connects to the system, Philips verifies their credentials. When the user uses the corresponding dongle, he or she can access CSIP Level 1, 2 or 3.

**Objection:** Alpha's RPD 14 is still deficient. The information sought can be easily produced by providing Philips an export of the Windows registry. Defendant may do so by opening Windows Registry Editor (Start Menu > Run > regedit), going to file > export, then selecting a file name and selecting "all" for the export range. That would provide the IST certificate. Accordingly, please withdraw the objection and produce the requested information.

**RPD Number 21:** Produce all documents that refer to or include any licenses granted to you by Philips or by any entity affiliated with Philips.

**Alpha's Answer:** Though the request is ambiguous, Alpha attempts to answer to the best of its ability. IST is a type of license that has the ability to activate two forms of access to MRIs: a) Response generator, which is a code that allows access to CSIP levels above 0, that is levels 1, 2, 3, and b) the dongle, which is a USB that allows access according to the CSIP level granted by Philips. Neither of these methods were used by Alpha Biomedical to access service platforms at MRIs. See Answer to Interrogatory #11 regarding the ISTs acquired by Alpha. Other objects that may be called licenses are codes that allow the software application to work. However, Alpha has no way of generating application licenses.

**Objection:** Alpha's supplemental answer is unresponsive. Alpha has failed to provide any documents, or any legal basis for not producing the requested information. Furthermore, Alpha's response is limited to MRI equipment, while RPD 21 is not. Please produce the requested information.

**RPD Number 25:** Produce all documents referring to or describing any tools, methods, techniques, or devices that may be used to generate access credentials or certificates for accessing any Philips' systems.

**Alpha's Answer**: See Answer to Interrogatory #16.

**Objection:** See Philips' Objection to Answer to Interrogatory #16. Furthermore, Alpha's answer is unresponsive. Alpha has failed to provide any documents, or any legal basis for not producing the requested information. Furthermore, Alpha's response is limited to MRI equipment, while RPD 21 is not. Please produce the requested information.

**PART III: Additional Request for Production of Documents**

1. Produce a forensic copy of or the opportunity to inspect the HP8600 PC referenced in Alpha's *Supplemental Answers* to RPD No. 27.

2. Produce all documents sufficient to identify how HP8600 PC referenced in Alpha's *Supplemental Answers* to RPD No. 27 was acquired from.

3. Produce all documents sufficient to involving the transaction by which HP8600 PC referenced in Alpha's *Supplemental Answers* to RPD No. 27 was acquired.

4. Produce all documents sufficient to identify the purchase price of HP8600 PC referenced in Alpha's *Supplemental Answers* to RPD No. 27.

5. Produce all documents sufficient to identify who has used and/or have access to the HP8600 PC referenced in Alpha's *Supplemental Answers* to RPD No. 27.

6. Produce all documents sufficient to identify files and programs in the HP8600 PC referenced in Alpha's *Supplemental Answers* to RPD No. 27.

7. Produce all documents sufficient to identify for what purpose has HP8600 PC referenced in Alpha's *Supplemental Answers* to RPD No. 27 been used for.

8. Produce all documents sufficient to identify the sites (*i.e*. medical facilities) where the certificates referred to in Interrogatory Number 11 (see above) were used.

9. Produce all documents sufficient to identify Alpha employees that used and/or had access to the certificates identified in Interrogatory Number 11 (see above).

10. Produce all documents sufficient to identify the services provided by Alpha to Philips's systems using the certificates referred to in Interrogatory Number 11 (see above)

11. Produce all documents sufficient to identify the purpose for the acquisition of certificates referred to in Interrogatory Number 11 (see above).

12. Produce all service logs, service records, or other documentation related to the repair, maintenance and/or service of Philips' MRIs at Pavia Breast & Imaging during January to May 2018.

13. Produce all service logs, service records, or other documentation related to the repair, maintenance and/or service of Philips' MRIs at Hospital Dr. Susoni during January to May 2018.

14. Produce documents identifying the names of Alpha's employees that provided services to Philips' MRIs at Hospital Dr. Susoni during January to May 2018.

15. Produce documents identifying the names of Alpha's employees that provided services to Philips' MRIs at Pavia Breast & Imaging during January to May 2018.

* * *

Because it is Philips' good faith intent to foster cooperation between the parties in order to diligently and expeditiously carry out the discovery phase without having to resort to the Court's intervention, Philips proposes holding a second "Meet and Confer" session pursuant to Fed. R. Civ. P. 26 and Lc. Cv. R. 26(b) within **7 days** of receipt of this letter, in the hopes of resolving these issues extrajudicially, amicably, and in a timely fashion.

Cordially,

*/s/ Alexandra C. Casellas Cabrera*
ALEXANDRA C. CASELLAS CABRERA