IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **PHILIPS MEDICAL SYSTEMS PUERTO RICO, INC.**, *et al.*,<br>Plaintiffs-Counterclaim Defendants,<br><br>v.<br><br>**ALPHA BIOMEDICAL AND DIAGNOSTIC CORP.** *et al.*,<br>Defendants-Counterclaimants. | Civil No. 19-1488 (BJM) |

### **OPINION & ORDER**

Plaintiffs Philips Medical Systems Puerto Rico, Inc., Philips Medical Systems Nederland B.V., and Philips India Limited (collectively "Philips") have moved for sanctions against defendant Alpha Biomedical and Diagnostic Corp ("Alpha"), claiming that Alpha willfully failed to comply with a discovery order issued by this court at Docket No. ("Dkt.") 83. Dkt. 118. Philips requests that default judgment be entered against Alpha or (in the alternative) that lesser sanctions be entered along with an order compelling Alpha to fully respond to Philips's discovery requests. *Id*. Alpha opposes and requests that a protective order be issued to prevent Philips from tampering with evidence. Dkt. 119. This matter is before me by consent of the parties. Dkt. 34. For the reasons set forth below, Philips's motion for sanctions is **DENIED**, though Alpha is ordered to comply with Philips's discovery requests; Alpha's request for a protective order is also denied.

### BACKGROUND

Both Philips and Alpha are engaged in business related to medical imaging systems used in hospitals and medical centers. On May 22, 2019, Philips filed a complaint against Alpha, Dkt. 1, which was amended on August 2. Dkt. 9 ("Am. Compl."). Philips alleges that Alpha gained unauthorized access to its proprietary material, computer software called Philips Customer Service Intellectual Property ("Philips CSIP"). Am. Compl. ¶¶ 13-17, 42-55. Philips CSIP is embedded in

*Philips Medical Systems PR, Inc.,* et al. *v. Alpha Biomedical & Diagnostic Corp.,* et al., Civil. No. 19-1488 (BJM)   2

Philips's imaging systems, including its MRI systems. *Id*. ¶¶ 10, 13-21, 104. Access to Philips CSIP is restricted. *Id*. ¶ 16. While entities such as Alpha have basic access, only Philips employees have full access. *Id*. ¶¶ 31-33. Philips accuses Alpha of having bypassed its security measures to access Philips CSIP by using the credentials of former Philips employees who now work for Alpha. *Id*. ¶¶ 42-55. Philips also alleges that Alpha gained unauthorized access by using a fake UserID and Information System & Technology ("IST") account, "UserID 12345." *Id*. ¶ 74.

Litigation progressed, and on March 30, 2020, Philips served Alpha with 21 interrogatories and 36 requests for production of documents ("RFPs"). Dkt. 64-1. Alpha answered on May 1, objecting to Philips's requests based primarily on trade secret, undue burden, and/or relevance. Dkt. 64-2. On May 22, Philips sent Alpha a draft of a proposed confidentiality and protective order to facilitate discovery of confidential materials. Dkt. 64-3 at 4. Much back-and-forth ensued as parties worked to negotiate the terms of a protective order and resolve their discovery disputes. *See* Dkt. 64 at 3-5. On August 24, Philips informed Alpha that if a compromise could not be reached, it would move to compel and seek a protective order. Dkt 64-11 at 1-2. Philips did so on September 4, 2020, Dkts. 64, 65; I granted the protective order and granted the motion to compel in part. Dkt. 83. In doing so, I noted that "[a]ll information related to the means by which Alpha accesses Philips systems is . . . relevant to Philips' claims" and that such information "includes both the IST certificates Alpha possesses and the origins of their acquisition." *Id*. at 11.

Alpha subsequently informed Philips that Alpha had purchased two ISTs from a third party known as Radiological Service Training Institute ("RSTI") and nine more from a third party known as Imaging Technology ("IT") for a total of eleven ISTs. Alpha did not immediately produce IST certificates associated with the ISTs; instead, Alpha provided the numbers associated with the two ISTs from RSTI, stated that only two of the ISTs from IT were ever activated, and

*Philips Medical Systems PR, Inc.,* et al. *v. Alpha Biomedical & Diagnostic Corp.,* et al., Civil. No. 19-1488 (BJM)   3

noted that the two activated IT ISTs were never renewed and (as a result) Alpha no longer knows the license numbers, usernames, and passwords associated with those keys. Dkt. 118-1 at 7-8. Philips objected and asked Alpha to produce the certificates associated with each of the ISTs. Dkt. 118-2 at 6.

Alpha also classified the IST certificates as "Attorney Eyes Only," which Philips objected to. *Id*. The protection order notes that the term "Attorney Eyes Only" should refer to "CONFIDENTIAL or HIGHLY CONFIDENTIAL non-public information which the Producing Person reasonably believes is so economically or competitively sensitive that: (i) it is the subject of reasonable efforts under the circumstances to maintain its secrecy; (ii) it is sufficiently valuable and secret to afford a potential or actual competitive advantage over others; and (iii) its disclosure to existing or potential business competitors would materially affect or threaten injury to the business, commercial, or financial interests of the Producing Person." Dkt. 65-1 at 2. The order notes that "Attorneys' Eyes Only Information includes, but is not limited to, trade secrets (to the extent not otherwise privileged from discovery), competitively sensitive information, and information which is required to be kept confidential by contract or other legal obligation." *Id*. at 2-3. The order goes on to state that "[t]he Producing Person will only designate materials as 'CONFIDENTIAL[,]' 'HIGHLY CONFIDENTIAL' or [']ATTORNEYS EYES ONLY' if the party believes in good faith that the materials contain confidential information." *Id*. at 5. It then says that "[a] party may submit a request in writing to the Producing Party that the designation be modified or withdrawn" and that "[i]f the Producing Person does not agree to the re-designation within fifteen (15) days, the objecting party may apply to the Court for relief." *Id*. The order notes that "the burden shall be on the Producing [Party] to show that the designation is proper" and that

Case 3:19-cv-01488-BJM   Document 124   Filed 12/07/21   Page 4 of 12

*Philips Medical Systems PR, Inc.,* et al. *v. Alpha Biomedical & Diagnostic Corp.,* et al., Civil. No. 19-1488 (BJM)   4

"[t]he Court may award sanctions if it finds that a party's position was taken without substantial justification." *Id*. at 6.

Alpha responded to Philips's objections by noting that Alpha was not designating the IST certificates as for Attorney Eyes Only in order to protect trade secrets, as Philips had implied, but rather to prevent Philips from deactivating the ISTs. Dkt. 118-4 at 3. Alpha also stated that although Alpha had followed instructions provided by Philips for extracting copies of the IST certificates, the process did not work. *Id*. at 4. The parties subsequently began to address the issue of producing the certificates. Dkt. 118-5 at 24.[1] Philips provided alternate instructions regarding how to extract the certificates, *id*. at 22, but apparently not all of the certificates could be extracted regardless. *Id*. at 18. As a result, Philips requested the actual files or the physical items received (the "dongles") relating to those ISTs. *Id*. Alpha agreed to provide the dongles. *Id*. at 17.

The parties then began to negotiate how to hand over the certificates and dongles. Philips offered Alpha three ISTs in exchange for the eleven ISTs then possessed by Alpha as well as a laptop that purportedly allowed Alpha to access Philips's MRIs; Philips only offered Alpha three ISTs because Philips took the position that Alpha only had the equivalent of three functioning IST certificates. *Id*. at 13. In response, Alpha offered to give up the eleven ISTs in exchange for six new ISTs, acknowledging that Alpha only had three working certificates at the time but claiming that Alpha would have more functioning certificates but for Philips interfering with Alpha's business. *Id*. at 12. Alpha alternatively offered to accept only three new ISTs in exchange for Philips signing a release for Alpha's purchase and use of the ISTs. *Id*. Alpha also raised the concern that Philips might manipulate the IST certificates to make it appear as though Alpha had illegally accessed Philips's software. *Id*.

---

[1] Note that the pages are numbered incorrectly throughout the majority of this document; I cite to the document's true page numbers throughout, not the listed ones.

Case 3:19-cv-01488-BJM Document 124 Filed 12/07/21 Page 5 of 12

*Philips Medical Systems PR, Inc.*, et al. *v. Alpha Biomedical & Diagnostic Corp.*, et al., Civil. No. 19-1488 (BJM) 5

After receiving this counteroffer from Alpha, Philips stated that Alpha's offer was "unacceptable," cut off negotiations, and demanded production of the IST certificates. *Id*. at 9-12. Philips also renewed its objections to Alpha classifying the ISTs as for Attorney Eyes Only. *Id*. at 6. In response, Alpha argued that the IST information was not publicly available and claimed that it was also economically and competitively sensitive. *Id*. at 5. In Alpha's subsequent production, Alpha did not produce the IST certificates, but instead produced a registry export copy of the eleven ISTs. Dkt. 118-6 at 3; Dkt. 118 at 7.

Philips again demanded copies of the IST certificates or the certificates themselves, suggesting that Philips would pursue sanctions if Alpha did not immediately provide the certificates. Dkt. 118-7. Alpha responded by stating that Alpha had followed Philips's instructions for producing the requested information, but that since not all of the dongles had been installed, there was apparently no way to access the IST certificates for the uninstalled dongles. Dkt. 118-8 at 2. Alpha also made a series of proposals for conveying pertinent information to Philips regarding the uninstalled dongles, including a) delivering the physical dongles in exchange for a release of liability regarding their use; b) figuring out how to install the dongles while allowing both parties to retain identical copies of the IST certificates; or c) coordinating a visit from an Attorney Eyes Only-designated Philips representative to Alpha's facilities in order to oversee the installation of the dongles and verify their corresponding IST certificates. *Id*. Apparently finding these proposals unacceptable, Philips filed the motion at issue.

## APPLICABLE LEGAL STANDARDS

Discovery sanctions serve both punitive and deterrent purposes, punishing misbehavior and urging compliance with court directions. *AngioDynamics, Inc. v. Biolitec AG*, 991 F. Supp. 2d 283, 290 (D. Mass. 2014). "Federal Rule of Civil Procedure 37(b) equips courts with a 'veritable

*Philips Medical Systems PR, Inc., et al. v. Alpha Biomedical & Diagnostic Corp., et al.*, Civil. No. 19-1488 (BJM)   6

arsenal of sanctions' for noncompliance with court directives." *Hawke Capital Partners, L.P. v. Aeromed Services Corp.*, 300 F.R.D. 52, 55 (D.P.R 2014) (quoting *Malot v. Dorado Beach Cottages Assocs.*, 478 F.3d 40, 44 (1st Cir. 1985)). "[A] default judgment may be rendered under Rule 37(b)(2)(A)(vii) and pursuant to a federal court's inherent power to manage its affairs." *Id.* (citing *Brockton Savings Bank v. Peat, Marwick, Mitchell & Co.*, 771 F.2d 5, 11–12 (1st Cir. 1985)). Default judgment "provides a useful remedy when a litigant is confronted by an obstructionist adversary and plays a constructive role in maintaining the orderly and efficient administration of justice." *Crispin-Taveras v. Municipality of Carolina*, 647 F.3d 1, 7 (1st Cir. 2011) (internal citation and quotation omitted).

Nevertheless, default judgment is a "drastic sanction." *Id*. In a system dedicated to justice and equality before the law, default judgment extinguishes claims before resolution on their merits, *Companion Health Servs., Inc. v. Kurtz*, 675 F.3d 75, 84 (1st Cir. 2012), and there is a "strong presumption in favor of deciding cases on the merits." *Malot*, 478 F.3d at 43 (citing *Torres–Vargas v. Pereira*, 431 F.3d 389, 392 (1st Cir. 2005); *Batiz Chamorro v. Puerto Rican Cars, Inc.*, 304 F.3d 1, 4 (1st Cir. 2002)). Courts considering default judgment as a sanction must therefore engage in a fact-specific review of the litigant's behavior, assessing both procedural and substantive factors to determine whether any misconduct merits such a severe response. *Vallejo v. Santini-Padilla*, 607 F.3d 1, 8 (1st Cir. 2010). To determine whether default judgment is substantively fair, the court weighs "the severity of the violation, the legitimacy of the party's excuse, repetition of violations, the deliberateness vel non of the misconduct, mitigating excuses, prejudice to the other side and to the operations of the court, and the adequacy of lesser sanctions." *Id.* (quoting *Robson v. Hallenbeck*, 81 F.3d 1, 2 (1st Cir. 1996)). Procedural considerations include notice to the offending party and opportunity to explain misconduct or otherwise oppose default judgment. *Id.*

Case 3:19-cv-01488-BJM   Document 124   Filed 12/07/21   Page 7 of 12

*Philips Medical Systems PR, Inc.,* et al. *v. Alpha Biomedical & Diagnostic Corp.,* et al., Civil. No. 19-1488 (BJM)   7

Federal Rule of Civil Procedure 37(b) permits other, lesser sanctions for noncompliance with court orders as well: a court may, for instance, direct that designated facts be taken as established, treat failure to obey an order as contempt, or issue any other "just order." Fed. R. Civ. P. 37(b)(2); *see also* Fed. R. Civ. P. 16(f)(1)(C) (a district court may issue, on its own accord, "any just orders ... if a party or its attorney ... fails to obey a scheduling or other pretrial order"). Additionally, federal courts possess "certain inherent powers, not conferred by rule or statute, to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Goodyear Tire & Rubber Co. v. Haeger*, 137 S.Ct. 1178, 1186 (2017) (internal citations and quotations omitted). That authority includes the power to require a party who has engaged in misconduct to pay the attorney's fees and costs of the wronged party. *Id*.

## DISCUSSION

Philips fails to explain why sanctions would be justified under the present circumstances. The record does not reveal any obviously sanctionable tactics utilized by Alpha in spite of Philips's claims. Instead, I have more sympathy for Alpha's claim that Philips failed to negotiate in good faith with Alpha rather than the other way around. "The Court reminds all parties that discovery disputes are to be addressed in a good-faith manner prior to bringing them to the attention of the Court." *Puerto Rico Dairy Farmers Ass'n v. Comas-Pagan*, 08-CV-2191 (DRD) (D.P.R. Mar. 6, 2018). While Philips claims that Alpha has delayed and evaded production by "hiding behind excuses," the evidence provided by Philips suggests that Alpha had just made a seemingly reasonable counteroffer to Philips regarding how production should unfold when Philips abruptly put an end to negotiations and demanded production without explanation as to why beyond stating that Alpha's offer was "unacceptable." *See* Dkt. 118-5 at 9-13. Though I decline to reach a determination as to whether Philips was acting in bad faith, such a course of action, particularly

*Philips Medical Systems PR, Inc.,* et al. *v. Alpha Biomedical & Diagnostic Corp.,* et al., Civil. No. 19-1488 (BJM)   8

when accompanied by sometimes slow responses to Alpha's messages throughout the negotiation and production process, does not evince a good-faith desire on the part of Philips to settle the dispute between the parties.

Additionally, Philips has not managed to show that Alpha's behavior during the discovery process has been objectionable. While Philips points to supposed delays and obfuscation caused by Alpha within the negotiation process, Alpha generally was actively engaged with and responsive to Philips throughout the process. *See, e.g.*, Dkts. 118-3, 118-5. Alpha also showed a willingness to negotiate with Philips in good faith throughout the process. *See, e.g.*, Dkt. 118-5 at 12 (Alpha asking: "is there any other way that we could address this concern? Recommendations are welcomed," but never receiving recommendations or a counteroffer). Philips also fails to explain why the alternatives proposed by Alpha to Philips's proposals were unreasonable, one of which only differed from Philips's proposal in that Alpha would have received a larger number of replacement ISTs than Philips initially offered. *Id*. Philips has therefore failed to show that Alpha engaged in any form of misconduct within the negotiation process.

As Philips notes, sanctions are a matter of discretion. However, sanctions are unwarranted in the present matter. "[It is true that t]he power to grant a default judgment is within the broad discretion of the trial court; however, default judgments are generally disfavored, and cases should be tried on their merits whenever possible." *In re Schnell*, 148 B.R. 365, 366 (D. Mass. 1992). Since Philips has failed to show that Alpha engaged in any form of misconduct, default judgment is not warranted. Philips also cites *Rivera v. Sam's Club Humacao* for the proposition that "[t]here are ample grounds for recognizing . . . that in narrowly defined circumstances federal courts have inherent power to assess attorney's fees against counsel," such as when a party engages in abusive litigation practices, engages in abuse of judicial processes, or conducts themselves in bad faith.

*Philips Medical Systems PR, Inc.,* et al. *v. Alpha Biomedical & Diagnostic Corp.,* et al., Civil. No. 19-1488 (BJM)   9

386 F.Supp.3d 188, 206 (D.P.R. 2018) (alterations in original) (quoting *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 765–66 (1980) (superseded on other grounds)). However, "a court's inherent power to shift attorneys' fees 'should be used sparingly and reserved for egregious circumstances.'" *Whitney Bros. Co. v. Sprafkin*, 60 F.3d 8, 13 (1st Cir. 1995) (quoting *Jones v. Winnepesaukee Realty*, 990 F.2d 1, 3 (1st Cir. 1993). Again, despite the clearly limited circumstances under which default judgment or sanctions should be employed against a party, Philips has failed to explain why Alpha has engaged in any potentially sanctionable form of behavior, such as litigatory or judicial abuse or bad-faith conduct. Additionally, as noted above, I am not convinced that Philips engaged in good faith with Alpha in an attempt to resolve the dispute between the parties before bringing the present motion. As a result, I find that no sanctions are warranted against Alpha.

I now turn to Alpha's classification of the IST materials as Attorney Eyes Only. "Attorneys' eyes only disclosure is appropriate only in limited circumstances . . . because it hinders the plaintiff's ability to aid counsel in the review of the evidence and to determine her litigation strategy in light of it." *Theidon v. Harvard Univ.*, 314 F.R.D. 333, 336 (D. Mass. 2016). In Alpha's opposition to Philips's motion, Alpha cites the fear that Philips might tamper with the evidence provided by Alpha in discovery as Alpha's primary concern in arguing that the IST information should be classified as Attorney Eyes Only. Alpha ultimately notes no other concerns in the opposition (despite having noted other, arguably more compelling concerns during discovery negotiations; *see, e.g.*, Dkts. 118-4 at 3, 118-5 at 12). Alpha also cites no reason for believing that Philips will engage in evidence tampering other than Philips's failure to explain why Philips rejected Alpha's proposals for how discovery should unfold.

*Philips Medical Systems PR, Inc.,* et al. *v. Alpha Biomedical & Diagnostic Corp.,* et al., Civil. No. 19-1488 (BJM) 10

Since Alpha is the producing party in this instance, the protection order states that the burden of proof is on Alpha to show that their classification of the dongles as Attorney Eyes Only is substantially justified. *See* Dkt. 65-1 at 5-6. "A 'substantial justification' is one that could satisfy a reasonable person, not a justification of a 'high degree.'" *Charter Env't, Inc. v. Shaw Env't, Inc.*, 07-CV-11609 (DPW), 2009 WL 2982772, at *15 (D. Mass. Sept. 14, 2009) (citing *AVX Corp. v. Cabot Corp.*, 251 F.R.D. 70, 78 (D. Mass. 2008). Although this is not a high burden, Alpha points to no cases or points of law suggesting that the mere possibility of future evidence tampering is of substantially justifiable concern within the discovery process to warrant an Attorney Eyes Only designation. Alpha may of course advance the theory that Philips tampered with evidence later in the trial process, and in anticipation of this possibility, both parties are strongly advised to take whatever steps they can to ward off such an eventuality. Nevertheless, Alpha has not met the burden of showing that the classification of the dongles is substantially justified. Accordingly, the IST materials should no longer be designated as Attorney Eyes Only. *Cf. Theidon*, 314 F.R.D. at 336 ("Although Harvard would certainly prefer to keep the identities of the ad hoc committee members secret from Theidon, it has not demonstrated that it is entitled to confidentiality under the law").

However, while the protective order notes that I may impose sanctions due to a party improperly classifying discoverable materials, Dkt. 65-1 at 6, such sanctions are not justified here. In the motion for sanctions, Philips cursorily mentions that Philips had previously objected to Alpha's classification of the ISTs as Attorney Eyes Only. Dkt. 118 at 4. However, Philips does not develop this point sufficiently in the motion at hand for it to rise to the level of a claim against Alpha or put Alpha on notice regarding the potential of such a claim, and ultimately it is unclear whether Philips is seeking sanctions regarding the classification through the present motion. *See*

*Philips Medical Systems PR, Inc.,* et al. *v. Alpha Biomedical & Diagnostic Corp.,* et al., Civil. No. 19-1488 (BJM) 11

*United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived"). Furthermore, Philips fails to show that Alpha acted frivolously or in bad faith by classifying the IST materials as Attorney Eyes Only. I find that sanctions for the classification are not warranted.

Turning to the issue of discovery, I find that Philips may compel discovery of the dongles. To some extent I understand the (largely implicit) position taken by Alpha during negotiations that the dongles are not covered by Philips's interrogatories and RFPs, which refer to IST certificates that Alpha claims have never been accessed due to the dongles never having been installed. Though I previously held, as Philips mentions, that "[a]ll information related to the means by which Alpha accesses Philips['s] systems is . . . relevant to Philips' claims," Dkt. 83 at 11, Alpha avers that Alpha has never actually used most or all of the dongles, whether for accessing Philips's systems or for any other reason. *See, e.g.*, Dkt. 118-7 at 1. However, since the dongles clearly represent a *potential* means of access to Philips's systems, I nonetheless find that the dongles are relevant to Philips's claims and that discovery of the dongles is proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1). Alpha has made it clear that Alpha's main concern in producing the dongles is that Philips will alter the information on the dongles in order to make the dongles comply with Philips's allegations. Dkt. 119 at 7. As I state above, I do not find this to be a compelling concern and therefore do not find discovery of the dongles to impose a significant burden upon Alpha. *See* Fed. R. Civ. P. 26(b)(1).

Finally, Alpha requests that I issue a protective order. Alpha's request for a protective order is predicated entirely on the notion that Philips may manipulate evidence, which again Alpha has not shown is a valid concern. As Alpha notes, this court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or

*Philips Medical Systems PR, Inc.*, et al. *v. Alpha Biomedical & Diagnostic Corp.*, et al., Civil. No. 19-1488 (BJM) 12

expense." Fed. R. Civ. P. 26(c). However, no such good cause exists here. As a result, Alpha's request for a protective order is denied. However, I do note that Philips should take care to not deactivate the dongles or Alpha's active IST certificates without the prior approval of this court, and I reiterate that both parties are strongly advised to take whatever steps they can to avoid arguments arising as to whether Philips tampered with the dongles or any other evidence.

I am disappointed that the parties could not resolve these issues between themselves. Contrary to Philips's claims, Alpha's behavior throughout the negotiation process was largely unobjectionable, but at the same time there is no indication that Philips is planning to tamper with evidence in this matter. In any case, I find that the dongles are discoverable but that sanctions should not be imposed against Alpha.

## CONCLUSION

For the foregoing reasons, Philips's motion for sanctions is **DENIED**. However, Alpha is ordered to comply with Philips's discovery requests by producing the dongles requested by Philips in their actual, original form, as well as any other outstanding information directly related to the IST certificates. Alpha is ordered to do so by December 21st. Alpha's request for a protective order is denied.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 7th day of December 2021.

S/ *Bruce J. McGiverin*
BRUCE J. MCGIVERIN
United States Magistrate Judge